BLANK ROME
Mike Margolis (SBN 87785)
mmargolis@blankrome.com
Ana Tagvoryan (SBN 246536)
atagvoryan@blankrome.com
Harrison Brown (SBN 291503)
hbrown@blankrome.com
Ping Zhang (SBN 312257)
pzhang@blankrome.com
2029 Century Park East | 6th Floor
Los Angeles, CA 90067
Telephone:   424.239.3400
Facsimile:   424.239.3434

Attorneys for Defendants
NERIUM INTERNATIONAL, LLC and
JEFF OLSON

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION

| | |
|---|---|
| KIMBERLY GERDO, an individual, on behalf of herself and other persons similarly situated,<br><br>                              Plaintiffs,<br><br>        vs.<br><br>NERIUM INTERNATIONAL, LLC, a limited liability company, JEFF OLSON, an individual, and DOES 1 THROUGH 25, inclusive,<br><br>                              Defendants. | C.D. Cal. Case No.:   _____<br><br>Riverside Sup. Ct. Case No.: RIC1814331<br><br>**NOTICE OF REMOVAL**<br><br>Complaint:   July 13, 2018<br>Removed:     August 28, 2018<br>Trial:          Not Set |

TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, pursuant to sections 1332, 1441, 1446, and 1453 of Title 28 of the United States Code, Defendant Nerium International, LLC ("Nerium") hereby removes the above-captioned action to the United States District Court for the Central District of California.  Removal is proper because, as set forth herein, this Court has subject matter jurisdiction over the claims at issue in the action and the procedural requirements for removal have been satisfied.

## I.    REMOVAL IS TIMELY.

1.    On July 13, 2018, Plaintiff Kimberly Gerdo ("Plaintiff") filed a putative class action complaint (the "Complaint") in the Superior Court of California for the County of Riverside, entitled *Kimberly Gerdo v. Nerium International, LLC, et al.*, No. RIC1814331 (the "State Court Action").  Defendant Jeff Olson ("Mr. Olson") was also named in the State Court Action.

2.    On July 26, 2018, Plaintiff filed a Proof of Service of the Summons and Complaint on Nerium, in which Plaintiff purports to have effected substitute service by delivering a copy of the Summons and Complaint to Laura Perez at Nerium's office on July 19, 2018, and mailing a copy of the Summons and Complaint by First Class Mail to Nerium on the same day.  Under California Code of Civil Procedure section 415.95, the purported substitute service is deemed complete on July 29, 2018, or the tenth day after mailing.

3.    This Notice of Removal is timely because it is being filed within 30 days of service of the Summons and Complaint on Nerium.[1]  *See* 28 U.S.C. § 1446(b)(1); *Murphy Bros. v. Michetti Pipe Strining, Inc.*, 526 U.S. 344, 348 (1999).

---

[1] On July 26, 2018, Plaintiff filed a Proof of Service of the Summons and Complaint on Mr. Olson, in which Plaintiff purports to have effected substitute service by delivering a copy of the Summons and Complaint to "Steve Haynes, Esq. Corporate Counsel" at Nerium's office on July 23, 2018, and mailing a copy of the Summons and Complaint by First Class Mail on July 24, 2018.  Under California Code of Civil Procedure section 415.95, the purported substitute service is deemed complete on August 3, 2018, or the tenth day after mailing.  Thereafter, on July 31, 2018, Plaintiff filed an Amended Proof of Service of the Summons and Complaint, in which Plaintiff purports to have personally served Mr. Olson by delivering the Summons and

## II.     NATURE OF THE ACTION.

4.     In her Complaint, Plaintiff alleges that Nerium is a multi-level marketing company which sells a variety of anti-aging skincare and wellness products.  (Compl., ¶ 13.)   Plaintiff alleges that Nerium's sales representatives are known as "Brand Partners."  (*Id.*, ¶ 14.)   Plaintiff alleges that to become a Brand Partner, Nerium required her to purchase a Brand Partner Launch Kit for $499.95.  (*Id.*, ¶ 17.)   Plaintiff alleges that Nerium represented that the Brand Partner Launch Kit would be sold to Plaintiff at cost.  (*Id.*, ¶ 18.)   Plaintiff alleges, on information and belief, that "Nerium did not sell the Brand Partner Launch Kit to Plaintiff and all similarly situated Brand Partners 'at Company cost.'"  (*Id.*, ¶ 24.)   Plaintiff alleges, on information and belief, that "Nerium purchases materials from Brand Partner Launch Kits from Success Partners…."  (*Id.*, ¶ 25.)   Plaintiff alleges, on information and belief, that Mr. Olson "intentionally negotiated an inflated purchase price for the materials purchased from Success Partners for the Brand Partner Launch Kits, and as part of this arrangement, [Mr.] Olson personally receives (either directly or indirectly) a 'kick-back' from Success Partners for all Brand Partner Launch Kits which Nerium purchases from Success Partners."  (*Id.*, ¶ 26.)   Plaintiff alleges that Nerium also "substantially marks up the Brand Partner Launch Kits significantly above its actual cost, such that Nerium makes a large profit from the sale of all Brand Partner Launch Kits."  (*Id.*, ¶ 27.)

5.     Plaintiff asserts six causes of action: (1) fraud and deceit; (2) treble damages under California Penal Code section 496; (3) negligent misrepresentation; (4) breach of contract; (5) breach of implied covenant of good faith and fair dealing; and

---

Complaint to Steven Rains at Nerium's office on July 23, 2018.  Mr. Rains is *not* authorized to accept service on behalf of Mr. Olson.   Nevertheless, assuming *arguendo* that service was proper and is deemed complete as of July 23, 2018 instead of August 3, 2018, removal is still timely because Nerium would be the later-served defendant, Nerium has timely filed this Notice, and Mr. Olson consents to removal.  *See* 28 U.S.C. § 1446 (b)(2)(C) ("If defendants are served at different times, and a later-served defendant files a notice of removal, any earlier-served defendant may consent to the removal even though that earlier-served defendant did not previously initiate or consent to removal.").

(6) violation of California Business and Professions Code section 17200 *et seq.* (*See generally id.*)

6.      Among other things, Plaintiff seeks treble damages for "payments of monies to Defendants, to which Defendants were not legally entitled," costs of suit and reasonable attorneys' fees pursuant to statute, and "restitution of all funds obtained by Nerium through the use of these practices." (*Id.*, ¶¶ 73, 115.)

7.      Plaintiff seeks to represent a class of "[a]ny resident of the State of California who purchased a Brand Partner Launch Kit at any time since January 1, 2010…." (*Id.*, ¶ 29.) Plaintiff alleges that "there are at least tens of thousands of Class Members spread throughout the State of California." (*Id.*, ¶ 32.)

## III.    THE COURT HAS CAFA JURISDICTION OVER THE ACTION.

8.      This action is within the original jurisdiction of this Court, and removal is proper under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d), which grants district courts original jurisdiction over class actions in which the amount in controversy exceeds $5,000,000 and any member of the class of plaintiffs is a citizen of a State different from any defendant. As set forth below, this action satisfies each of the requirements of § 1332(d)(2) for original jurisdiction under CAFA.

9.      <u>Covered Class Action</u>. This action meets the CAFA definition of a class action, which is "any civil action filed under [R]ule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure." 28 U.S.C. §§ 1332(d)(1)(B), 1453(a) & (b). To wit, Plaintiff brings this action ostensibly on behalf of "[a]ny resident of the State of California who purchased a Brand Partner Launch Kit at any time since January 1, 2010…." (Compl., ¶ 29.) Plaintiff also contends that "[t]he Class Members are so numerous and geographically diverse that joinder would be impracticable;" "there are at least tens of thousands of Class Members spread throughout the State of California;" "Plaintiff is an adequate representative of the class;" "[t]he proposed Class is ascertainable in that the members can be identified

and located using information contained in Defendants' records of Brand Partners;" "[t]here are questions of law and fact common to the members of the Class which predominate over any questions affecting any individual member, and a class action is superior to all other available methods for the fair and efficient adjudication of the controversy;" and "[t]he common questions of law and fact common to the class … predominate over any questions that may affect only individual members of the Class." (*Id.*, ¶¶ 32-33, 35-37.)

10.    <u>Diversity</u>.  The required diversity of citizenship under CAFA is satisfied because "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A).  Namely:

a.    Plaintiff alleges that she is a resident of the State of California, County of Riverside.  (Compl., ¶ 3.)

b.    The putative class is limited to "resident[s] of the State of California." (*Id.*, ¶ 29.)

c.    Nerium is not a citizen of California.  Nerium is a limited liability company organized and existing under the laws of the State of Texas.  (*Id.*, ¶ 1.)  At all pertinent times, Nerium's principal place of business has been located in Addison, Texas.  For purposes of diversity jurisdiction, "an LLC is a citizen of every state of which its owners/members are citizens." *Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006).  Nerium has, and at all pertinent times has had, two members, namely JO Products, LLC ("JOP") and Nerium Skincare, Inc. ("Skincare").

i.    JOP is a limited liability company organized and existing under the laws of the State of Texas.  At all pertinent times, its principal place of business has been located in Addison, Texas.  JOP has, and at all pertinent times has had, two members, namely Mr. Olson individually, and Mr. Olson as the trustee of a family trust.  "A trust has the citizenship of its trustee or trustees only." *Id*.  As

mentioned below, Mr. Olson is not a citizen of California.  JOP, therefore, is not a citizen of California.

            ii.    Nerium is informed and believes, and based thereon alleges, that Skincare is a corporation organized and existing under the laws of the State of Texas, whose principal place of business is, and at all pertinent times has been, located in San Antonio, Texas.  For diversity purposes, a corporation is a citizen of the state in which it was incorporated and the state in which it has its principal place of business. 28 U.S.C. § 1332(c)(1).  Skincare, therefore, is not a citizen of California.

       d.    Mr. Olson is not a citizen of California.  Mr. Olson is a resident of Florida.

Thus, the minimal diversity requirements of CAFA are satisfied.   28 U.S.C. § 1332(d)(2)(A).

    11.   <u>Class Action Consisting of More than 100 Members</u>.  Plaintiff alleges that "there are at least tens of thousands of Class Members spread throughout the State of California."  (Compl., ¶ 32.)  Based on the allegations in the complaint, the number of purported class members is greater than 100.

    12.   <u>Amount in Controversy</u>.  Under CAFA, the claims of the individual class members are aggregated to determine if the amount in controversy exceeds the required "sum or value of $5,000,000, exclusive of interest and costs."  28 U.S.C. § 1332(d)(2), (d)(6).

       a.    Plaintiff alleges that twice she paid $499.95 for a Brand Partner Launch Kit: first, on February 28, 2013, and later, on January 15, 2018.  (Compl, ¶¶ 20, 22.)

       b.    Plaintiff seeks "restitution of all funds obtained by Nerium through the use of these practices."  (*Id.*, ¶ 115.)  The term "tens of thousands" logically implies at least 20,000.  *See Air Council v. Dragon Int'l Grp.*, No. CIV. 1:CV-06-0430, 2006 WL 2136246, at *4 (M.D. Pa. 2006); *Kuxhausen v. BMW Fin. Servs. NA*

5

1   *LLC*, 707 F.3d 1136, 1140 (9th Cir. 2013).  Accepting arguendo Plaintiff's allegations

2   as true, Plaintiff seeks at least $9,999,000.00 ($499.95 x 20,000).

3          c.     In addition, Plaintiff seeks treble damages for "payments of monies

4   to Defendants, to which Defendants were not legally entitled…."  (*Id.*, ¶ 73.)

5   Accepting arguendo Plaintiff's allegations as true, Plaintiff seeks at least

6   $29,997,000.00 ($9,999,000.00 x 3).

7          d.     Further, Plaintiff seeks actual damages, compensatory damages,

8   and punitive damages.  (*See id.*, Prayer.)  Plaintiff does not plead the value of the

9   actual damages, compensatory damages, and punitive damages, but said damages

10  would be in addition to the $29,997,000.00 Plaintiff seeks.

11         e.     Finally, Plaintiff seeks attorneys' fees and costs of suit under

12  California Penal Code section 496(c), which provides that "[a]ny person who has been

13  injured by a violation of subdivision (a) or (b) may bring an action for … costs of suit,

14  and reasonable attorney's fees."  "[W]here an underlying statute authorizes an award

15  of attorneys' fees, either with mandatory or discretionary language, such fees may be

16  included in the amount in controversy."  *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150,

17  1156 (9th Cir. 1998).  Plaintiff does not plead the amount of attorneys' fees and costs

18  she seeks, but said attorneys' fees and costs would be in addition to the

19  $29,997,000.00 Plaintiff seeks.

20         13.    Without conceding any merit to the complaint's damages allegations or

21  causes of action, the amount in controversy here, as alleged in Plaintiff's complaint,

22  exceeds CAFA's jurisdictional threshold.

23  **IV.    ALL OTHER PROCEDURAL REQUIREMENTS HAVE BEEN MET.**

24         14.    This action is properly removed to this Court because the state court

25  action is pending within this district and division.  28 U.S.C. §§ 1441(a), 84(c)(1).

26         15.    In compliance with 28 U.S.C. § 1446(d), a copy of the Notice of

27  Removal of Action to the United States District Court for the Central District of

28

California that will be filed with the Superior Court of the State of California for the County of Riverside is attached hereto as **Exhibit 1**.

16.    A true and correct copy of the Riverside Superior Court's online docket in the State Court Action is attached hereto as **Exhibit 2**.

17.    Pursuant to 28 U.S.C. § 1446(a), copies of all pleadings, process, and orders served on or received by Nerium in the state court action must be attached to the Notice of Removal.  True and correct copies of all substantive documents listed in that docket, in the same sequence as they appear on that docket (excluding payment receipts, electronic confirmations, etc.) are attached hereto collectively as **Exhibits 3-12**.

18.    In the event that Plaintiff seeks to remand this case, or the Court considers remand *sua sponte*, Nerium respectfully requests the opportunity to submit each additional argument or evidence in support of removal as may be necessary.

**V.    NON-WAIVER OF DEFENSES.**

19.    Nothing in this Notice shall be interpreted as a waiver or relinquishment of Nerium's right to assert any defenses or affirmative matters, including, without limitation, a motion to dismiss for lack of personal jurisdiction, a motion to transfer venue to the District Court for the Northern District of Texas, a motion to dismiss or stay this action pending arbitration, and a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

WHEREFORE, Nerium respectfully removes this action from the Superior Court of the State of California for the County of Riverside, to this Court.

1   DATED:  August 28, 2018          BLANK ROME LLP

2

3

4                                    By: /s/ Harrison Brown
                                          Mike Margolis
5                                         Ana Tagvoryan
                                          Harrison Brown
6                                         Ping Zhang
                                     Attorneys for Defendants
7                                    NERIUM INTERNATIONAL, LLC and
                                     JEFF OLSON

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   Blank Rome
    Mike Margolis (SBN 87785)
2   mmargolis@blankrome.com
    Ana Tagvoryan (SBN 246536)
3   atagvoryan@blankrome.com
    Harrison Brown (SBN 291503)
4   hbrown@blankrome.com
    Ping Zhang (SBN 312257)
5   pzhang@blankrome.com
    2029 Century Park East | 6th Floor
6   Los Angeles, CA 90067
    Telephone:    424.239.3400
7   Facsimile:    424.239.3434

8   Attorneys for Defendants
    NERIUM INTERNATIONAL, LLC and
9   JEFF OLSON

10          **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

11                     **COUNTY OF RIVERSIDE**

12          **WESTERN REGION: HISTORIC COURTHOUSE**

| | |
|---|---|
| 13  KIMBERLY GERDO, an individual, on behalf of herself and other persons similarly situated, | Case No. RIC1814331 |
| 14 | *[Assigned for all purposes to Hon. Craig G. Riemer, Dept. 5]* |
| 15                        Plaintiffs, | |
| 16          vs. | **NOTICE OF FILING OF NOTICE OF REMOVAL** |
| 17  NERIUM INTERNATIONAL, LLC, a limited liability company, JEFF OLSON, an individual, and DOES 1 THROUGH 25, inclusive, | Complaint Filed:   July 13, 2018 |
| 18 | Trial Date:        Note Set |
| 19                        Defendants. | |

20

21

22

23

24

25

26

27

28

                    **NOTICE OF FILING OF NOTICE OF REMOVAL**

TO THE CLERK OF COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on August 28, 2018, Defendant Nerium International, LLC ("Nerium"), by its undersigned attorney, filed a Notice of Removal in the United States District Court for the Central District of California pursuant to sections 1332, 1441, 1446, and 1453 of Title 28 of the United States Code.  Pursuant to 28 U.S.C. § 1446(d), a copy of the Notice of Removal filed in the United States District Court for the Central District of California is attached hereto as **Exhibit 1** and made a part hereof.

PLEASE TAKE FURTHER NOTICE that pursuant to 28 U.S.C. §§ 1441 and 1446, the filing of the Notice of Removal in the United States District Court for the Central District of California, together with the filing of the attached copy thereof in this Court, effects the removal of this action and this Court may proceed no further unless and until the action is remanded.

DATED:  August 28, 2018                    BLANK ROME LLP

By: _____
Mike Margolis
Ana Tagvoryan
Harrison Brown
Ping Zhang
Attorneys for Defendants
NERIUM INTERNATIONAL, LLC and JEFF OLSON



# RIVERSIDE SUPERIOR COURT

## PUBLIC ACCESS

## Case Report

 **Camera indicates that a document may be purchased.**

**View Document Fee Schedule**

**1** **First Page icon indicates you can view the first page of a Complaint for free.**

[Send me an email when this case is updated (click here)](#)

---

Print This Report

Close This Window

### Case RIC1814331 - GERDO VS NERIUM INTERNATIONAL LLC

### Case RIC1814331 - Complaints/Parties

**Complaint Number:** 0001 — CMP Complaint of KIMBERLY GERDO
**Original Filing Date:** 07/13/2018
**Complaint Status:** ACTIVE

| Party Number | Party Type | Party Name | Attorney | Party Status |
|---|---|---|---|---|
| 1 | Plaintiff | KIMBERLY GERDO | BOHM WILDISH & MATSEN LLP | First Paper Fee Paid |
| 2 | Defendant | NERIUM INTERNATIONAL LLC | Unrepresented | Served 07/19/2018 |
| 3 | Defendant | JEFF OLSON | Unrepresented | Served 07/23/2018 |

### Case RIC1814331 - Actions/Minutes

| Viewed | Date | Action Text | Disposition | Image |
|---|---|---|---|---|
| | 09/11/2018 8:30 AM DEPT. 05 | CASE MANAGEMENT CONFERENCE HEARING - COMPLEX CASE. | | |
| **Minutes** | Print Minute Order | | | |
| | 09/11/2018 8:30 AM DEPT. CLER | NON-PROOF OF SERVICE CLERK'S TRACKING HEARING (NON-APPEARANCE) | Vacated | |
| | 08/27/2018 | CASE MANAGEMENT STATEMENT FILED BY KIMBERLY GERDO | Not Applicable | N/A |
| N | 07/31/2018 | | Not Applicable |  |

|  |  | AMENDED PROOF OF SERVICE FILED ON COMPLAINT FILED 07/13/2018 OF KIMBERLY GERDO AS TO JEFF OLSON WITH SERVICE DATE OF 07/23/18. |  |  |
|---|---|---|---|---|
| N | 07/26/2018 | PROOF OF SERVICE OF CASE MANAGEMENT ORDER #1 SERVED ON NERIUM INTERNATIONAL LLC, JEFF OLSON SERVED 07/26/18 FILED (NON-COMPLAINT) | Not Applicable | 🖼 |
| N | 07/26/2018 | PROOF OF SERVICE (SUB-SERVED AND MAILED) ON COMPLAINT FILED 07/13/2018 OF KIMBERLY GERDO AS TO NERIUM INTERNATIONAL LLC; MAILING DATE OF 07/19/18 FILED. | Not Applicable | 🖼 |
| N | 07/26/2018 | PROOF OF SERVICE (SUB-SERVED AND MAILED) ON COMPLAINT FILED 07/13/2018 OF KIMBERLY GERDO AS TO JEFF OLSON; MAILING DATE OF 07/24/18 FILED. | Not Applicable | 🖼 |
| N | 07/19/2018 | CLASS ACTION CASE MANAGEMENT ORDER #1; HONORABLE JUDGE CRAIG G. RIEMER | Not Applicable | 🖼 |

| **Minutes** | Print Minute Order |
|---|---|

|  | 07/13/2018 | NON-PROOF OF SERVICE HEARING SET FOR 9/11/18 AT 8:30 IN DEPT CLER |  |  |
|---|---|---|---|---|
| N | 07/13/2018 | SUMMONS ISSUED ON COMPLAINT FILED 07/13/2018 OF KIMBERLY GERDO AND FILED. | Not Applicable | 🖼 |
| N | 07/13/2018 | CERTIFICATE OF COUNSEL FILED. THE ZIP CODE IS 92563. | Not Applicable | 🖼 |
|  | 07/13/2018 | CASE MANAGEMENT CONFERENCE HEARING - COMPLEX CASE SET 9/11/18 AT 8:30 IN DEPT. 05. |  |  |
| N | 07/13/2018 | COMPLAINT FILED - CLASS ACTION. (RIVERSIDE) | Not Applicable | 🖼 1 |

| **Minutes** | Print Minute Order |
|---|---|
| Receipt: 180713-0481      $450.00 | |

|  | 07/13/2018 | CASE ASSIGNED TO DEPARTMENT 05 - CLASS ACTION (RIVERSIDE) |  |  |
|---|---|---|---|---|

### Case RIC1814331 - Pending Hearings

| Date | Action Text | Disposition | Image |
|---|---|---|---|
| 09/11/2018 8:30 AM DEPT. 05 | CASE MANAGEMENT CONFERENCE HEARING - COMPLEX CASE. |  |  |
| 09/11/2018 8:30 AM DEPT. CLER | NON-PROOF OF SERVICE CLERK'S TRACKING HEARING (NON-APPEARANCE) | Vacated |  |

Print This Report

Close This Window

1    James G. Bohm (SBN 132430)
     jbohm@bohmwildish.com
2    Klaus Heinze (SBN 279634)
     kheinze@bohmwildish.com
3    Christopher J. Green (SBN 295874)
     cgreen@bohmwildish.com
4    **BOHM WILDISH & MATSEN, LLP**
     695 Town Center Drive, Suite 700
5    Costa Mesa, California 92626
     Telephone: (714) 384-6500
6    Facsimile: (714) 384-6501
7
     Attorneys for Plaintiffs
8    KIMBERLY GERDO and the Putative Class

F I L E D
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

JUL 1 3 2018

B. VOTRUBA

9            SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                 COUNTY OF RIVERSIDE

11
12    KIMBERLY GERDO, an individual; on behalf of herself and other persons similarly situated;

   Case No. **RIC 18 1 4 3 3 1**

13          Plaintiffs,

   <u>**CLASS ACTION**</u>

14       v.

   **COMPLAINT FOR:**

15    NERIUM INTERNATIONAL, LLC, a limited
16    liability company; JEFF OLSON, an individual; and DOES 1 through 25, inclusive,

   (1)   **FRAUD AND DECEIT;**
   (2)   **TREBLE DAMAGES UNDER PENAL CODE SECTION 496;**

17          Defendants.

   (3)   **NEGLIGENT MISREPRESENTATION**

18

   (4)   **BREACH OF CONTRACT**

19
20

   (5)   **BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

21
22

   (6)   **VIOLATION OF BUSINESS AND PROFESSIONS CODE § 17200, ET SEQ.**

23

   **DEMAND FOR JURY TRIAL**

24
25
26       COMES NOW PLAINTIFF Kimberly Gerdo ("Plaintiff"), individually and on behalf of all
27    persons similarly-situated, by her undersigned attorneys, and submits the following Complaint against
28

1    Nerium International, LLC, a Texas Limited Liability Company ("Nerium"); Jeff Olson, an individual

2    ("Olson"); and DOES 1-25, inclusive (collectively the "Defendants").

3                                                **I.**

4                                    **INTRODUCTION**

5         1.    Defendant Nerium is a limited liability company with a principal place of business in

6    Texas, and doing business in the State of California, County of Riverside.

7         2.    Defendant Olson is the Founder and Chief Executive Officer of Nerium.

8         3.    Plaintiff is, and all at relevant times mentioned herein was, a resident of the State of

9    California, County of Riverside.

10        4.    This is a class, collective, and representative action brought by Plaintiff, on behalf of

11   herself and others similarly situated.  Plaintiff and those similarly situated are or were Nerium's

12   "Brand Partners."  The Class is made up of each person who has purchased a Nerium Brand Partner

13   Launch Kit since January 1, 2010.

14        5.    Plaintiffs do not know the true names and capacities, whether individual, corporate,

15   associate, representative, partnership or otherwise, of Defendants named herein as DOES 1 through

16   25, inclusive, and thus sues these Defendants under fictitious names and capacities.

17        6.    Plaintiffs are informed and believe, and thereon allege, that each of the DOE

18   Defendants is responsible in some manner for the unlawful actions, policies, practices, wrongs,

19   injuries and harms alleged in this complaint, and that Plaintiff's damages were legally caused by those

20   Defendants, among others.

21                                               **II.**

22                             **JURISDICTION AND VENUE**

23        7.    This Court has subject matter jurisdiction over Plaintiffs' claims as a court of general

24   jurisdiction.  Nerium conducted and continue to conduct business within California.  Olson's conduct,

25   as described below, defrauded Plaintiffs located in California.

26        8.    This Court has jurisdiction over this action pursuant to California Code of Civil

27   Procedure ("C.C.P.") § 410.10 because at all relevant times herein, Defendants Nerium and Olson

28   transacted business in the County of Riverside, State of California. The violations and other acts

1    committed by Nerium and Olson, as alleged herein, occurred in the County of Riverside, State of

2    California, and harmed residents located in the County of Riverside, State of California.   On

3    information and belief, Defendants, and each of them, continue to transact business, throughout the

4    State of California, including the County of Riverside.

5           9.     Venue is proper in this Court pursuant to C.C.P. § 395 because Defendant Nerium

6    entered into the underlying contract with Plaintiff in the County of Riverside, State of California and

7    the foregoing jurisdiction is where Defendant Nerium incurred its obligation to Plaintiffs and where

8    said obligations were to be performed.

9           10.    Plaintiff seeks damages and/or disgorgement on behalf of herself and all others

10   similarly-situated under the laws of the State of California.

11          11.    Plaintiff also seeks declaratory and other judicial relief on behalf of herself and all

12   other similarly-situated under the laws of the State of California.

13          12.    Venue is proper in Riverside County pursuant to Code of Civil Procedure section 395

14   because Plaintiffs' causes of action arise, in part, from obligations arising in Riverside County and

15   damages that occurred and continue to occur in Riverside County, California.

16                                               **III.**

17                                   **GENERAL ALLEGATIONS**

18          13.    Nerium is a multi-level marketing company which sells a variety of "anti-aging"

19   skincare and wellness products.

20          14.    Nerium's sales representatives are known as "Brand Partners."

21          15.    While each Brand Partner sells Nerium's products and earns commissions based on

22   sales, Brand Partners are primarily rewarded with bonuses and commissions by enrolling their

23   customers as Brand Partners, and by encouraging the Brand Partners they have recruited to recruit

24   additional Brand Partners.

25          16.    Nerium represented to Plaintiff that if Plaintiff became a Brand Partner, Nerium would

26   provide a business opportunity that would help Plaintiff build 'a dream lifestyle' and that Plaintiff

27   could be financially independent by virtue of selling Nerium's 'age-defying' creams.

28

17. On or about February 3, 2013, Plaintiff decided to become a Brand Partner for Nerium to "live the dream." Plaintiff learned about the process from Nerium's website (www.nerium.com), Nerium's blog (www.neriumblog.net), promotional materials distributed by Nerium, and paperwork provided by Nerium. To become a Brand Partner, Nerium required Plaintiff to purchase a Brand Partner Launch Kit for $499.95.

18. Plaintiff was informed that the Brand Partner Launch Kit would be sold to Plaintiff at Nerium's cost. Nerium's United States Policies and Procedures Manual states that the Launch Kit is sold at "Company Cost." See Section 1.01(b) of Nerium International's United States Policies and Procedures Manual:

> b) The applicant purchases, at Company cost, a Brand Partner Launch Kit [...] This sum is not a service or franchise fee, but rather is strictly to offset costs incurred by the Company for educational and business materials required for a Brand Partner of the Company; and Plaintiff signed up as a "Brand Partner" with Nerium International.

19. A copy of Nerium International's United States Policies and Procedures Manual is attached hereto as EXHIBIT "A" and is incorporated herein by reference.

20. On or about February 28, 2013, Plaintiff paid $499.95 for a Brand Partner Launch Kit, based on the belief that the Brand Partner Launch Kit was sold "at Company cost." A copy of Plaintiff's 2013 receipt is attached as EXHIBIT "B."

21. Sometime thereafter, Plaintiff cancelled her Nerium Brand Partner account.

22. On or about January 15, 2018, Plaintiff again decided to become a Brand Partner for Nerium. Plaintiff consulted Nerium's website (www.nerium.com), Nerium's blog (www.neriumblog.net), promotional materials distributed by Nerium, and paperwork provided by Nerium, and confirmed that to become a Brand Partner, Plaintiff was required to purchase a Brand Partner Launch Kit for $499.95.

23. Plaintiff purchased a Brand Partner Launch Kit on January 15, 2018. A copy of Plaintiff's 2018 receipt is attached as EXHIBIT "C."

1    24.     On information and belief, Nerium did not sell the Brand Partner Launch Kit to

2  Plaintiff and all similarly situated Brand Partners "at Company cost." Instead, Nerium sold the Brand

3  Partner Launch Kits at a substantial profit to both Nerium and Olson personally.

4    25.     On information and belief, Nerium purchases materials from Brand Partner Launch

5  Kits from Success Partners, a company located in Texas which engages in the marketing business.

6    26.     On information and belief, Jeff Olson intentionally negotiated an inflated purchase

7  price for materials purchased from Success Partners for the Brand Partner Launch Kits, and as part of

8  this arrangement, Jeff Olson personally receives (either directly or indirectly) a "kick-back" from

9  Success Partners for all Brand Partner Launch Kits which Nerium purchases from Success Partners.

10   27.     In addition to the inflated purchase price from Success Partners, and the "kick-back"

11  that Olson personally receives directly from Success Partners, Nerium substantially marks up the

12  Brand Partner Launch Kits significantly above its actual cost, such that Nerium makes a large profit

13  from the sale of all Brand Partner Launch Kits.

14   28.     The arbitration provision in Nerium's Policy and Procedures is procedurally and

15  substantively unconscionable and unenforceable.

16                                         **IV.**

17                        **CLASS ACTION ALLEGATIONS**

18   29.     Pursuant to C.C.P. § 382, Plaintiff brings this action on behalf of herself and as a

19  representative of the following class of persons who are similarly-situated (the "Class"): Any resident

20  of the State of California who purchased a Brand Partner Launch Kit at any time since January 1,

21  2010 (the "Class Period").

22   30.     Those individuals and entities are herein referred to as "Class Members" or "the Class."

23  The proposed "Class Representative" is Plaintiff, who falls within the definition of a Class Member.

24   31.     This action is properly maintainable as a class action.

25   32.     The Class Members are so numerous and geographically diverse that joinder would be

26  impracticable. On information and belief, Defendants fraudulently misrepresent that the Brand

27  Partner Launch Kits are sold at "cost" to customers throughout the United States of America, and,

28

BOHM WILDISH &
MATSEN                                      5
bohmwildish.com                      COMPLAINT

1  also on information and belief, there are at least tens of thousands of Class Members spread
2  throughout the State of California.

3       33.    Plaintiff is an adequate representative of the class because her interests do not conflict
4  with the interests of the other members of the potential Class that Plaintiff seeks to represent. Plaintiff
5  is committed to prosecuting the action and has retained competent counsel experienced in litigation
6  of this nature. Accordingly, Plaintiff and her counsel will fairly and adequately protect the interests
7  of the Class.

8       34.    Plaintiff will fairly, adequately, and vigorously represent the interests of the Class in
9  that Plaintiff's claims are typical and representative of the claims of all members of the Class, all of
10 whom have purchased a Brand Partner Launch Kits from Nerium since 2010 based on the fraudulent
11 misrepresentation that Brand Partner Launch Kits were sold at Nerium's actual cost.

12      35.    The proposed Class is ascertainable in that the members can be identified and located
13 using information contained in Defendants' records of Brand Partners.

14      36.    There are questions of law and fact common to the members of the Class which
15 predominate over any questions affecting any individual member, and a class action is superior to all
16 other available methods for the fair and efficient adjudication of the controversy.

17      37.    The common questions of law and fact common to the class that predominate over any
18 questions that may affect only individual members of the Class, include, but are not limited to:

19             a.  Whether Defendants' conduct violated California Business & Professions Code §
20               17200 *et seq.*;

21             b.  Whether Defendants engaged in unfair business practices aimed at deceiving
22               Plaintiffs and the Class members by misrepresenting the actual value of the Brand
23               Partner Launch Kits;

24             c.  Whether Defendants engaged in unfair business practices aimed at deceiving
25               Plaintiffs and the Class members by misrepresenting that the Brand Partner Launch
26               Kits were sold at Nerium's cost;

27
28

d. Whether Defendants unfairly or fraudulently took money from the Class members by conduct perpetrated in violation of California Business & Professions Code § 17200 *et seq.*;

e. Whether Defendants obtained monies from the Class members by false pretenses so as to entitle the Class members to treble damages under California Penal Code § 496.

f. Whether Defendants made fraudulent misrepresentations by misrepresenting the actual value of the Brand Partner Start Kits, and misrepresenting that the Brand Partner Launch Kits were sold at Nerium's cost;

g. Whether Defendants made negligent misrepresentations by misrepresenting the actual value of the Brand Partner Start Kits and misrepresenting that the Brand Partner Launch Kits were sold at Nerium's cost;

h. Whether Defendants breached their implied covenant of good faith and fair dealing towards the Class members;

i. Whether any defenses raised are meritorious;

j. Whether Plaintiff and the Class are entitled to damages;

k. The measure of damages suffered by Plaintiff and the Class members;

l. Whether Plaintiffs and the Class members are entitled to punitive damages;

m. Whether Plaintiff and the Class members are entitled to treble damages under Penal Code § 496.

n. Whether Plaintiff and the Class members are entitled to declaratory and injunctive relief;

o. Whether Plaintiff and the Class members are entitled to rescission;

p. Whether Plaintiff and the Class members are entitled to disgorgement;

q. Whether Plaintiff and the members of the Class are entitled to recover damages in the form of unlawfully collected taxes.

r. Whether the arbitration provision in Nerium's Policy and Procedures is procedurally and substantively unconscionable and unenforceable.

38.     These common questions predominate over all Class members' claims, including those of the Class Representative. Indeed, there is essentially no difference between the Class Representative's claims and the other Class members' claims. As a result, the Class Representative's claims are typical of, if not identical to, claims owned by and to be asserted by the rest of the Class members.

39.     The prosecution of separate actions by individual Class members would create the risk of inconsistent or varying adjudications with respect to individual Class members which would establish incompatible standards of conduct for Defendants or which would, as a practical matter, be dispositive of the interests of the other members not patties to the adjudication or substantially impair or impede their ability to protect their interests. Defendants have acted, or refused to act, on grounds generally applicable to, and causing injury to, the Class. Therefore, preliminary and final injunctive relief and damages for the illegally collected increased payments on behalf of the Class as a whole is appropriate.

40.     There are no defenses of a unique nature that may be asserted against Plaintiff, herself, as distinguished from the other members of the class, and the relief sought is common to the class. Plaintiff is an individual who purchased Brand Partner Launch Kits and does not have any interest that is in conflict with or is antagonistic to the interests of the members of the Class, on whose behalf she represents in this action.

41.     Plaintiff specifically excludes Defendants or its related entities from the proposed class, all subsidiaries or affiliates of Defendants; any entity in which Defendants has a controlling interest; and any and all of Defendants' employees, affiliates, legal representatives, heirs, successors or assignees.

42.     Plaintiff also specifically excludes from the class any person or entity that has previously commenced and concluded a lawsuit against the Defendants arising out of the subject matter of this lawsuit.

43.     Plaintiff reserves the right to amend or otherwise alter the Class definition present to the Court at the appropriate time, or propose sub-Classes, in response to facts learning through discovery, legal arguments advanced by Defendants or otherwise.

## V.

### FIRST CAUSE OF ACTION

### Fraud and Deceit

(Against Defendants by Plaintiff in Her Individual and Representative Capacity on Behalf of the Class)

44.     Plaintiffs incorporates each and every allegation contained in the preceding paragraphs of this complaint as fully set forth, and further allege:

45.     Plaintiff brings this cause of action on behalf of herself and on behalf of others similarly situated.

46.     California Civil Code § 1571 provides that fraud may be actual or constructive.

47.     California Civil Code § 1572 provides: "Actual fraud, within the meaning of this Chapter, consists in any of the following acts, committed by a party to the contract, or with his connivance, with intent to deceive another party thereto, or to induce him to enter into the contract: 1. The suggestion, as a fact, of that which is not true, by one who does not believe it to be true; 2. The positive assertion, in a manner not warranted by the information of the person making it, of that which is not true, though he believes it to be true; 3. The suppression of that which is true, by one having knowledge or belief of the fact; 4. A promise made without any intention of performing it; or, 5. Any other act fitted to deceive." California Civil Code § 1574 adds that actual fraud is always a question of fact.

48.     California Civil Code § 1573 provides: "Constructive fraud consists: 1. In any breach of duty which, without an actually fraudulent intent, gains an advantage to the person in fault, or any one claiming under him, by misleading another to his prejudice, or to the prejudice of any one claiming under him; or, 2. In any such act or omission as the law specially declares to be fraudulent, without respect to actual fraud."

49.     California Civil Code §§ 1709 and 1710 define deceit.

50.     California Civil Code § 1709 provides: "One who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers."

51.     California Civil Code § 1710 provides: "A deceit, within the meaning of the last section, is either: 1. The suggestion, as a fact, of that which is not true, by one who does not believe it to be true; 2. The assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true; 3. The suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact; or, 4. A promise, made without any intention of performing it."

52.     Plaintiff, individually, and the Class members, individually, purchased Brand Partner Launch Kits from Nerium based on Nerium's fraudulent representation that Brand Partner Launch Kits were sold at "Company Cost."

53.     Plaintiff, individually, and the Class members, individually, were, to become a Nerium Brand Partner, required to purchase a Brand Partner Launch Kit. Nerium fraudulently misrepresentation that all such Brand Partner Launch Kits were sold "at Company cost."

54.     Defendants knew that these representations were false when they made them, or Defendants made such representations recklessly and without regard for their truth;

55.     Defendants intended Plaintiff to rely upon such representations.

56.     Plaintiff reasonably relied upon Defendants' representations.

57.     On information and belief, Jeff Olson negotiated an inflated purchase price for materials purchased from Success Partners for the Brand Partner Launch Kits, and as part of this arrangement, Jeff Olson personally receives (either directly or indirectly) a "kick-back" from Success Partners for all Brand Partner Launch Kits which Nerium purchases from Success Partners.

58.     The same material misrepresentations contained in the wording of Section 1.01(b) of the Nerium Brand Partner Policies and Procedures, were actually communicated to each member of the Class, and, therefore, as a matter of law, an inference of reliance arises as to the entire class.

59.     For example, see *Occidental Land, Inc. v. Superior Court* (1976) 18 Cal.3d 355, 363 [134 Cal.Rptr. 388, 556 P.2d 750] (*Occidental Land*), and *Vasquez v. Superior Court* (1971) 4 Cal.3d 800, 814 [94 Cal.Rptr. 796, 484 P.2d 964] (*Vasquez*), which both held that "**when the same material misrepresentations have actually been communicated to each member of a class, an inference**

1   **of reliance arises as to the entire class.** (*Vasquez, supra*, 4 Cal.3d at p. 814 & fn. 9; *Occidental*

2   *Land, supra*, 18 Cal.3d at pp. 358, 359, 363.)"

3       60.    The California Supreme Court further stated in *Vasquez v. Superior Court* (1971) 4

4   Cal.3d 800, 814:

5      b. Reliance

6

7      The next element which plaintiffs must prove in order to prevail is reliance upon the
alleged misrepresentations. If they can establish without individual testimony that the

8      representations were made to each plaintiff and that they were false, it should not be
unduly complicated to sustain their burden of proving reliance thereon as a common

9      element.

10      The rule in this state and elsewhere is that it is not necessary to show reliance upon
false. representations by direct evidence, 'The fact of reliance upon alleged false

11      representations may be inferred from the circumstances attending the transaction
which oftentimes afford much stronger and more satisfactory evidence of the

12      inducement which prompted the party defrauded to enter into the contract than his
direct testimony to the same effect.' (Hunter v. McKenzie (1925) 197 Cal. 176, 185,

13      1094; *Gormly v. Dickinson* (1960) 178 Cal.App.2d 92, 105, 2 Cal.Rptr. 650; *Thomas
v. Hawkins* (1950) 96 Cal.App.2d 377, 380; *Mathewson v. Naylor* (1937) 18

14      Cal.App.2d 741, 744; *see Bank of St Helena v. Lilienthal-Brayton Co.* (1928) 89

15      Cal.App. 258, 262; 12 Williston on Contracts (3d ed. 1970) p. 480)

16      Williston speaks in terms of a presumption; **'Where representations have been made
in regard to a material matter and action has been taken, in the absence of**

17      **evidence showing the contrary, it will be presumed that the representations were
relied on.'** (12 Williston on Contracts (3d ed. 1970) 480.) This rule is in accord with

18      the Restatement. (Rest, Contracts, § 479, illus. 1.) Whether an inference (as held in

19      *Hunter v. McKenzie, supra*, 197 Cal. 176, 185) or a presumption (as described by
Williston and the Restatement) of reliance arises upon proof of a material false

20      representation we need not determine in this case. **It is sufficient for our present
purposes to hold that if the trial court finds material misrepresentations were**

21      **made to the class members, at least an inference of reliance would arise as to the**

22      **entire class.** Defendants may, of course, introduce evidence in rebuttal.

23      Some federal class action cases in which stockholders have alleged fraud on the basis
of printed misrepresentations in a corporation prospectus hold that individual proof

24      may not be required to establish reliance by each stockholder. (See, e.g., *Green v. Wolf

25      Corporation* (2d Cir. 1968) 406 F.2d 291, 301; *Dolgow v. Anderson*, supra, 43 F.R.D.
472, 491.)

26   *Vasquez v. Superior Court* (1971) 4 Cal.3d 800, 814 (emphasis added).

27

28

61.     Plaintiff (and each of the Class members) was harmed, by, inter alia, paying an inflated purchase price of the Brand Partner Launch Kits which was above Nerium's actual costs.

62.     Plaintiffs (and each of the Class members) reliance on Defendants' representations was a substantial factor in causing Plaintiffs (and each of the Class Members') harm.

## VI.

## SECOND CAUSE OF ACTION

## TREBLE DAMAGES UNDER PENAL CODE SECTION 496(c)

## (Against Defendants by Plaintiff in Her Individual and Representative Capacity on Behalf of the Class)

63.     Plaintiffs incorporate each and every allegation contained in the preceding paragraphs of this complaint as fully set forth, and further allege:

64.     Plaintiff repeats and re-alleges each and every allegation contained above as though fully set forth herein.

65.     Penal Code § 496 provides that a person who has been injured by a theft of his property, including a theft by false pretenses, may bring an action for three times the amount of actual damages, if any, sustained by the plaintiff, costs of suit, and reasonable attorneys' fees.

66.     Penal Code § 496, in pertinent part, reads as follows (with emphasis added):

496.
(a)**Every person who** buys or **receives any property** that has been stolen or **that has been obtained in any manner constituting theft or** extortion, knowing the property to be so stolen or obtained, or who conceals, sells, withholds, or aids in concealing, selling, or withholding any property from the owner, knowing the property to be so stolen or obtained, shall be punished by imprisonment in a county jail for not more than one year, or imprisonment pursuant to subdivision (h) of Section 1170. However, if the district attorney or the grand jury determines that this action would be in the interests of justice, the district attorney or the grand jury, as the case may be, may, if the value of the property does not exceed nine hundred fifty dollars ($ 950), specify in the accusatory pleading that the offense shall be a misdemeanor, punishable only by     imprisonment     in     a     county     jail     not     exceeding     one     year.

(b) A principal in the actual theft of the property may be convicted pursuant to this section. However, no person may be convicted both pursuant to this section and of the theft          of          the          same          property.

1    (c)Any person who has been injured by a violation of subdivision (a) or (b) may
     bring an action for three times the amount of actual damages, if any, sustained
2    by the plaintiff, costs of suit, and reasonable attorney's fees.

3        67.    A criminal conviction under Penal Code § 496(a) is not a prerequisite to recovery of

4    treble damages under section Penal Code section 496(e). **The phrase "any manner constituting**

5    **theft" under § 496(a) includes theft by false pretense.** *Bell v. Feibush* (2013) 212 Cal.App.4th

6    1041, 1043 (emphasis added).

7        68.    The case of *Bell v. Feibush* (2013) 212 Cal.App.4th 1041, contains the following

8    statement:

9        We hold, based on the statutory language, a criminal conviction under section 496(a)
10       is not a prerequisite to recovery of treble damages under section 496(c). We also hold
         the phrase "any manner constituting theft" under section 496(a) includes theft by false
11       pretense.

12   *Bell v. Feibush* (2013) 212 Cal.App.4th 1041, 1043.

13       69.    Penal Code Section 484 defines "theft" for the purposes of Penal Code § 496.

14       70.    Penal Code Section 484(a) contains the following statement:

15       **Every person** who shall feloniously steal, take, carry, lead, or drive away the personal
16       property of another, or who shall fraudulently appropriate property which has been
         entrusted to him or her, or **who shall knowingly and designedly, by any false or**
17       **fraudulent representation or pretense, defraud any other person of money, labor**
         **or real or personal property**, or who causes or procures others to report falsely of
18       his or her wealth or mercantile character and by thus imposing upon any person,
         obtains credit and thereby fraudulently gets or obtains possession of money, or
19       property or obtains the labor or service of another, **is guilty of theft**. In determining
         the value of the property obtained, for the purposes of this section, the reasonable and
20       fair market value shall he the test, and in determining the value of services received
         the contract price shall be the test. If there he no contract price, the reasonable and
21       going wage for the service rendered shall govern. For the purposes of this section, any
22       false or fraudulent representation or pretense made shall be treated as continuing, so
         as to cover any money, property or service received as a result thereof, and the
23       complaint, information or indictment may charge that the crime was committed on
         any date during the particular period in question. The hiring of any additional
24       employee or employees without advising each of them of every labor claim due and
25       unpaid and every judgment that the employer has been unable to meet shall be prima
         facie evidence of intent to defraud.

26
27       71.    It is generally held that a theft victim's consent to a taking negates larceny only if that

28   consent is freely and unconditionally given. (*People v. Davis* (1998) 19 Cal.4th 301, 305;*People v.*

1   *Brock* (2006) 143 Cal.App.4th 1266, 1275.) As a result, consent obtained by force, duress, or fraud

2   is ineffective. (Davis, at p. 305 & fn. 3; *People v. Brock* at p. 1275.) Consent obtained by fraud,

3   however, is also the essence of theft by trick and device and false pretenses. If consent obtained by

4   fraud is, for purposes of larceny, the same as no consent at all, every theft by false pretenses is also

5   larceny.

6       72.    The payments made by Plaintiff to Defendants for the Brand Partner Launch Kits were,

7   in no way, made with Plaintiff's consent, but, rather, upon Defendants' fraudulent misrepresentation

8   that Nerium's Brand Partner Launch Kits were sold at "Company Cost."

9       73.    Each of the false and fraudulent representations made by Defendants to Plaintiff in

10   Section 1.01 of the Nerium Policies and Procedures that represented that the Brand Partner Launch

11   Kits were sold at "Company Cost," in response to which Plaintiff made payments of monies to

12   Defendants, to which Defendants were not legally entitled, constituted theft as defined under Penal

13   Code Section 484 by Defendants, by false pretenses, of Plaintiffs money, in respect to which she is

14   entitled to recover treble damages under Penal Code Section 496, as well as costs of suit and

15   reasonable attorneys' fees.

16                         **VII.**

17       **THIRD CAUSE OF ACTION: NEGLIGENT MISREPRESENTATION**

18       **(Against Defendants by Plaintiff in Her Individual and Representative Capacity on**

19                   **Behalf of the Class)**

20       74.    Plaintiff repeats and re-alleges each and every allegation contained above as though

21   fully set ford herein.

22       75.    Plaintiff brings this cause of action on behalf of herself and on behalf of others

23   similarly situated.

24       76.    Plaintiff, individually, and the Class members, individually, purchased a Brand Partner

25   Launch Kit from Nerium.

26       77.    Plaintiff received Nerium's United States Policies and Procedures Manual, which

27   indicated in Section 1.01 which indicated as follows:

28

b) The applicant purchases, at Company cost, a Brand Partner Launch Kit, which contains Brand Partner Forms (including, but not limited to, Brand Partner Applications and Product Order Forms), Company information and brochures, which are sales materials (not for resale). This sum is not a service or franchise fee, but rather is strictly to offset costs incurred by the Company for educational and business materials required for a Brand Partner of the Company; and Plaintiff signed up as a "Brand Partner" with Nerium International.

78.     Defendants had no reasonable grounds for believing the representations were true when they made them.

79.     Defendants intended Plaintiff to rely upon such representations.

80.     Plaintiff reasonably relied upon Defendants' representations.

81.     The same material misrepresentation was actually communicated to each member of the Class, and, therefore, as a matter of law, an inference of reliance arises as to the entire class.

82.     For example, see *Occidental Land, Inc. v. Superior Court* (1976) 18 Cal.3d 355, 363 [134 Cal.Rptr, 388, 556 P.2d 750] (Occidental Land), and *Vasquez v. Superior Court* (1971) 4 Cal.3d 800, 814 [94 Cal.Rptr. 796, 484 P.2d 964] (Vasquez), which both held that **"when the same material misrepresentations have actually been communicated to each member of a class, an inference of reliance arises as to the entire class.** (*Vasquez, supra,* 4 Cal.3d at p. 814 & fn. 9; *Occidental Land, supra,* 18 Cal.3d at pp. 358, 359, 363.)"

83.     The California Supreme Court further stated in *Vasquez v. Superior Court* (1971) 4 Cal.3d 800, 814:

b. Reliance

The next element which plaintiffs must prove in order to prevail is reliance upon the alleged misrepresentations. If they can establish without individual testimony that the representations were made to each plaintiff and that they were false, it should not be unduly complicated to sustain their burden of proving reliance thereon as a common element.

The rule in this state and elsewhere is that it is not necessary to show reliance upon false representations by direct evidence, 'The fact of reliance upon alleged false representations may be inferred from the circumstances attending the transaction which oftentimes afford much stronger and more satisfactory evidence of the inducement which prompted the party defrauded to enter into the contract than his direct testimony to the same effect.' (Hunter v. McKenzie (1925) 197 Cal. 176, 185, 1094; *Gormly v. Dickinson* (1960) 178 Cal.App.2d 92, 105, 2 Cal.Rptr. 650; *Thomas v. Hawkins* (1950) 96 Cal.App.2d 377, 380; *Mathewson v. Naylor* (1937) 18

Cal.App.2d 741, 744; *see Bank of St Helena v. Lilienthal-Brayton Co.* (1928) 89 Cal.App. 258, 262; 12 Williston on Contracts (3d ed. 1970) p. 480)

Williston speaks in terms of a presumption; **'Where representations have been made in regard to a material matter and action has been taken, in the absence of evidence showing the contrary, it will be presumed that the representations were relied on.**' (12 Williston on Contracts (3d ed. 1970) 480.) This rule is in accord with the Restatement. (Rest, Contracts, § 479, illus. 1.) Whether an inference (as held in *Hunter v. McKenzie, supra*, 197 Cal. 176, 185) or a presumption (as described by Williston and the Restatement) of reliance arises upon proof of a material false representation we need not determine in this case. **It is sufficient for our present purposes to hold that if the trial court finds material misrepresentations were made to the class members, at least an inference of reliance would arise as to the entire class.** Defendants may, of course, introduce evidence in rebuttal.

Some federal class action cases in which stockholders have alleged fraud on the basis of printed misrepresentations in a corporation prospectus hold that individual proof may not be required to establish reliance by each stockholder. (See, e.g., *Green v. Wolf Corporation* (2d Cir. 1968) 406 F.2d 291, 301; *Dolgow v. Anderson*, supra, 43 F.R.D. 472, 491.)

*Vasquez v. Superior Court* (1971) 4 Cal.3d 800, 814.

84.    Plaintiff (and each of the Class members) was harmed, by, inter alia, paying the inflated purchase price of the Brand Partner Launch Kits which was not Nerium's actual cost.

85.    Plaintiffs (and each of the Class members') reliance on Defendants' representation was a substantial factor in causing Plaintiffs harm.

## VIII.

## FOURTH CAUSE OF *ACTION*:

## BREACH OF CONTRACT

**(Against Defendants by Plaintiff in Her Individual and Representative Capacity on Behalf of the Class)**

86.    Plaintiff repeats and re-alleges each and every allegation contained above as though fully set forth herein.

87.    Plaintiff brings this cause of action on behalf of herself and on behalf of others similarly situated.

88.    Nerium represented to Plaintiff that the Brand Partner Launch Kits were sold "at Company cost."

1      89.    However, Nerium did not sell the Brand Partner Launch Kits "at Company cost."

2      90.    Nerium breached Plaintiff's agreement with Nerium by not providing Brand Partner

3  Launch Kits "at Company cost."

4      91.    Plaintiff suffered damages legally caused by the breach of contract as set forth herein.

5      92.    As a direct and proximate result of Nerium's conduct, Plaintiff sustained damages,

6  including loss of earnings and expenses in an amount to be established at trial. As a result of this

7  wrongful conduct, Plaintiff is entitled to attorneys' fees, costs, and injunctive relief.

8                                           **IX.**

9                          **FIFTH CAUSE OF *ACTION***

10    **BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

11   **(Against Defendants by Plaintiff in Her Individual and Representative Capacity on**

12                         **Behalf of the Class)**

13      93.    Plaintiff repeats and re-alleges each and every allegation contained above as though

14  fully set forth herein.

15      94.    Plaintiff brings this cause of action on behalf of herself and on behalf of others

16  similarly situated.

17      95.    There is an implied covenant of good faith and fair dealing in every contract that

18  neither party will do anything which will unfairly injure the right of the other to receive the benefits

19  of the agreement.

20      96.    The covenant of good faith and fair dealing, implied by law in every contract, exists

21  to prevent one contracting party from unfairly frustrating the other party's right to receive the benefits

22  of the agreement made.

23      97.    Plaintiff and Defendants entered into a contract, evidenced by and whose terms were

24  set forth in Nerium's Policies and Procedures.

25      98.    Plaintiff did all, or substantially all of the significant things that the contract required

26  Plaintiff to do or was excused from having to do those things.

27      99.    All conditions required for Defendants' performance had occurred.

28

1       100.    Nerium represented to Plaintiff and the entire Putative Class that the Brand Partner

2   Launch Kits were sold "at Company cost."

3       101.    However, Nerium did not sell the Brand Partner Launch Kits "at Company cost."

4       102.    Nerium breached the agreement by not selling Brand Partner Launch Kits "at

5   Company cost."

6       103.    By failing to sell the Brand Partner Launch Kits "at Company cost," as represented in

7   Nerium's United States Policies and Procedures Manual, Section 1.01(b), Nerium unfairly interfered

8   with Plaintiff's right to receive the benefits of the contract by selling Plaintiff Brand Partner Launch

9   Kits which were worth significantly less than the amount represented by Nerium.

10      104.    Plaintiff performed all the duties and conditions of the agreement.

11      105.    Defendants knew that Plaintiff had fulfilled all of her duties and conditions under the

12  agreement.

13      106.    Defendants breached the implied covenant of good faith and fair dealing under the

14  agreement by failing to provide the Brand Partner Launch Kits at the price specified in the agreement

15  and, furthermore, by failing to notify Plaintiff of the breach, and, furthermore, failing to remedy the

16  overcharge.

17      107.    As a direct and proximate result of Defendants' conduct, Plaintiff sustained damages

18  in an amount to be established at trial. As a result of this wrongful conduct, Plaintiff is entitled to

19  attorneys' fees, costs, and injunctive relief.

20                                          X.

21                          **SIXTH CAUSE OF** *ACTION*

22              **VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW,**

23                      **BUS. & PROF. CODE § 17200, et seq.**

24      **(Against Defendants by Plaintiff in Her Individual and Representative Capacity on**

25                              **Behalf of the Class)**

26      108.    Plaintiff repeats and re-alleges each and every allegation contained above as though

27  fully set forth herein.

28

1    109.    Plaintiff brings this cause of action on behalf of herself and on behalf of others
2  similarly situated.

3    110.    California Business & Professions Code § 17200 et seq (the Unfair Competition Law
4  - "UCL") defines unfair competition to mean and include "unlawful, unfair, or fraudulent business
5  act or practice"; "unfair, deceptive, untrue, or misleading advertising"; and causing "to be made or
6  disseminated before the public in this state … in any [] manner or means whatever… any statement
7  [concerning the sale of goods or services] which is untrue or misleading, and which is known, or
8  which by the exercise of reasonable care should be known, to be untrue or misleading". Cal. Bus. &
9  Prof. Code § 17200; Cal. Bus. & Prof. Code § 17500.

10    111.    Plaintiff alleges that the above-described conduct by Nerium violated the UCL,
11  including that Nerium engaged in business acts and practices, including deceptive and misleading
12  statements, that were intended to and did result in Plaintiff and the Putative Class believing that
13  Nerium was selling the Brand Partner Launch Kits were sold "at Company cost," when in fact,
14  Nerium was not selling the Brand Partner Launch Kits at Company cost.

15    112.    Nerium engaged these business acts and practices, including deceptive and misleading
16  statements, that were intended to and did encourage and facilitate sales of its over-priced products
17  such that Nerium would generate significant profits at Plaintiff's expense.

18    113.    Plaintiff and the class were injured in fact and lost money as a result of these violations.

19    114.    Nerium's wrongful conduct impacts the public interest because it is a pattern of illegal
20  conduct that has been repeated on thousands of occasions and continues to the present.

21    115.    Plaintiff, for herself and on behalf of others similarly situated, seeks to force Nerium
22  to remedy its conduct and to obtain restitution of all funds obtained by Nerium through the use of
23  these practices.

24    116.    Plaintiff is entitled to an award of attorneys' fees, costs and expenses pursuant to Code
25  of Civil Procedure § 1021.5.

26  //
27  //
28  //

## XI.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff pray for judgment against Defendants Nerium, Jeff Olson, and Does 1 through 25, inclusive, as follows:

1. An order certifying this case as a Class action pursuant to C.C.P. § 382;

2. An order appointing Plaintiff's counsel as class counsel;

3. For equitable relief, including restitution;

4. For actual damages according to proof;

5. For compensatory damages as permitted by law;

6. For punitive damages as permitted by law;

7. For treble damages pursuant to Penal Code Section 496.

8. For disgorgement of and refund to Plaintiffs of all sums paid by Plaintiffs in excess of Nerium's actual cost for Nerium Brand Partner Launch Kits;

9. For restitutionary disgorgement of all profits Defendants obtained as a result of their unfair competition;

10. For pre-judgment interest to the fullest extent allowed by law;

11. For reasonable attorneys' fees;

12. For costs of suit herein; and

13. For any and all such other relief as the Court deems just and proper.

Dated: July 13, 2018                          BOHM WILDISH & MATSEN, LLP

                                        By: _____
                                              James G. Bohm
                                              Klaus Heinze
                                              Christopher J. Green
                                              Attorneys for Plaintiff,
                                              Kimberly Gerdo

BOHM WILDISH &
MATSEN

bohmwildish.com

20

COMPLAINT

## DEMAND FOR JURY TRIAL

Pursuant to Code of Civil Procedure section 631, Kimberly Gerdo on her behalf and on behalf of the putative class hereby demands trial by jury on all issues raised by the complaint.

Dated: July 13, 2018                          BOHM WILDISH & MATSEN, LLP

                                    By: _____
                                          James G. Bohm
                                          Klaus Heinze
                                          Christopher J. Green


                                          Attorneys for Plaintiff,
                                          Kimberly Gerdo

# EXHIBIT A



# United States Policies and Procedures Manual

As a Brand Partner of Nerium International™, LLC (hereafter the "Company"), you are required to understand and comply with all rules, regulations, policies and procedures contained in this Brand Partner Policies & Procedures Manual (the "Policy Manual") that may be published or disseminated by the Company. The Company reserves the right to amend this Policy Manual by publishing or transmitting amendments as it deems appropriate.

The Company honors all federal, state and local regulations governing network marketing and requires every Brand Partner to do the same. It is, therefore, very important that you read and understand the information contained in this Policy Manual. If you have any questions regarding any rule or policy, seek an answer from your Sponsor, upline leader or the Company Department of Ethics and Compliance. The Code of Professional Ethics is included in Section 12 of this Policy Manual; you should review these materials and make them a part of your planning.

## CONTENTS

| SECTION ONE: | BRAND PARTNER STATUS | 2 |
|---|---|---|
| SECTION TWO: | TERM AND RENEWAL | 5 |
| SECTION THREE: | SPONSORSHIP | 6 |
| SECTION FOUR: | RESIGNATION/TERMINATION | 7 |
| SECTION FIVE: | TRANSFERABILITY | 9 |
| SECTION SIX: | PROPRIETARY INFORMATION | 11 |
| SECTION SEVEN: | TRADEMARKS, LITERATURE AND ADVERTISING | 12 |
| SECTION EIGHT: | PAYMENT OF COMMISSIONS | 16 |
| SECTION NINE: | PURCHASE AND SALE OF PRODUCTS | 17 |
| SECTION TEN: | RETAIL CUSTOMER RETURNS | 21 |
| SECTION ELEVEN: | GENERAL PROVISIONS | 23 |
| SECTION TWELVE: | CODE OF PROFESSIONAL ETHICS | 26 |
| SECTION THIRTEEN: | ADDENDA FOR SPECIFIC STATES | 27 |

SECTION ONE: BRAND PARTNER STATUS

**1.01 Becoming a Brand Partner.** An applicant becomes an Independent Brand Partner ("Brand Partner") of the Company when the following requirements are fulfilled:

a) The applicant's completed Brand Partner Application and Agreement (the "Agreement") and any related documents have been received and accepted by the Company at its corporate office in Addison, Dallas County, Texas;

b) The applicant purchases, at Company cost, a Brand Partner Launch Kit, which contains Brand Partner Forms (including, but not limited to, Brand Partner Applications and Product Order Forms), Company information and brochures, which are sales materials (not for resale). This sum is not a service or franchise fee, but rather is strictly to offset costs incurred by the Company for educational and business materials required for a Brand Partner of the Company; and

c) The Company reserves the right to decline to accept any Agreement for any reason at its sole discretion.

**1.02 No Purchase Required.** Except as set forth above, no purchase is required to become a Brand Partner.

**1.03 Brand Partner Obligations and Rights.** A Brand Partner is authorized to sell the Company's products and services and to participate in the Company's Compensation Plan. A Brand Partner may sponsor new Brand Partners into the Company.

**1.04 Legal Age.** A Brand Partner shall be of legal age to enter into a binding contract in the state of Brand Partner's residence.

**1.05 Common Address.** No more than three (3) Brand Partners or Customers may ship product to the same shipping address.

**1.06 Married Couples.** Married couples and their dependent children shall share a single Brand Partner entity. Brand Partners who subsequently marry shall maintain separate Brand Partner status unless one is the direct Sponsor of the other, in which case their Brand Partner entities may be consolidated. When a couple sharing a Brand Partner entity divorces or separates, the Company will continue to pay commission checks in the same manner as before the divorce or separation until it receives written notice, signed by both parties or issued by a court decree, which specifies to whom future commission checks should be paid, provided the couple has complied with the requirements of Section 5.03, if applicable.

**1.07 Simultaneous Interests.** A Brand Partner and spouse and dependents may not have simultaneous beneficial interests in more than one Brand Partner position entity. For example, a shareholder of a corporation that is a Brand Partner may not become an individual Brand Partner.

**1.08 Corporations, Partnerships, Limited Liability Companies and Trusts.** Corporations, Partnerships, Limited Liability Companies or other forms of business organizations and/or trusts may become a Brand Partner of the Company when the Agreement is accompanied by copies of the following documents within thirty (30) days after the Agreement is accepted; otherwise, the Brand Partner position may go into suspension:

a) Articles of incorporation, Partnership agreement, trust documents and/or other governing documents, as applicable;

b) A complete list of all directors, officers and shareholders involved in a corporation, all general and limited Partners of a Partnership, members of a limited liability company or trustee(s) and beneficiaries of a trust, as applicable;

c) A Federal ID number or other identification number as the Company may approve in its sole discretion; and

d) Such other documents and information as may be reasonably requested from time to time.

Shareholders, directors, officers, partners, members, beneficiaries and trustees, as applicable, of a Brand Partner entity shall agree to be, and the Company will hold each personally liable, to the Company and bound by the Agreement and the Policy Manual.

**1.09 Non-Profit Organizations.** Non-Profit Organizations may become a Brand Partner of the Company when the Agreement is accompanied by copies of the following documents within thirty (30) days after the Agreement is accepted; otherwise, the Brand Partner position may go into suspension:

    a) Articles of incorporation, Partnership agreement, trust documents and/or other governing documents, as applicable;

    b) A complete list of all directors and officers involved in the Non-Profit Organization and who is authorized to enter into a contract on behalf of the organization, as applicable;

    c) A Federal ID number or other identification number as the Company may approve in its sole discretion;

    d) Verification of 501c (3) status; and

    e) Such other documents and information as may be reasonably requested from time to time.

Directors, officers, partners and members, as applicable, of a Brand Partner entity shall agree to be, and the Company will hold each personally liable, to the Company and bound by the Agreement and the Policy Manual.

**1.10 Fictitious and/or Assumed Names.** A person or entity may not apply as a Brand Partner using a fictitious or assumed name without Company approval, which may be withheld in the Company's sole discretion.

**1.11 Independent Contractor Status.** A Brand Partner is an independent contractor. Brand Partner is not a franchisee, joint venture Partner, business Partner, employee or agent of the Company, and Brand Partner is prohibited from stating or implying, whether orally or in writing, otherwise. Brand Partner has no authority to bind the Company to any obligation. The Company is not responsible for payment or co-payment of any employee benefits. Brand Partner is responsible for liability, health, disability and workmen's compensation insurance. Brand Partner sets Brand Partner's own hours and determines how to conduct Brand Partner's business, subject to the Agreement and the Policy Manual.

**1.12 Taxation.** As an independent contractor, a Brand Partner will not be treated as a franchisee, Partner, employee or agent for federal or state tax purposes including, with respect to the Internal Revenue Code, Social Security Act, federal unemployment act, state unemployment acts or any other federal, state or local statute, ordinance, rule or regulation. At the end of each calendar year, the Company will issue to each Brand Partner IRS Form 1099, or other applicable documentation required by law, for non-employee compensation of a Brand Partner.

**1.13 Legal Compliance.** A Brand Partner shall comply with all federal, state and local statutes, regulations and ordinances concerning the operation of Brand Partner's business. A Brand Partner is responsible for Brand Partner's own managerial decisions and expenditures, including all estimated income and self-employment taxes.

**1.14 Brand Partner Identification Number.** A Brand Partner is required by federal law to obtain a Social Security number, Federal ID. number or other approved government-issued identification based on their resident country. Brand Partners will be assigned a Nerium International ID number for purposes of the Brand Partner's business with the Company. This number shall be placed on all orders and correspondence with the Company, hereinafter referred to as the Brand Partner Identification Number ("BPIN"). The Company will use this number in all internal Brand Partner transactions. Any penalties or fines that may result from the use of an incorrect tax identification number furnished to the Company will be the responsibility of Brand Partner.

**1.15 No Exclusive Territories.** There are no exclusive territories for marketing or sponsoring purposes, nor shall any Brand Partner imply or state that Brand Partner has an exclusive territory. No franchise is granted and there are no exclusive territories for sales or sponsoring purposes. No geographical limitations exist on Brand Partner sponsoring within the United States or any country in which the Company is approved to do business.

**1.16 Other Products.** A Brand Partner agrees that no products except the Company's products shall be sold or shown at any event where the Company's products are sold or shown. During the term of the Brand Partner Agreement, and for a period of six months thereafter, Brand Partner is prohibited from selling or promoting any competing products or services or marketing programs to any of the Company's Employees, Agents or Brand Partners, except those Brand Partners personally sponsored by Brand Partner. Any Brand Partner found in violation of this subsection risks the loss of buying privileges, possible suspension and/or termination of Brand Partner position and participation in the Company Compensation Plan, and the Company will pursue all legal recourses to recover damages.

**1.17 Cross-Group Selling.** Selling to other Company Brand Partners in order to receive credit for bonuses and advancement is prohibited. Brand Partner shall obtain all of Brand Partner's Company products, literature and materials directly from the Company. Any violation of this rule subjects Brand Partner to possible suspension and/or termination.

**1.18 Contacts.** Brand Partners are to limit all corporate communication to the office and staff of the Company. No direct contact is to be made with the Company's partners, suppliers, consultants or hired professionals without the express written approval of the Company.

SECTION TWO: TERM AND RENEWAL

2.01   **Term.** Subject to the provisions of Section Four, the Agreement shall have a term beginning on the date of acceptance by the Company and ending one year from the date thereof (the "Anniversary Date").

2.02   **Annual Renewal.** A Brand Partner authorizes Company to automatically renew their Brand Partner's status annually. The annual renewal fee is posted in the Online Business Center or is available through Nerium Support and is due on the Anniversary Date of enrollment. A Brand Partner not renewing by the renewal date, as provided herein, shall be deemed to have voluntarily terminated their Brand Partner position relationship with the Company and will thereby lose their Brand Partner position, all sponsorship rights, their position in the Compensation Plan, all rights to commissions and bonuses and the ability to purchase products from the Company at wholesale prices. A Brand Partner who fails to renew his/her Brand Partner status may not reenroll under a new Sponsor for six (6) months after non-renewal.

2.03   **Inactivity.** A Brand Partner who is "inactive" in any 180 consecutive-day period shall be automatically deactivated from Brand Partner status and converted to Retail Customer status instead.

## SECTION THREE: SPONSORSHIP

**3.01 Sponsoring.** A Brand Partner may sponsor other Brand Partners in the United States and any country in which the Company is authorized. Sponsors shall ensure that each new Brand Partner has received, had access to and understands the Company's Agreement, the Policy Manual and the Compensation Plan. A Brand Partner will be compensated only for the generation of sales volumes, not for sponsoring new Brand Partners into the program.

**3.02 Multiple Agreements.** If an applicant submits multiple Agreements that list different Sponsors, only the first completed Agreement to be received by the Company will be accepted. The decision of the Company in recognizing the official Sponsor is final.

**3.03 Training Requirement.** Brand Partners are required to assure the adequate training of Brand Partners they sponsor. A Sponsor shall maintain an ongoing professional leadership association with Brand Partners in the organization and shall fulfill the obligation of performing a bona fide supervisory, distribution and selling function in the sale or delivery of products and services. Upon request, a Brand Partner must be able to provide the Company with evidence of ongoing fulfillment of Sponsor responsibilities, including training.

**3.04 Income Claims.** No income projections, including those based solely on mathematical projections or "ideal projections" of the Company Compensation Plan may be made to prospective Brand Partners. Brand Partner shall not represent Brand Partner's income as an indication of the success assured to others, since income success depends upon many variables. Commission checks may not be used as marketing materials. Brand Partner shall not guarantee or estimate compensation, draws, expenses or deductions attributable to the business to prospects. Brand Partner shall truthfully and fairly describe and present the Compensation Plan. No past, potential or actual income claims may be made to prospective Brand Partners. Brand Partner may not guarantee commissions or estimate expenses to prospects.

**3.05 Transfer of Sponsorship.** Although it is strongly discouraged and is seldom permitted, a Brand Partner may transfer to a different Sponsor or Sponsorship line, subject to the written approval of the Company, which may be withheld in its sole discretion, subject to the following conditions:

    a) If the transferring Brand Partner is within the same Sponsorship group, notarized signatures are required from all Brand Partners that are, or may be impacted, by the move;

    b) If the transferring Brand Partner is outside the same Sponsorship group, a notarized statement signed by all affected upline Brand Partners shall be submitted reflecting that each affected party understands and consents to the transfer. Any request for transfer of Sponsorship shall be first submitted to the Company in writing explaining the reason for the request of transfer;

    c) A $50.00 transfer fee shall be paid to the Company;

    d) A written request for transfer explaining the exact reason for the requested transfer shall be submitted to the Company; and

    e) The final approval of the Company, if granted, will apply only to the Brand Partner making the request and not the Brand Partner's downline organization. Brand Partner shall comply with the requirements of section 5.03.

**3.06 Preferred Customers Associated with Brand Partner.** As a general matter, Nerium recognizes that a potential Brand Partner should be entitled to sign on with any Brand Partner sponsor of their choosing. However, a unique circumstance exists when an existing Brand Partner has undertaken a very serious sales and relationship effort to cause a prospective customer to become, not merely a one-time retail customer, but a committed Preferred Customer. In this situation, Nerium has determined that the very serious efforts of the selling Brand Partner should be honored and respected. To this extent, Nerium has adopted a policy that a Preferred Customer who decides to become a Brand Partner will be deemed to be associated and sponsored by the original Brand Partner who originally expended the effort to sign up the customer as a Preferred Customer.

SECTION FOUR: RESIGNATION/TERMINATION

#### 4.01 Voluntary Resignation.

a) A Brand Partner may voluntarily terminate Brand Partner's status by failing to renew or by sending a written notice of resignation or termination to the Company. Voluntary resignation is effective upon receipt of such notice by the Company.

b) A Brand Partner who resigns or terminates Brand Partner's status may reapply as a brand Partner at an entry-level position six (6) months after resignation.

c) When a Brand Partner voluntarily terminates the Agreement, Brand Partner's sales network shall automatically roll up to the first upline Brand Partner.

**4.02  Suspension.** A Brand Partner may be suspended for violating the terms of the Agreement, which includes this Policy Manual, the Compensation Plan and other documents produced by the Company. When a decision is made to suspend Brand Partner, the Company will inform Brand Partner in writing that the suspension has occurred effective as of the date of the written notification, the reason for the suspension and the steps necessary to remove such suspension, if any. The suspension notice will be sent to Brand Partner's address on file with the Company pursuant to the notice provisions contained in the Policy Manual. Such suspension may or may not lead to termination of Brand Partner's position as so determined by the Company in its sole discretion. If Brand Partner wishes to appeal, the Company shall receive such appeal in writing within fifteen (15) days from the date of the suspension notice. The Company will review and consider the suspension and notify Brand Partner in writing of its decision within thirty (30) days from the date of the suspension notice. The decision of the Company will be final and subject to no further review. The Company may take certain action during the suspension period, including, but not limited to, the following:

a) Prohibiting Brand Partner from holding Brand Partner meeting or outing as a Brand Partner of the Company or using any of the Company's proprietary marks and/or materials;

b) Withholding commissions and bonuses due Brand Partner during the suspension period;

c) Prohibiting Brand Partner from purchasing services and products from the Company; and/or

d) Prohibiting Brand Partner from sponsoring new Brand Partners, contacting current Brand Partners or attending meetings of Brand Partners.

e) If the Company, in its sole discretion, determines that the violation that caused the suspension is continuing, has not been satisfactorily resolved, or a new violation involving the suspended Brand Partner has occurred, the suspended Brand Partner may be terminated.

**4.03  Termination.** Brand Partner may be terminated for violating the terms of the Agreement, which includes this Policy Manual, the Compensation Plan and other documents produced by the Company. The Company may terminate a violating Brand Partner without placing Brand Partner on suspension, in the Company's sole discretion. Brand Partner will be given notice of the opportunity to be heard by a panel to consider the issues relating to the grounds for termination. When the decision is made to terminate Brand Partner, the Company will inform Brand Partner in writing at the address in Brand Partner's file that the termination has occurred effective thirty (30) days from the date of the written notification.

**4.04  Appeal.** If Brand Partner wishes to appeal the termination, the Company must receive the appeal in writing within fifteen (15) days from the date of notice of termination. If no appeal is received within the fifteen (15) day period, the termination will automatically be deemed final. If Brand Partner files a timely notice of appeal, the Company will review the appeal and notify Brand Partner of its decision within ten (10) days after receipt of the appeal. The decision of the Company will be final and subject to no further review. In the event the termination is not rescinded, the termination will remain effective as of the date stated in the original termination notice.

**4.05  Effect of Termination.** Immediately upon termination, the terminated Brand Partner:

a) Shall remove and permanently discontinue the use of the trademarks, service marks, trade names and any signs, labels, stationery or advertising referring to or relating to any Company product, plan or program;

b) Shall cease representing themselves as a Brand Partner of the Company;

c) Shall lose all rights to Brand Partner's position and position in the Compensation Plan and to all future commissions and bonuses resulting there from; and

d) Shall take all action reasonably required by the Company relating to protection of its confidential information. The Company has the right to offset any amounts owed by Brand Partner to the Company from commissions or other bonuses due to Brand Partner. The Company may also offset an estimate of the reasonable amount that Brand Partner owes under the terms of the indemnity obligation incurred pursuant to Section 11.01 herein.

**4.06  Reapplication.** The acceptance of any reapplication of a terminated Brand Partner, or the application of any family member of a terminated Brand Partner, shall be in the sole discretion of the Company and may be denied.

**4.07  State Laws.** Where these provisions on termination violate the public policy of state laws, the applicable state law shall apply.

SECTION FIVE: TRANSFERABILITY

**5.01 Acquisition of Business.** Any Brand Partner desiring to acquire an interest in another Brand Partner's business shall first terminate his her Brand Partner position and wait six (6) months before becoming eligible for such a purchase. All such transactions shall be fully disclosed to the Company and are subject to approval by the Company in advance.

**5.02 Transfers to Brand Partner.** Except as expressly set forth herein, Brand Partner may not sell, assign or otherwise transfer Brand Partner's entity (or rights thereto) to another Brand Partner or to an individual who has an interest in Brand Partner entity. Notwithstanding the foregoing, a Brand Partner may transfer the Brand Partner position to the Sponsor, subject to the conditions of Section 5.03. In such event, the Sponsor's Brand Partner position and the transferring Brand Partner's Brand Partner position shall be merged into one entity.

**5.03 Conditions to Transferability.** Brand Partner may not sell, assign, merge or transfer Brand Partner's position (or rights thereto) without the prior written approval of the Company, and any such transfer, if approved, is subject to the following conditions:

a) Brand Partner must be in good standing, and must strictly adhere to all Nerium Policies and Procedures and not currently be on probation or suspension for Policy Compliance Violations.

b) The Company possesses the right of first refusal with respect to any sale, assignment, transfer or merger of any Brand Partner position. A Brand Partner wishing to sell, assign, transfer or merge the Brand Partner position shall first provide the Company with the right and option to make such a purchase or receive such transfer in writing on the same terms and conditions as any outstanding offer. The Company will advise Brand Partner within ten (10) business days after receipt of such notice of its decision to accept or reject the offer. If the Company fails to respond within the ten (10) day period or declines such offer, Brand Partner may make the same offer or accept any outstanding offer which is on the same terms and conditions as the offer to the Company to any person or entity who is not a Brand Partner, married to or a dependent of a Brand Partner or who has any interest in a Brand Partner position.

c) The selling Brand Partner shall provide the Company an executed "Sale of Nerium International Brand Partner Position" form and with a copy of all documents which detail the transfer, including without limitation, the name of the purchaser, the purchase price and terms of purchase and payment;

d) A transfer fee of $50.00 shall accompany the transfer documents;

e) The documents shall contain a covenant made by the selling Brand Partner for the benefit of the proposed purchaser not to compete with the purchaser or attempt to divert or sponsor any existing Brand Partner of the Company for a period of six (6) months from the date of the sale or transfer; and

f) Upon approval of sale, transfer or assignment being approved, the seller must provide a notarized Bill of Sale for the position being sold as proof of payment of the stated purchase price before the position will be transferred to the potential buyer. Upon approval by the Company in writing, the buying party shall assume the position of the selling Brand Partner and shall execute a current agreement and all such other documents as may be reasonably required by the Company.

g) The Company reserves the right, in its sole discretion, to stipulate additional terms and conditions prior to approval of any proposed sale or transfer. The Company reserves the right to disapprove any sale or transfer.

h) A Brand Partner must have had a completed product sale in the last 90 days.

i) Brand Partner must have enrolled or renewed their Brand Partner position within the last twelve (12) months or have an active Auto-Delivery template and an active Auto-Delivery Order that was paid with the selling Brand Partner's credit card and shipped to the shipping address on their customer record within the last 30 days.

j) A Brand Partner position being sold must have personally sponsored at least one (1) Brand Partner in the last twelve (12) months.

k) The new owner will assume the original enrollment date of the position being sold.

l) If the position enrollment date is thirty (30) days or greater, the new owner will not be eligible to earn an iPad.

m) If the position being purchased has achieved a rank of Senior Director or higher, the purchaser must maintain a "Paid As" rank equal to the Highest Achieved rank for that position for ninety (90) days before they may be eligible to receive the benefits of the Lexus program.

**5.04 Circumvention of Policies.** If it is determined, in the Company's sole discretion, that a Brand Partner position was transferred in an effort to circumvent compliance with the Agreement, this Policy Manual or the Compensation Plan, the transfer will be declared null and void, and the Brand Partner position will revert back to the transferring Brand Partner who will be treated as if the transfer had never occurred from the reversion day forward. If necessary, and in the Company's sole discretion, appropriate action, including without limitation, termination may be taken against the transferring Brand Partner to ensure compliance with the Agreement and this Policy Manual.

**5.05 Succession.** Notwithstanding any other provision of Section Five, upon the death of a Brand Partner, the Brand Partner's position will pass to Brand Partner's successors in interest as provided by law; however, the Company will not recognize such a transfer until the successor in interest has executed a current Agreement and submitted certified copies of the death certificate and will, trust or other instrument required by the Company to evidence transfer of ownership. The successor will thereafter be entitled to all the rights and be subject to all the obligations of a Company Brand Partner.

**5.06 Reentry.** Any Brand Partner who transfers their Brand Partnership shall wait for six (6) months after the effective date of such transfer before becoming eligible to reapply to become a new Brand Partner.

SECTION SIX: PROPRIETARY INFORMATION

**6.01 Confidentiality Agreement.** During the term of the Agreement, the Company may supply to Brand Partner confidential, proprietary or trade secret information including, but not limited, to genealogical and downline reports, customer lists, customer information developed by the Company or developed for and on behalf of the Company by Brand Partner (including, but not limited, to credit data, customer and Brand Partner profiles and product purchase information), Brand Partner lists, manufacturer and supplier information, business reports, commission or sales reports and such other financial and business information which the Company may designate as confidential, proprietary or trade secret. All such information (whether in written or electronic form) is confidential, proprietary or trade secret to the Company and is transmitted to Brand Partner in strictest confidence on a "need to know" basis for use solely in Brand Partner's business with the Company. Brand Partner shall use Brand Partner's best efforts to keep confidential, proprietary or trade secret information protected and shall not disclose any such information to any third party, directly or indirectly. Brand Partner shall not use the information to compete with the Company or for any purpose other than promoting the Company's program and its products and services. Upon expiration, non-renewal or termination of the Agreement, Brand Partner shall discontinue the use of such confidential, proprietary or trade secret information and promptly return any confidential, proprietary or trade secretinformation in their possession to the Company.

**6.02 Copyright Restrictions.** With respect to product purchases from the Company, Brand Partner shall abide by all manufacturers' use restrictions and copyright protections.

**6.03 Vendors' and Other Business Associates' Confidentiality.** The Company's business relationships with its vendors, manufacturers, suppliers and researchers are confidential. Brand Partner shall not contact, directly or indirectly, speak to or communicate with any supplier, manufacturer or researcher of the Company except at a Company-sponsored event at which the supplier, manufacturer or researcher is present at the request of the Company.

SECTION SEVEN: TRADEMARKS, LITERATURE AND ADVERTISING

**7.01 Trademarks.**

a) The Company's name, trademarks, service marks and copyrighted materials are owned by the Company, including the names of the Company's products. The use of such marks and materials shall be in strict compliance with the Policy Manual. Only the Company is authorized to produce and market products and literature under these trademarks. Use of the Company name on any item not produced or authorized by the Company is prohibited, except in the manner described below:

> Mary Jones
> Independent Brand Partner
> Nerium International™

b) Trademark usage, unless otherwise as stated above: Independent Brand Partners who wish to use the Company's name, trademarks, service marks and copyrighted materials for Internet marketing purposes only will have the option to participate in the Company's Internet Licensee Program, and must adhere to the Company's Policies within this document, as well as the requirements of the program. Email compliance@nerium.com for additional information.

**7.02 Telephone, Yellow and White Page Listing.** Brand Partner is not permitted to use the Company's trade name in advertising in the white or yellow page sections of the telephone book. Brand Partner is not permitted to list their telephone numbers under the Company's trade name without first obtaining prior written approval from the Company. If approval is granted for a listing, it shall be stated in the following manner:

> Jones, Mary
> Independent Brand Partner
> Nerium International™

**7.03 Imprinted Checks.** Brand Partner is not permitted to use the Company trade name or any of its trademarks or service marks on their business or personal checking accounts; however, Brand Partner may imprint Brand Partner's business checks as being a "Nerium International™, LLC Independent Brand Partner."

**7.04 Imprinted Business Cards or Letterheads.** Brand Partner is not permitted to "create" Brand Partner's own stationary, business cards or letterhead graphics if the Company's trade name and/or trademarks are used. Only the approved Company graphics version and wording are permitted and letterhead shall be ordered either from the Company directly or from the Company-licensed independent contractor.

**7.05 Print and Electronic Advertising.** Only Company-produced or -approved (in writing and in advance) promotional and advertising materials may be used to advertise or promote a Brand Partner's business or sell products or services of the Company in any print or electronic media, including on an Internet website. No person shall use the Company name, logos, trademarks or copyrighted material in any advertising not produced by the Company or without prior express written permission from the Company. The Company's literature and materials may not be duplicated or reprinted without prior written permission of the Company. The Company's consent or approval may be withheld at its sole discretion. Banners, trade show materials and the like must be approved in writing by the Company.

**7.06 Internet.** The Company maintains a presence on the Internet on its own website. Brand Partner is prohibited from using any trademarks of Company, including the name Nerium International™, LLC, the Nerium International™, LLC logo, and the name of any of the products, or any other trade names, trademarks or distinctive phrases or remarks used by Company, including those related to any product or any term confusingly similar thereto - in any form on the internet. If a Brand Partner desires to provide a link from Brand Partner's personal web site directly to the Company's website, the Brand Partner's request must be in writing and is subject to Company approval in its sole discretion. No link may be established until the Brand Partner receives written approval from Nerium International.

**7.07 Protection of Minors.** The Nerium International website is not designed for or targeted at children. We do not knowingly collect, use or disseminate any personally identifiable information from children under the age of 18. If, however, we become aware that personally identifiable information regarding a child under the age of 18 has been collected at the Nerium International site, we will use such information for the sole purpose of contacting a parent or guardian of the child to obtain verifiable parental consent. If we cannot obtain consent after a reasonable period of time, or if when contacted, a parent or guardian requests that we do not use or maintain such information, we will make reasonable efforts to delete it from our records. Upon request by a parent or guardian, Nerium International will provide a description of the specific types of personal information collected from a child who is under the age of 18.

**7.08 Gifts, Enticement and Special Discounts.**

a) Nerium Independent Brand Partners are prohibited from using print, electronic or verbal advertisements to entice potential prospects, including Preferred Customers, to join their organization or team, which includes, but is not limited to; special rewards, incentives, bonuses, products or guarantee of downline placements, which can be determined upon Company's sole discretion.

b) Nerium Independent Brand Partners are not allowed to use the Placement Suite as a form of incentive and/or enticement to leverage potential prospects, including Preferred Customers, in any public or private forum for joining their Nerium business.

**7.09 Social Media.**

a) As a Brand Partner for Nerium International, you are not required to maintain a presence in social media. Should you choose to do so, however, you must adhere to the guidelines and policies set forth by Nerium International. These guidelines and policies are designed to ensure the uniformity and professionalism of the Nerium International brand which, in turn, benefits your business.

b) Nerium International maintains an online presence for the benefit of the company as a whole, which includes Customers, Brand Partners and the general public. We ask that in our public forums (Facebook, Twitter, etc.) you keep your comments relevant to all. Our blog (neriumblog. net) is a resource for you to ask questions related to the business side of Nerium International, and our corporate staff is available to help.

c) You may not use the official corporate Nerium pages to drive business, solicit business, drive people to your own site or recruit Brand Partners. Our trademarked brand name cannot be used to drive traffic away from our corporate site.

d) You cannot represent your independent business as the corporate office. All Brand Partner communications, both in print and online, must clearly appear as coming from an independent representative of the company and not lead the consumer to think they may be interacting with the corporate office.

e) You are welcome to use the term "Independent Brand Partner for Nerium International" in the name/description of various social media sites for your business. You cannot use the word "official" or anything similar. You cannot create an alias for any sites like Twitter or others that use any permutation of the Nerium International name. For further clarification regarding naming, please refer to Section 7.06.

f) When posting information online related to Nerium International, please consider if the information you are sharing is beneficial to your business and to the company as a whole. Do not represent yourself in any way online that detracts from the Nerium International brand. All Independent Brand Partners agree, acknowledge and affirmatively accept any content posted (photos, testimonials, statements, marketing materials, etc.) on a social networking website including, but not limited to, Facebook, Twitter, MySpace, LinkedIn, Flickr, etc., must adhere to the Print and Electronic Guidelines found in Section 7.05. Health/medical claims, income claims or disparaging comments, remarks, etc are expressly prohibited and will not be approved or allowed.

g) In the event of your voluntary or involuntary termination as a Nerium International Independent Brand Partner, you are required to remove all references to Nerium International from social networking profile(s) within ten (10) days.

h) Should Nerium International discover non-compliant profiles and/or websites, you will be required to remove the material immediately.

i) Infractions of any social media guideline may result in disciplinary actions up to and including termination of your Brand Partner account.

j) Nerium International requires that all Brand Partners identify themselves as independent business owners and should therefore adhere to the naming convention of their Facebook page and all other social media networks to read as follows: "John Doe, Independent Brand Partner, Nerium International." On Facebook only are you allowed to use "Nerium" in your vanity URL if its naming convention is the same as your Nerium replicated site i.e. "Facebook.com/john doe.nerium". This is the only acceptable use of the word "Nerium" in a URL.

k) All Independent Brand Partners are prohibited from advertising "Nerium" on websites such as Groupon, Facebook offers, Twitter ads, or any website or social media networks with a coupon or special discount offer, including and not limited to the purchase of ads with the "Nerium" name used in the naming conventions of URL domains, subdomains or in the advertising on pay per click ads and/or adwords, etc.

**7.10 Endorsements.** No endorsements by a Company officer or any third party may be asserted, except as expressly communicated in the Company literature and communications. Federal and state regulatory agencies do not approve or endorse direct selling programs. Therefore, a Brand Partner may not represent or imply, directly or indirectly, that the Company's program, products or services has been approved or endorsed by any governmental agency.

**7.11 Independent Communications.** Subject to the restrictions imposed by Section Seven, Brand Partner is encouraged to distribute information and direction to Brand Partner's respective downline; however, Brand Partner shall identify and distinguish between personal communications and the official communications of the Company.

**7.12 Medical Claims.** No medical claims (expressed or implied) may be made for any Company product by Brand Partner.

**7.13 Brand Partner Services.** The Company provides every active Brand Partner with management and training communications, timely delivery of product and sales materials and a computer report of sales made in their marketing group for the pay period in which commissions and overrides are earned and paid.

**7.14 Pricing.** Pricing for products sold on the Internet must adhere to the general rules for all such retail sales, as outlined in Section 9.13.

**7.15 Recordings.** Brand Partner may not produce or reproduce for sale or personal use products sold by the Company or any Company-produced literature, audio or video material, presentations, events or speeches, including conference calls. Video and/or audio taping of Company meetings and conferences is strictly prohibited. Still photography is allowable at the discretion of the meeting host.

**7.16 Telephone Answering.** Brand Partner may not answer the telephone by saying "Nerium International" or in any other manner that would lead the caller to believe that the call has reached the corporate offices of the Company.

**7.17 Liability.** Violation of any of the rules contained in this Policy Manual is grounds for termination of the individual's Brand Partner status. The violator may also be liable for damages resulting from unauthorized use of the Company copyrights, trademarks and materials.

**7.18 iPad Incentive Rules.** There can be no mention of iPad in any type of promotion or incentive program that is presented to the public at large, either in print or electronically. It is not acceptable to have a picture of someone with his or her iPad and communication involving the iPad cannot explain how to win, earn or obtain an iPad by working with Nerium.

**7.19 Lexus and iPad Payout Option.**

    a) Lexus bonus earners who choose the Nerium bottle option will receive four (4) bottles of Age-Defying Night Cream and four (4) bottles of Age-Defying Day Cream, and receive this payout option up to a maximum of six (6) qualifying months. The Lexus Car Payment Option will remain available once the bottles option has ended.

    b) iPad bonus earners who choose the Nerium bottle option will receive a one (1) time pay out of four (4) bottles of Age-Defying Night Cream and four (4) bottles of Age-Defying Day Cream.

SECTION EIGHT: PAYMENT OF COMMISSIONS

8.01  **Basis for Commissions.** Commissions. Commissions and other bonuses cannot be paid until a completed Agreement has been received and accepted by the Company prior to the end of the month in which the sale is made. Commissions are paid ONLY on the sale of Company services and products. No commissions are paid on the purchase of a Brand Partner kit or for sponsoring Brand Partners.

8.02  **Calendar.** Commissions, overrides and bonuses are calculated and paid on the current pay period information. A Brand Partner is promoted to the highest rank in which he/she qualifies at the close of each bonus period. Commissions and bonuses are paid based on the "Paid As" rank.

8.03  **Commission and Bonus Payment Date.** Commissions, overrides and bonuses are calculated and paid on the current pay period information. A Brand Partner is promoted to the highest rank in which he/she qualifies at the close of each bonus period. Commissions and bonuses are paid based on the "Paid As" rank.

8.04  **Minimum Payment.** The minimum amount for payment of commissions and overrides is $15.00; all monies not paid will be included in the next bonus payment. Processing fees vary based on payment options and may be deducted from all commission and bonus payments.

8.05  **Offset of Commissions.** Any commissions or bonuses earned and paid on products returned is the obligation of and shall be repaid to the Company by the Brand Partner originally paid such commissions or bonuses. The Company has the right to offset such amounts against future commissions and other bonuses paid or owed to such Brand Partner and Brand Partner's upline who participated in an override.

8.06  **Tax Reporting for Commissions.** Any commissions paid to a Brand Partner are subject to State and Federal tax laws. Payments made in the form of incentive trips, free product (3UR Free, NGB, in lieu of Lexus lease) and/or Lexus car payments are all subject to taxation as income and will be reported annually on a 1099 prepared for the Brand Partner. The Brand Partner is responsible to file all income and expense reports appropriate for operating a home-based business.

SECTION NINE: PURCHASE AND SALE OF PRODUCTS

**9.01 Purchase Requirement.** No product purchase is required in order for an applicant to become a Brand Partner, although purchases or sales of products may be required in order to advance in the Compensation Plan. Brand Partners who have had their Agreement accepted by the Company may buy products at wholesale prices directly from the Company.

**9.02 Stockpiling Prohibited.** The success of the Company depends on sales to the ultimate consumer and all forms of stockpiling are strictly prohibited including, but not limited to, purchases of products primarily for purposes of qualifying for additional compensation. The Company recognizes that Brand Partner will purchase products for Brand Partner's own use, however, the Company strictly prohibits the purchase of products in unreasonable amounts in an attempt to qualify for advancement in the Compensation Plan.

**9.03 70% Rule.** In order to qualify for commissions and bonuses, Brand Partner shall certify on the product order form that the Brand Partner has sold to non-Brand Partner consumers or used at least 70% of all products previously purchased. Brand Partners placing telephone orders to the Company are also required to comply with this rule and may be requested by the Company to verify compliance. In its effort to support and enforce the retail sales/70% Rule, the Company, on a quarterly basis, will conduct random audit verification follow-ups. Representatives of the Company will contact Brand Partners to further verify compliance with the 70% Rule. Brand Partners should maintain records and be prepared to assist the Company representative in their task.

**9.04 Retail Sales Rule.** Requiring sales to at least five (5) retail customers per month.

**9.05 Preferred Customer Rules.** A Preferred Customer must personally opt in to the monthly Auto-Delivery Order program. Invalid Preferred Customer orders are defined as orders submitted as Preferred Customer orders for qualification purposes without the written authorization from the customer. If a Nerium International Brand Partner submits a Preferred Customer order without the Customer's consent, the Brand Partner will be subject to disciplinary action, including termination. Preferred Customer orders cannot be paid by or shipped to a Nerium International Brand Partner for any reason. No exceptions.

**9.06 Ordering Methods.** All orders submitted to the Company shall have the Brand Partner's or Customer's Company issued identification number placed thereon to assist the Company in processing and shipping the order properly. Failure to provide this information may result in a delay in processing the order.

**9.07 Direct Purchase.** Brand Partner may purchase Brand Partner's product needs directly from the Company. Should a Brand Partner obtain product from Brand Partner's Sponsor or upline Brand Partner's personal inventory and a replacement product order is not placed and processed through the Company, no commissions or overrides will be paid by the Company on such transactions.

**9.08 Payment Options.** Purchases may be paid by money order, cashier's check, personal check or credit cards, unless specifically stated otherwise by the Company. Pre-printed name, physical address and phone number must be on all checks. Personal checks will be accepted only for payments in an amount not greater than $1,000. In the event a check or credit card is declined, Brand Partner will be contacted for an alternate form of payment and may be subject to an additional processing fee. No orders will be shipped without prior payment. Returned checks are subject to a $30.00 returned check fee.

**9.09 Shipping and Handling.** It is the ordering Brand Partner's sole responsibility to indicate (a) the method and means of shipping and (b) the destination address.

**9.10 Product Delivery.** Upon clearance of payment, the Company processes for shipment the products and materials ordered. If an item is temporarily not available ("TNA"), the consignee will be notified on the packing list included with the shipment. If a TNA should occur, the item(s) will be shipped as soon as available and usually within ten (10) days of the date the original order was received. Back orders may be canceled by Brand Partner by written request received by the Company prior to shipment.

**9.11   Damaged Goods.** The shipping company is responsible for any damage that occurs after it takes physical custody of the products. Therefore, it is important that the damage is reported promptly in order to allow Nerium International to file a claim with the shipper. The purchaser of Company products who receives damaged goods shall comply with the following procedures:

    a) Accept delivery;

    b) Before the driver leaves, note on the delivery receipt the number of boxes that appear to be damaged and require the driver to acknowledge the damage in writing;

    c) Save the damaged products or boxes for inspection by the shipping agent; and

    d) Contact Nerium International Support Department to arrange for a replacement order to be shipped and a damaged goods claim to be filed.

**9.12   Price Changes.** Prices for the Company's products, services and literature are subject to change without prior notice.

**9.13   Receipts for Retail Pricing.** Brand Partner will provide all retail purchasers of the Company products with written receipts. Although the Company provides a suggested retail price as a guideline, Brand Partner may sell the Company products at whatever retail price they and their customers may agree upon, as long as the price is not below the Preferred Customer price.

**9.14   Sales Tax.** To ensure compliance with the sales and use tax requirement of each state, unless required otherwise by state law, the Company may, at its option, collect and remit all applicable sales and use taxes on products, promotional materials and services sold to Brand Partners and retail customers based on the suggested retail price of the product. The applicable rate of tax due shall be based on the address to which the product and/or material are shipped. If Brand Partner requests a tax exempt purchase for products purchased for resale (not for personal use), Brand Partner shall provide the Company with a true and correct copy of a current resale certificate from the applicable state.

**9.15   Shipping Loss.** The Company will track all deliveries shipped. Brand Partner should contact the Company immediately upon being made aware of any shipping problem.

**9.16   Inaccurate Delivery.** If a product is shipped in error by the Company, the unordered merchandise may be returned at the Company's expense provided the following steps are taken:

    a) Brand Partner or retail customer notifies the Company within five (5) days of receipt of the order;

    b) A copy of the shipping or packing slip shall be enclosed with the proper forms required by the Company completed and executed by Brand Partner or retail customer; and

    c) Products shall be returned in original containers and shall be packed properly to prevent damage in return shipment.

**9.17   Refused Shipments.** Should Brand Partner refuse delivery on any order placed with the Company, the Company shall have the right to place Brand Partner in suspension pending resolution of the refusal of delivery. Neither Brand Partner nor a retail customer shall refuse any shipment from the Company unless prior approval of the Company has been obtained. Should the receiving party of any order shipped from the Company refuse to accept delivery and the shipment is returned to the Company, the ordering Brand Partner's status will be suspended pending resolution of the delivery refusal. Non-accepted delivery charges will be debited to Brand Partner's account. If the Company determines that a valid reason exists for refusing shipment, it will instruct the Brand Partner or retail customer on the proper procedure for a return.

**9.18   Retail Outlets.** The integrity of the Company's marketing plan is built upon person-to-person, one-on-one and in-home presentation methods of sale. Selling Company products through any chain of retail stores, including but not limited to drugstores, pharmacies, supermarkets, health food stores, shopping mall booths and the like, restaurants or online shopping malls including, but not limited to, eBay, Craigslist, etc. is strictly prohibited. Selling Company products by Brand Partners through retail outlets or professional offices that are not part of chains and are owned or operated by the Brand Partner is acceptable upon written approval by the Company.

**9.19   Service-Oriented Establishments.** It is permissible to take orders for Company products in businesses such as health spas, health resorts or similar establishments.

**9.20   Medical Offices.** Medical doctors and other health professionals may sell Company products from their offices only if the doctor or health professional is a Brand Partner.

**9.21 Trade Shows.** With written authorization from the Company, Company products or services and opportunity may be displayed at trade shows by Brand Partners. Request for participation in trade shows must be received in writing by the Company at least two weeks prior to the show. Written authorization from the Company must be received before participating in the trade show. Unless written authorization is secured from the Company, Company products or services and opportunity are the only products or services and/or opportunity that may be offered in the trade show booth. Only Company produced marketing materials may be displayed or distributed. No Brand Partner may sell or promote the Company's products or services or business opportunity at flea markets, swap meets or garage sales. Company tradeshow authorization does not guarantee exclusive participation in any tradeshow.

**9.22 International Sales.** No independent Brand Partner may export or sell directly or indirectly to others who export the Company's products, literature, sales tools or promotional material relating to the Company, its products or services or the Company's program from the United States or its possessions or territories to any other country. Independent Brand Partners who choose to sponsor internationally may do so only in countries in which the Company has registered to operate its business and must comply fully with the Rules of Operation of a Company Brand Partner in that country. Any violation of this rule constitutes a material breach of this contract and is grounds for immediate termination of the Brand Partner position.

**9.23 Product/Services Claims.** Brand Partner shall make no claim, representation or warranty concerning any product or service of the Company, except for those contained in the official Company materials. Brand Partner can only promote benefits of Nerium products using language contained in the official Company materials. **Brand Partners may not make any medical, therapeutic, curative or treatment claims regarding any Nerium product. Brand Partners may only use "Before" and "After" photos provided by the Company. The use of any unauthorized "Before" and "After" photos is prohibited.**

**9.24 Promotional Items.** All promotional items that bear the Company name or logo shall be purchased solely from the Company or its approved supplier unless prior written permission is obtained from the Company.

**9.25 Telemarketing.** Telemarketing is strictly prohibited. The Federal Trade Commision and Federal Communications Commission each have laws that restrict telemarketing practices. Both federal agencies (as well as a number of states) have "do not call" regulations as part of their telemarketing laws. Although the Company does not consider Brand Partners to be "telemarketers" in the traditional sense of the word, these government regulations broadly define the term "telemarketer" and "telemarketing" so that your inadvertent action of calling someone whose telephone number is listed on the federal "Do Not Call" registry could cause you to violate the law. Moreover, these regulations must not be taken lightly, as they carry significant penalties.

    a) Therefore, Brand Partners must not engage in telemarketing in the operation of their Company businesses. The term "telemarketing" means the placing of one or more telephone calls to an individual or entity to induce the purchase of a Company product or service or to recruit them for the Company opportunity. "Cold calls" made to prospective customers or Brand Partners that promote either Company products or services or the Company opportunity constitute telemarketing and are prohibited. However, a telephone call placed to a prospective customer or Brand Partner (a "prospect") is permissible under the following situations:

    b) You may call family members, personal friends and acquaintances. An "acquaintance" is someone with whom you have at least a recent first-hand relationship within the preceding three (3) months. Bear in mind, however, that if you make a habit of "card collecting" with everyone you meet and subsequently call them, the FTC may consider this a form of telemarketing that is not subject to this exemption. Thus, if you engage in calling "acquaintances," you must make such calls on an occasional basis only and not make this a routine practice;

    c) The prospect's personal inquiry or application regarding a product or service offered by the Brand Partner happens within the three (3) months immediately preceding the date of such a meeting;

    d) If the Brand Partner has an established business relationship with the prospect. An "established business relationship" is a relationship between a Brand Partner and a prospect based on the prospect's purchase, rental or lease of goods or services from the Brand Partner or a financial transaction between the prospect and the Brand Partner within the eighteen (18) months immediately preceding the date of a telephone call to induce the prospect's purchase of a product or service; and

    e) If the Brand Partner receives written and signed permission from the prospect authorizing the Brand Partner to call. The authorization must specify the telephone number(s) which the Brand Partner is authorized to call.

    f) In addition, Brand Partners shall not use automatic telephone dialing systems relative to the operation of their Company businesses. The term "automatic telephone dialing system" means equipment which has the capacity to (a) store or produce telephone numbers to be called, using a random or sequential number generator, and (b) to dial such numbers.

SECTION TEN: RETAIL CUSTOMER RETURNS

10.01 **Retail Customer Guarantee.** The Company offers a 100% money-back satisfaction guarantee to all retail customers within thirty (30) days of purchase. If a retail customer is dissatisfied with any of the Company products for any reason, then that retail customer may return that product in its original package and shipping containers, with original proof of purchase, to the original selling Brand Partner for either a replacement or a full refund of the purchase price minus shipping. Customer is responsible for cost of return freight.

10.02 **Warranties.** Except as expressly stated herein, the Company makes no warranty or representation as to the merchantability, fitness for a particular purpose, workmanship or any other warranty concerning any product or service purchased from or through the Company. The manufacturer's warranty will be transferred to Brand Partner.

10.03 **Buyer's Right to Cancel.** Federal law grants a buyer the right to cancel certain sales without penalty prior to midnight of the third business day after the transaction. This rule covers retail consumer sales of $25.00 or more that occur away from the seller's main office. The Company sales order form contains all legally required notices. Two copies shall be given to the buyer by Brand Partner on every sale. In addition, the Brand Partner shall orally inform the buyer of the three-day right to cancel at the time the buyer purchases the goods.

10.04 **Retail Customer Refunds.** The Company will replace the returned retail product to the Brand Partner provided the following procedures and conditions are met:

    a) The product shall be returned to the Company by the Brand Partner who purchased it from the Company within sixty (60) days of the date of the original purchase;

    b) Brand Partner shall obtain a return authorization number from the Company customer service department within ten (10) days of the return date to Brand Partner and prior to returning any product; and

    c) The product shall be received by the Company within twenty (20) days of the return date to Brand Partner.

    d) The return shall be accompanied by the following:

        1.) A signed statement from the retail customer identifying the reason for the return;

        2.) A copy of the original retail sales receipt;

        3.) The unused portion of the product is returned in its original container; and

        4.) The name, address and telephone number of the retail customer.

    e) A signed statement from the retail customer identifying the reason for the return;

    f) A copy of the original retail sales receipt;

    g) The unused portion of the product is returned in its original container; and

    h) The name, address and telephone number of the retail customer.

    i) Proper shipping carton(s) and packing materials shall be used in packaging the product(s) being returned for replacement, and the best and most economical means of shipping is suggested.

    j) The Brand Partner will pay the cost of shipping replacement product(s).

    k) The Company will replace the product, but will not refund to any Brand Partner the purchase price of any retail customer returns.

**10.05 Quality Control.** The Company will replace, within twelve (12) months of purchase, any product found to be defective; however, no product shall be returned to the Company without prior written approval. Exchanges only. No Refunds.

    a) A written replacement request shall be submitted stating the reason for the request and accompanied by a copy of the Purchase Order Form or packing slip. Product returned without prior authorization will not be accepted.

    b) The Company will provide the Brand Partner with a return authorization number and will instruct Brand Partner where to ship the product for inventory verification. Upon receipt and verification of the product, the Company will ship out replacement product as appropriate.

    c) The Company will not replace any product previously certified by Brand Partner as sold under the 70% Rule, sold at a special discount or sold as a promotional item.

**10.06 Termination Returns.**

    a) A Brand Partner who terminates Brand Partner's business relationship with the Company has the right to return for repurchase on commercially reasonable terms currently marketable inventory including Company-produced promotional materials, sales tools and kits in possession of Brand Partner and purchased by Brand Partner for resale prior to the date of termination. For purposes hereof, "reasonable commercial terms" shall mean the repurchase of marketable inventory within twelve (12) months from the Brand Partner's date of purchase at not less than 90% of the Brand Partner's original net cost less appropriate set-offs and legal claims, if any. In addition, for purposes of this section, products shall not be considered "currently marketable" if returned for repurchase after the products commercially reasonable usable or shelf life period has passed (shelf life will be deemed to have passed if the product package has been opened); nor shall products be considered "currently marketable" if the Company clearly discloses to the Brand Partner prior to purchase that the products are seasonal, discontinued or special promotional products and are not subject to the repurchase obligation. The Company will not issue a refund nor replace any product previously certified as having been sold under the 70% Rule. No refunds will be issued unless a Brand Partner is in strict compliance with the procedures contained herein:

    b) A written return request shall be submitted, stating the reason for the termination, the reason for the return of product and/or sales materials, and accompanied by original proof of payment and a copy of the Purchase Order Form or Packing Slip. Product returned without prior authorization will be returned to Brand Partner;

    c) The Company will provide Brand Partner with a return authorization number, and will instruct Brand Partner where to ship the product for inventory verification. Upon receipt and inspection of the return, Company will process the appropriate refund for payment; and

    d) Brand Partner shall pay the cost of return freight.

    e) All commissions, overrides and bonuses paid to a terminated Brand Partner as a result of any product returned upon termination shall be repaid to the Company. The Company may deduct such amounts from any commissions or other amounts owed to such Brand Partner. All commissions, overrides and/or bonuses paid to a Brand Partner's upline on a returned product shall be repaid to the Company by the upline Brand Partner.

SECTION ELEVEN: GENERAL PROVISIONS

**11.01 Indemnity Agreement.** Brand Partner agrees to indemnify and hold harmless the Company, its shareholders, officers, directors, employees, agents and successors in interest from and against any claim, demand, liability, loss, cost or expense including, but not limited to, court costs and attorneys' fees, asserted against or suffered or incurred by any of them, directly or indirectly, arising out of or in any way related to or connected with allegedly or otherwise, that Brand Partner's (a) activities as Brand Partner; (b) breach of the terms of the Agreement; and/or (c) violation of or failure to comply with any applicable federal, state or local law or regulation.

**11.02 Other Services and Products.** No products or services, except for the Company's products or services, shall be sold or shown at any event where the Company's product or services are sold or shown. Except as provided above, a Brand Partner is not restricted from selling other companies' services and products that are not similar to or competitive with the products and services of the Company. However, promotion of direct sales and/or network marketing programs and/or competitive services or products with anyone are strictly prohibited.

**11.03 Limit on Liability.** To the extent permitted by law, the Company shall not be liable for and Brand Partner releases the Company from and waives all claims for any loss of profits, indirect, direct, special or consequential damages or any other loss incurred or suffered by Brand Partner as a result of (a) the breach by Brand Partner of the Agreement and/or the terms and conditions of the Policy Manual; (b) the operation of Brand Partner's business; (c) any incorrect or wrong data or information provided by Brand Partner; (d) any copyright violation in connection with materials provided by Brand Partner; or (e) the failure to provide any information or data necessary for the Company to operate its business, including, without limitation, the enrollment and acceptance of Brand Partner into the Compensation Plan or the payment of commissions and bonuses.

**11.04 Limitation of Damages.** To the extent permitted by law, the company and its affiliates, officers, directors, employees and other representatives shall not be liable for and Brand Partner hereby releases the foregoing from and waive any claim for loss of profit, incidental, special, consequential or exemplary damages which may arise out of any claim whatsoever relating to the company's performance, non performance, act or omission with respect to the business relationship or other matters between any brand partner and the company, whether sounding in contract, tort or strict liability. Furthermore, it is agreed that any damages to Brand Partner shall not exceed and is hereby expressly limited to, the amount of unsold Company programs, services and/or products of the Company owned by Brand Partner and any commissions owed to Brand Partner.

**11.05 Record Keeping.** The Company encourages Brand Partner to keep complete and accurate records of all Brand Partner's business dealings.

**11.06 Non-Solicitation and Non-Competition.** Brand Partner acknowledges and agrees that the only way to protect the goodwill, confidential, proprietary and trade secret information of Company and the integrity and stability of the sales force created by other Brand Partners is to prohibit all Brand Partners from recruiting and soliciting of other Brand Partners to other companies during the term of this agreement and for a reasonable time thereafter. Consequently, in consideration for all of the rights granted by this Agreement, including the protection this non-solicitation provision affords to Brand Partner, for the term of this Agreement and for two (2) years after termination hereof, for any reason, Brand Partner agrees not to, directly or indirectly, recruit or solicit any of Company's other Brand Partners to join other direct sales, multi-level or network marketing companies.

For the term of this Agreement and for two (2) years after termination hereof, for any reason, Brand Partner agrees not to sell any product that is the same or similar to or competes with the products of Company within the United States of America or any other country where Company sells its products.

Brand Partner agrees not to solicit, directly or indirectly, Company's Brand Partners to purchase services or products, except those of Company, throughout the term of this Agreement.

**11.07 Amendments.** The Company reserves the right to amend the Agreement, Policy Manual, its retail prices, product availability and the Compensation Plan at any time without prior notice as it deems appropriate. Amendments will be communicated to Brand Partner through official Nerium publications, by posting on the Nerium website or voice and/or e-mail. Amendments are effective and binding on Brand Partner and Nerium thirty (30) days after notice. All amendments are prospective and do not apply to incidents, occurrences or proceedings occurring before the effective date of the amendment. In the event any conflict between the original documents or policies and any such amendment, the amendment will control.

**11.08 Non-Waiver Provision.** No failure of the Company to exercise any power under the Policy Manual or to insist upon strict compliance by Brand Partner with any obligation or provision herein, and no custom or practice of the parties at variance with this Policy Manual, shall constitute a waiver of the Company's right to demand exact compliance with this Policy Manual. The Company's waiver of any particular default by Brand Partner shall not affect or impair the Company's rights with respect to any subsequent default, nor shall it affect any way in the rights or obligations of any other Brand Partner. Nor shall any delay or omissions by the Company to exercise any right arising from a default affect or impair the Company's rights as to that or any subsequent default. Waiver by the Company can be affected only in writing by an authorized officer of the Company.

**11.09 Arbitration.**

a) Except as expressly set forth herein, all disputes, claims or causes of action relating to or arising from any Independent Brand Partner Application, Nerium International Terms of Agreement, Company's Policies and Procedures, and any other Company policies, products and services, the rights and obligations of Company and Brand Partner or any other disputes, claims or causes of action between Brand Partner and any of its officers, directors, employees or affiliates and Company or any of its officers, directors, employees or affiliates whether in tort or contract, shall be settled totally and finally by arbitration in Dallas, Texas, in accordance with the Commercial Arbitration Rules of the American Arbitration Association, including the optional rules for emergency measures of protection which Company may use, in addition to or instead of the procedures set forth in section (c) below. The arbitration shall be conducted before a single arbitrator and shall not be conducted on a class-wide, class action or multiple complaining-party basis.

b) Notwithstanding the foregoing, the arbitrator shall have no jurisdiction over disputes relating to the ownership, validity or registration of any mark or other intellectual property or proprietary or confidential information of the Company without the Company's prior written consent. The Company may seek any applicable remedy in any applicable forum with respect to these disputes and with respect to money owing to the Company. In addition to monetary damages, the Company may obtain injunctive relief against Brand Partner for any violation of the Agreement or misuse of the Company's trademark, copyright or confidential information policies.

c) Nothing in this rule shall prevent the Company from applying to and obtaining from any court having jurisdiction a writ of attachment, a temporary injunction, preliminary injunction and/or other injunctive or emergency relief available to safeguard and protect the Company's interests prior to the filing of or during or following any arbitration or other proceeding or pending the handing down of a decision or award in connection with any arbitration or other proceeding. Brand Partner hereby agrees that violation of the prohibition on use or disclosure of trade secrets, proprietary or confidential information or the prohibition of the non-solicitation and non-disparagement provisions herein stated will cause Company irreparable injury for which there is no adequate remedy at law and hereby agrees to the entry of an exparte temporary restraining order, preliminary and permanent injunction or any other emergency remedy necessary to prevent said violation.

d) Nothing contained herein shall be deemed to give the arbitrator any authority, power or right to alter, change, amend, modify, add to or to subtract from any of the provisions of this Agreement.

**11.10 Entire Agreement.** This Policy Manual is incorporated into the Agreement, along with the Compensation Plan, and constitutes the entire agreement of the parties regarding their business relationship.

**11.11 Governing Law, Jurisdiction and Venue.** The Agreement, including this Policy Manual, shall be governed by the laws of the State of Texas, except that any conflict-of-law rule that may require reference to the laws of some other jurisdiction shall be disregarded. The parties further agree that, subject to and without waiver of the requirements of the agreement to arbitrate contained in paragraph 11.09 above, the state and federal courts located in Dallas County, Texas shall be the exclusive forum for litigation of any dispute between or among Brand Partner and any of its officers, directors, employees or affiliates and Company or any of its officers, directors, employees or affiliates, that is permitted to be litigated in court under paragraph 11.09. The parties irrevocably waive any right any of them may have to assert that venue or jurisdiction for any such litigation should lie elsewhere, including, but not limited to, any objection based on forum non conveniens or personal jurisdiction. The parties intend this provision to be a binding, mandatory and exclusive forum-selection clause, subject to and without waiver of the agreement to arbitrate.

**11.12 Force Majeure.** The Company shall not be responsible for delays or failure in performance caused by circumstances beyond a party's control, such as strikes, labor difficulties, fire, war, government decrees or orders or curtailment of a party's usual source of supply.

**11.13 Notice.** Any communication, notice or demand of any kind whatsoever, which either Brand Partner or the Company may be required or may desire to give or to serve upon the other shall be in writing and delivered by electronic communication whether by telex, telegram, e-mail or fax (if confirmed in writing sent by registered or certified mail, postage pre-paid, return receipt requested or by personal service). Any party may change its address for notice by giving written notice to the other in the manner provided in this Section. Any such communication, notice or demand shall be deemed to have been given or served on the date personally served by personal service, on the date of confirmed dispatch if by electronic communication, or on the date shown on the return receipt or other evidence if delivery is by mail.

**11.14 Severability.** If under any applicable and binding law or rule of any applicable jurisdiction, any provision of the Agreement, including this Policy Manual, or any specification, standard or operating procedure which the Company has prescribed, is held to be invalid or unenforceable, the Company shall have the right to modify the invalid or unenforceable provision, specification, standard or operating procedure or any portion thereof, to the extent required to be valid and enforceable, and Brand Partner shall be bound by any such modification. The modification will be effective only in the jurisdiction in which it is required.

**11.15 Violations.** It is the obligation of every Brand Partner to abide by and maintain the integrity of this Policy Manual. If Brand Partner observes another Brand Partner committing a violation, such Brand Partner should discuss the violation directly with the violating Brand Partner. Any violations reported to the Company shall follow the Company's reporting procedures and may be reported by phone to Nerium International Support Department at 855-4-NERIUM (855-463-7486).

## SECTION TWELVE: CODE OF PROFESSIONAL ETHICS

Nerium International, LLC., believes that its Brand Partners should subscribe to the principles of fairness, honesty, integrity and service. The relationship of the company to Brand Partner, Brand Partner to customer and Brand Partner to others should be preserved, protected and promoted in accordance with the highest standards of conduct. Therefore, Brand Partner agrees to abide by and subscribe to the code of professional ethics (the "code of ethics") contained in this section twelve.

AS A BRAND PARTNER, I AGREE THAT:

**12.01** I will be honest and fair in all my dealings while acting as a Brand Partner of the Company.

**12.02** I will respect the time and privacy of the people I contact to become retail customers or Brand Partners of the Company. I will be courteous and respectful to every person contacted in the course of my Company business.

**12.03** I will perform all my professional activities in a manner that will enhance my reputation and the reputation of the Company.

**12.04** I will fulfill my leadership responsibilities as a Sponsor, including training and otherwise supporting Brand Partners in my sales organization.

**12.05** I will not engage in any deceptive or illegal practice, or any practice prohibited by the Agreement or the Policy Manual.

**12.06** I will not make diagnostic, therapeutic or curative claims for the Company's products. I will not make any claims not contained in official Company literature. I will represent only that "each body is unique and responds uniquely to different products." remembering that even my personal experience with the product may be interpreted as an "extension of labeling claims" if I use those experiences as a sales device.

**12.07** I will make no income claims or representations regarding the Company Compensation Plan, remembering that ideal projections of the Company Compensation Plan are unrealistic. No network is grown in a perfect geometric progression and therefore it is impossible to predict incomes. Further, a Brand Partner's success depends on many variables, such as the amount of time committed to his/her business and the degree of organizational ability.

**12.08** I understand and agree that I am solely responsible for all financial and/or legal obligations incurred by me in the course of my business as a Brand Partner of Nerium International, including self-employment taxes, income taxes, sales taxes, license fees and related personal fees.

**12.09** I will always honor the Company's 100% satisfaction, thirty (30) day money back guarantee when dealing with my retail customers.

**12.10** I understand and agree that capitalism is one of the most competitive economic systems in the world; I will compete aggressively but fairly, and I will respect the professionals of other network marketing companies. I will not solicit from the proprietary rolls or "genealogical" printouts of other network marketing companies. I will not use sales materials or professional associations that may be regarded as proprietary by other companies. The Company seeks to promote the reputation of all reputable network marketing companies that are furthering the cause of personal independence for their Brand Partners.

**12.11** A Brand Partner shall engage in no conduct which negatively impacts, disrupts or impairs the reputation or business of the Company or other Brand Partners, including, but not limited to: disparagement of the Company, its Officers or Employees or other Brand Partners; manipulation of the Compensation Plan; undermines or is at odds with the training systems utilized by and authorized by the Company; conduct which is abusive, disrespectful or intimidating of other Brand Partners, Customers, Employees or Affiliates of the company; conduct that undermines the relationship between the Company and Brand Partners or relationships between Brand Partners; conduct which is false, fraudulent, dishonest or deceptive in any way; or any other conduct which the Company deems disreputable or, in anyway, negatively impacts the Company or other Brand Partners.

SECTION THIRTEEN: ADDENDA FOR SPECIFIC STATES

**13.01 Distributor Agreement for Georgia.** This addendum is applicable to Georgia participants only.

a) This addendum shall supersede and override any provisions in the independent distributor agreement which shall be in conflict with this addendum, except that any cancellation or buy-back provision in the distributor agreement, which is more favorable in terms to the distributor than this addendum, shall remain in full force and effect. The further purpose of this addendum is to set forth the rights of the independent distributor.

b) Description of Products or Services: The company markets skincare and health-oriented products and services to the consumer through independent distributors by way of network marketing. The company's product line is indicated on the enclosed brochures. The company's primary service to distributors who are independent contractor marketers is to make available quality products for distributors to sell. In addition, the company makes available sales and marketing literature, ordering and other forms, supportive materials to promote the business and policies and procedures to provide guidance in conduct of the business. The company maintains a distributor relations department to answer questions of distributors. The company makes available to distributors downline sales organization data processing reports to inform distributors of sales production activity of their sales organization. Information regarding shipping and training are provided in other paragraphs. The company's sales and marketing materials provide more detailed information. The company supplies marketing materials and fulfills orders of its distributors.

c) Delivery Date of Products: After receipt of orders and payment in full, the company ships orders for its products received before 12:00 p.m. CST the same day, and orders received after 12:00 p.m. CST are shipped the next business day. Product orders are sent via Federal Express. Methods of payment include check or credit cards.

d) Training: The Company offers a complete library of print and video materials to all independent distributors at no charge. The materials are readily available over the internet in the distributor's personal virtual office. The training materials cover the science behind the product, how to conduct a personal sales party in the home, an understanding of the Compensation Plan and a complete library of personal development tools.

e) A participant in this multilevel marketing plan has a right to cancel at any time, regardless of reason. Cancellation must be submitted in writing to the company at its principal business address.

f) Cancellation and Buy-Back Policy: The company will honor minimum cancellation rights to the participant in accordance with OCGA § 10-1-415(d)(1), (2) and (3), which code sections provide as follows and are set forth verbatim:

1.) "If the participant has purchased products or paid for administrative services while the contract of participation was in effect, the seller shall repurchase all unencumbered products, sales aids, literature, and promotional items which are in a reasonably resalable or reusable condition and which were acquired by the participant from the seller; such repurchase shall be at a price not less than 90 percent of the original net cost to the participant of the goods being returned. For purposes of this paragraph, 'original net cost' means the amount actually paid by the participant for the goods, less any consideration received by the participant for purchase of the goods which is attributable to the specific goods now being returned. Goods shall be deemed 'resalable or reusable' if the goods are in an unused, commercially resalable condition at the time the goods are returned to the seller. Goods which are no longer marketed by the company shall be deemed 'resalable or reusable' if the goods are in an unused, commercially resalable condition and are returned to the seller within one year from the date the company discontinued marketing the goods; provided, however, that goods which are no longer marketed by a multilevel distribution company shall not be deemed 'resalable or reusable' if the goods are sold to participants as nonreturnable, discontinued, or seasonal items and the nonreturnable, discontinued, or seasonal nature of the goods was clearly disclosed to the participant seeking to return the goods prior to the purchase of the goods by the participant. Notwithstanding anything to the contrary contained in this paragraph, a multilevel distribution company may not assert that any more than 15 percent of its total yearly sales per calendar year to participants in dollars are from nonreturnable, discontinued, or seasonal items;

2.) The repayment of all administrative fees or consideration paid for other services shall be at not less than 90 percent of the costs to the participant of such fees or services and shall reflect all other administrative services that have not, at the time of termination, been provided to the participant; and

3.) The participant may be held responsible for all shipping expenses incurred in returning sales aids or products to the company but only if such responsibility of a canceling participant is disclosed in the written description of the cancellation rights." The cancellation and buy-back policy above is controlling and overrides any contrary language in any other company materials.

g) Pursuant to OCGA § 10-1-415(d)(3), notice is given that the participant shall be responsible for all shipping expenses incurred in returning sales aids or products to the company.

## 13.02 Distrubutor Agreement for Louisiana. This addendum is applicable to Louisiana participants only.

a) This addendum shall supersede and override any provisions in the independent distributor agreement which shall be in conflict with this addendum, except that any cancellation or buy-back provision in the distributor agreement, which is more favorable in terms to the distributor than this addendum, shall remain in full force and effect. The further purpose of this addendum is to set forth the rights of the independent distributor.

b) A participant in this multilevel marketing plan has a right to cancel at any time, regardless of reason. Cancellation must be submitted in writing to the Company at its principal business address.

c) No purchase or investment is necessary to become a Company distributor other than the purchase of a distributor sales kit which is sold "at Company cost."

d) Waiver of Personal Activity Requirement During First Sixth Months. During the first six (6) months after commencement of the distributor agreement, every Louisiana distributor is excused from personal product purchase activity requirements to the extent that payment for product purchased when combined with any other consideration (e.g. sales kit) exceeds $300. During this period, no total payment in excess of $300, either by express condition or practical necessity may be required to qualify as an active distributor or to qualify for bonuses. The waiver of qualifying purchase requirements is controlling and overrides anything to the contrary in other Company materials. Other than purchase of sales kit, all purchases by a distributor are voluntary and are neither required by actual or practical necessity to participate fully in the marketing program.

e) Prohibition: Any payment by a distributor during his or her first 180 days in excess of $300 which may be considered under La. R.S. 51:1821(2) as initial consideration required by express condition or practical necessity is strictly prohibited.

1.) The above prohibition shall not in any way restrict the amount of retail sales.

2.) Upon termination, if the independent distributor has purchased products for inventory purposes or mandatory sales tools while the distributor agreement was in effect, all unencumbered products purchased within the previous twelve (12) months which are in an unused and commercially resalable condition then in possession of the independent distributor shall be repurchased. The repurchase shall be at price of not less than ninety (90%) percent of the original net cost to the participant returning such goods, taking into account any sales made by or through such participant prior to notification to the Company of the election to cancel. You may not re-join the Company for a period of six (6) months after a resignation.

3.) Louisiana Law Applicable. In the event of a dispute for jurisdictional purposes, a distributor shall be entitled to file an adjudicatory claim or lawsuit in the jurisdiction of Louisiana and the governing law shall be Louisiana law.

## 13.03 Montana Addendum to Agreement.

a) Refund Policy for Montana Representatives. The following refund policies shall be applicable to Montana representatives and shall supercede any policies that are less protective to Montana representatives.

1.) A representative may cancel participation in the representative contract for any reason at any time upon notification in writing to the company of the election to cancel.

2.) If the representative cancels participation and returns any required items, the person is entitled to a refund of any consideration given to participate in the sales plan or operation.

3.) Upon the request of a representative deciding to terminate participation in the sales plan or operation, there shall be the purchase, at not less than ninety percent (90%) of the amount paid by the representative, of any currently marketable goods or services sold to the representative within twelve (12) months of the request that have not been resold or consumed by the representative.

4.) Within fifteen (15) days from the date of enrollment, a Montana resident may cancel his or her Agreement and may return his or her starter kit for a full refund within such time period.

**13.04 Distributor Agreement for Oklahoma.** This addendum is applicable to Oklahoma only.

a) The independent distributor agreement may be canceled at any time and for any reason by a distributor notifying the company and the sponsoring distributor in writing of the election to cancel.

b) If a distributor elects not to renew his or her distributor agreement, all rights to bonuses, marketing position and wholesale purchases cease. The terminated distributor's sales organization shall be transferred to his or her sponsor.

c) If the independent distributor has purchased products for inventory purposes or mandatory sales tools while the distributor agreement was in effect, all unencumbered products in a resalable condition then in possession of the independent distributor, which have been purchased within twelve (12) months of cancellation, shall be repurchased. The repurchase shall be at a price of not less ninety percent than ninety (90%) of the original net cost to the participant returning such goods, taking into account any sales made by or through such participant prior to notification to the Company of the election to cancel.

d) Any product purchases which have been previously represented by the terminating distributor as having been either resold or utilized for personal or family use under the company's 70% Rule or otherwise, are not subject to repurchase.

**13.05 Distributor Agreement for Texas.** This addendum is applicable to Texas distributors only.

a) The independent distributor agreement may be canceled at any time and for any reason by a distributor notifying the company and the sponsoring distributor in writing of the election to cancel.

b) If a distributor elects not to renew his or her distributor agreement, all rights to bonuses, marketing position and wholesale purchases cease. The terminated distributor's sales organization shall be transferred to his or her sponsor.

c) If the independent distributor has purchased products for inventory purposes or mandatory sales tools while the distributor agreement was in effect, all unencumbered products in a resalable condition then in possession of the independent distributor, which have been purchased within twelve months of cancellation, shall be repurchased. The repurchase shall be at a price of not less than ninety percent (90%) of the original net cost to the participant returning such goods, taking into account any sales made by or such participant through prior to notification to the Company of the election to cancel.

d) Any product purchases which have been previously represented by the terminating distributor as having been either resold or utilized for personal or family use under the company's 70% Rule or otherwise, are not subject to repurchase.

**13.06 Wyoming Addendum to Agreement.**

a) Refund Policy for Wyoming Distributors. The following refund policies shall be applicable to Wyoming distributors and shall control over any policies that are less protective to Wyoming distributors.

1.) A distributor may cancel participation in the distributor contract for any reason at any time upon notification in writing to the company of the election to cancel.

2.) If the participant has purchased products while the contract of participation was in effect, all unencumbered products in a resalable condition then in the possession of the participant shall be repurchased by the company. The repurchase shall not be at a price of not less than ninety percent (90%) of the original net cost to the participant returning such goods, taking into account any sales made by or through such participant prior to notification to the company of the election to cancel.

3.) Although the company does not have a purchase requirement, in the event such a requirement is made of participants in its marketing program to purchase products or services or pay any other consideration in order to participate in the marketing program, the following refund policy shall be applicable and the company agrees:

a.) To repurchase all or part of any products which are unencumbered and in a resalable condition at a price of not less ninety percent (90%) of the original net cost to the participant, taking into account any sales made by or through such participant prior to notification to the company of election to cancel;

b.) To repay not less than ninety percent (90%) of the original net cost of any services purchased by the participants; or

c.) To refund not less than ninety percent (90%) of any other consideration paid by the participant in order to participate in the marketing program.

# EXHIBIT B



Nerium International
4006 Belt Line Road, Suite 100
Addison, TX 75001

# Order Invoice

: Ground Shipping
4/23/2013

| Ship To | Order Info |
|---|---|
| Kimberly Gerdo<br>37714 Rushing Wind Ct<br>Murrieta, CA 92563 | Order No.: 9759150<br>Date: 2/28/2013 8:37:46 PM -06:00<br>Customer ID: 2594344<br>Customer Name: Kimberly Gerdo<br>Shipping Method: Ground Shipping |

**Payment Info**

Payment Method: Credit Card
Payment Amount: $549.90
Payee Name:     Kimberly Gerdo

Payment Date:   2/28/2013 8:37:11 PM -06:00

| Quantity | ItemID | Description | Price | Total |
|---|---|---|---|---|
| 1 | 501 | Success Pack | $499.95 | $499.95 |
| 5 | 101 | NeriumAD Age-Defying Treatment | | |
| 1 | 301 | Launch Kit | | |

| | | |
|---|---|---|
| Subtotal: | $499.95 |
| Shipping: | $9.95 |
| Taxes: | $40.00 |
| **Total:** | **$549.90** |
| Amount Paid: | $549.90 |

## THANK YOU FOR YOUR BUSINESS!

If you have any questions or concerns, please contact the Nerium Support Center at 855-463-7486.

NERIUM INTERNATIONAL PROHIBITS STOCKPILING AND MASS MARKET INTERNET SALES. Completion of this product order certifies that you have sold or used at least 70% of all prior orders and that none of this product will be promoted or sold on ANY mass market websites such as eBay, Amazon, national retail sites, or other similar sites.

EXHIBIT C



Nerium International
4006 Belt Line Road, Suite 100
Addison, TX 75001

# Order Invoice

: Ground Shipping

| Ship To | Order Info |
|---|---|

Kimberly Gerdo

Riverside, CA 92506

Order No.:        143884820
Date:             1/15/2018 9:17:13 AM -06:00
Customer ID:      22844315
Customer Name: Kimberly Gerdo
Shipping Method: Ground Shipping

## Payment Info

Payment Method: Credit Card
Payment Amount: $509.90
Payee Name:     Kimberly Gerdo

Payment Date:   1/15/2018 9:17:13 AM -06:00

| Quantity | ItemID | Description | Price | Total |
|---|---|---|---|---|
| 1 | 2012_en-US | Starter Pack (English) | $499.95 | $499.95 |
| | | | Subtotal: | $499.95 |
| | | | Shipping: | $9.95 |
| | | | Taxes: | $0.00 |
| | | | **Total:** | **$509.90** |
| | | | Amount Paid: | $509.90 |

## THANK YOU FOR YOUR BUSINESS!

If you have any questions or concerns, please contact the Nerium Support Center at 855-463-7486.

NERIUM INTERNATIONAL PROHIBITS STOCKPILING AND MASS MARKET INTERNET SALES. Completion of this product order certifies that you have sold or used at least 70% of all prior orders and that none of this product will be promoted or sold on ANY mass market websites such as eBay, Amazon, national retail sites, or other similar sites.



# Minute Order

| Case Name: GERDO VS NERIUM INTERNATIONAL LLC | |
|---|---|
| Riverside Civil | Unlimited Civil Class Action (Riverside) |
| **Case Number:** RIC1814331 | **File Date:** 7/13/2018 |
| **Action Date:** 9/11/2018 | **Action Time:** 8:30 AM      **Department:** 05 |
| **Action Description:** Case Management Conference Hearing - Complex Case. | |
| Notice sent to BOHM WILDISH & MATSEN LLP on 7/13/18 | |





**SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE**

N'KR

JUL 16 2018 R

| | |
|---|---|
| ☐ BANNING 311 E. Ramsey St., Banning, CA 92220 | ☐ MURRIETA 30755-D Auld Rd., Suite 1226, Murrieta, CA 92563 |
| ☐ BLYTHE 265 N. Broadway, Blythe, CA 92225 | ☐ PALM SPRINGS 3255 E. Tahquitz Canyon Way, Palm Springs, CA 92262 |
| ☐ HEMET 880 N. State St., Hemet, CA 92543 | ☒ RIVERSIDE 4050 Main St., Riverside, CA 92501 |
| ☐ MORENO VALLEY 13800 Heacock St., Ste. D201, Moreno Valley, CA 92553 | ☐ TEMECULA 41002 County Center Dr., #100, Temecula, CA 92591 |

RI-030

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar Number and Address)*
James G Bohm (132430), Klause Heinze (279634), Christopher J Green (295674)
Bohm Wildish & Matsen, LLP
695 Town Center Drive, Suite 700
Costa Mesa, CA 92626

TELEPHONE NO: 714-384-6500     FAX NO. *(Optional)*: 714-384-6501
E-MAIL ADDRESS *(Optional)*: jbohm@aol.com
ATTORNEY FOR *(Name)*: Kimberly Gerdo and the Putative Class

FOR COURT USE ONLY

F I L E D
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

- JUL 13 2018

B. VOTRUBA

PLAINTIFF/PETITIONER: Kimberly Gerdo

DEFENDANT/RESPONDENT: Nerium International, LLC et al

CASE NUMBER:
RIC1814331

## CERTIFICATE OF COUNSEL

The undersigned certifies that this matter should be tried or heard in the court identified above for the reasons specified below:

☐ The action arose in the zip code of: _____

☐ The action concerns real property located in the zip code of: _____

☒ The Defendant resides in the zip code of: 92563 _____

For more information on where actions should be filed in the Riverside County Superior Courts, please refer to Local Rule 1.0015 at www.riverside.courts.ca.gov.

I certify (or declare) under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date 7/13/2018 _____

James G. Bohm, Esq.
*(TYPE OR PRINT NAME OF ☐ ATTORNEY ☐ PARTY MAKING DECLARATION)*

► _____
*(SIGNATURE)*

Page 1 of 1

Approved for Mandatory Use
Riverside Superior Court
RI-030 [Rev. 08/15/13]

**CERTIFICATE OF COUNSEL**

Local Rule 1.0015
riverside.courts.ca.gov/localrules/localrules.shtml

**ORIGINAL**

**FAXED**
SUM-100

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

NERIUM INTERNATIONAL, LLC, a limited liability company; JEFF OLSON, an individual; and DOES 1 through 25, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

KIMBERLY GERDO, an individual, on behalf of herself and other persons similarly situated

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

JUL 1 3 2018

B. VOTRUBA

N'KR

JUL 1 6 2018

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is: *(El nombre y dirección de la corte es):* Riverside Historic Courthouse<br>4050 Main Street<br>Riverside, CA 92501 | CASE NUMBER: *(Número del Caso):*<br>RIC1814331 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
James Bohm, Bohm Wildish & Matsen 695 Town Center Dr, Ste 700, Costa Mesa, CA 92626. T: 714-384-6500

| DATE: *(Fecha)* 7/13/18 | Clerk, by *(Secretario)* B. Votruba | , Deputy *(Adjunto)* |
|---|---|---|

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>www.courtinfo.ca.gov |

SUPERIOR COURT OF THE STATE OF CALIFORNIA, COUNTY OF RIVERSIDE

| CASE TITLE: Gerdo v. Nerium International, LLC | Department 5 | |
|---|---|---|
| CASE NO.:   RIC1814331 | | **F I L E D**<br>SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF RIVERSIDE |
| DATE:   July 16, 2018 | | JUL 1 9 2018 |
| PROCEEDING:  Class Action Case Management Order #1 | | S. Salazar |

Unless and until ordered otherwise, this Case Management Order ("CMO") shall govern the management of this case.

A.   <u>IN GENERAL</u>

1.    The Court finds that this is a complex case.  (Cal. Rules of Court, rules 3.400(c)(6) and 3.403(b).)  The clerk shall impose fees accordingly. The court will entertain objections to this designation at the next Case Management Conference or status conference.

2.    This case has been assigned to Department 5 for all purposes, including case management, law and motion, and trial.

3.    The plaintiff shall serve a copy of this CMO on any defendants who have not yet appeared, and shall file proof of service promptly thereafter.

4.    Any party who has appeared in the action at the time this CMO is entered has 15 days from the service of the CMO in which to object to the CMO.  Any party appearing after the entry of the CMO shall have 15 days from that initial appearance in which to object to the CMO.  Any such objections shall be in writing and shall be presented to the Court in the form of a noticed motion to amend the CMO. Any party that fails to file such a motion within those 15 days forfeits its objections to the CMO.

5.    If the Court issues an order to show cause why the Court should not take some specified action:

   a.    The party to whom the OSC is directed shall respond with a written declaration filed no later than four court days before the hearing on the OSC. (RSC Local Rule 3116.) The Court may deem the failure to file a timely declaration, by itself, to constitute an admission by the responding party that good cause to avoid the threatened sanction or other action does not exist. (RSC Local Rule 3116.)

   b.    If the order to show cause threatens the imposition of monetary or other sanctions for the violation of a court order or rule, then counsel for the party to whom the OSC is directed must not only file a timely declaration, but must also personally appear in court at the date set for the return of the OSC. (Cal. Rules of Court, rule 3.670(e)(2)(A).)

6.    The Court will not grant any relief based on a stipulation of a party that has not yet paid its first-appearance fee.


B.    SERVICE AND RESPONSIVE PLEADINGS

1.    All defendants named at the time of the filing of this CMO shall be served, and proofs of service filed, prior to the case management conference.

2.    Any defendant named after the filing of this CMO shall be served, and proof of service shall be filed, within 60 days of the filing of the pleading, amendment, or amended pleading naming that defendant. (Modifying Cal. Rules of Court, rule 3.110(b).)

3.    The power of the plaintiff to grant extensions of time in which to file responsive pleadings is subject to the limits in California Rules of Court, rule 3.110(d), except that the maximum extension by counsel is extended to 30 days.

4.    If a defendant fails to file an answer or any other responsive pleading within 30 days of service, or within any extension granted by the plaintiff or the Court, the plaintiff must request entry of default not later than 30 days after the time for service of the responsive pleading has elapsed. (Modifying Cal. Rules of Court, rule 3.110(g).)

5.    The plaintiff shall serve a copy of this CMO simultaneously with any summons and complaint served after the date of entry of this order.

6.    The Court should not be asked to evaluate the sufficiency of a pleading until the pleader has stated his or her case or defense as strongly as possible. Therefore, if a party is considering either an amendment of a pleading or a challenge to an opponent's pleading:

    a.    The parties shall strictly comply with Code of Civil Procedure sections 430.41, 435.5, and 439. Before filing a demurrer, motion to strike, or motion for judgment on the pleadings, the parties shall meet and confer to determine whether the challenge to the pleading is arguably meritorious and, if so, whether the parties will stipulate to leave to amend being granted to allow the pleading to be amended in an attempt to cure the asserted defect.

    b.    Any party who believes that his or her pleading needs to be amended shall meet and confer with the opposing party to discuss whether the amendment is arguably necessary and whether the opposing party will stipulate to the filing of the amended pleading. Consent to such an amendment shall not be unreasonably withheld.

    c.    The parties "shall meet and confer in person or by telephone" (§§ 430.41, subd. (a), 435.5, subd. (a), & 439, subd. (a)) to discuss any arguable defects in the pleadings, and whether those potential defects can be resolved or diminished by amendment. Merely sending a letter or email to opposing counsel does not constitute a meeting, and thus does not comply with this order. Counsel for the moving or demurring party must follow up on any such written communication with an oral request either by telephone or in person.

d.   Any challenge to a pleading, and any motion for leave to amend a pleading, must be accompanied by a declaration describing those meet-and-confer efforts, including the date of the meeting, whether it was in person or by telephone, the persons involved, and the issues discussed. The declaration shall also describe any offer to amend and any response to that offer.

e.   In the absence of evidence of such an effort to meet and confer, the Court may overrule the demurrer, deny the motion, or continue the hearing until such an effort has been made.

## C.   MEDIATION

The court expects the parties to engage in private mediation at the earliest practicable time, i.e., as soon as all parties have obtained – preferably through informal means – sufficient information from the opposing party(s) to enable them to engage in meaningful mediation.

## D.   CASE MANAGEMENT AND THE CASE PROGRESSION PLAN

1.   The Court finds that this case involves exceptional circumstances that are likely to prevent this case from meeting the goals and deadlines set by California Rules of Court, rule 3.713(b). Accordingly, this case is exempt from those case disposition time goals. (*Id.*, rule 3.714(c)(1).) With the input from the parties, the Court shall develop a case progression plan with the goal of disposing of the case within three years. (*Id.*, rule 3.714(c)(2).)

2.   Not later than four court days in advance of the first Case Management Conference, all parties that have appeared shall file the joint statement required by RSC Local Rule 3160 instead of Judicial Council form CM-110 [case management statement]. In addition to the items listed in Rule 3160, the statement shall:

a.   Advise the Court whether any of the parties or their counsel are aware of any other class action, putative class action, or other type of representative or collective action in this or any other jurisdiction that asserts claims similar to those here on behalf of a class, putative class, or other group of individuals that in any way overlaps with the putative class alleged here.

b.   Describe the parties' case progression plan, which shall include at least (i) a statement as to whether the parties agree to pursue mediation and (ii) a plan of the informal discovery and any formal discovery to be conducted in preparation for mediation, class certification, or both.

3.   Not later than four court days before any subsequent Case Management Conference, status conference, or trial setting conference, the parties shall file a joint statement that:

   a.   Describes the status of the case, including (i) the results of any mediation or other settlement efforts, (ii) the degree to which the case progression plan has been implemented and (iii) any changes or additions to the case progression plan; and

   b.   Identifies any issues or concerns that either party wishes to discuss with the Court.

4.   If mediation is unsuccessful, the case progression plan shall be expanded prior to the next status conference to include (a) a pre-certification discovery schedule, (b) a deadline for filing a motion for class certification, and a proposed briefing schedule for that motion.

5.   Because the Court intends to conduct portions of the Case Management Conference and status conferences informally, in chambers, the lead counsel shall personally appear. Appearance via Court Call is not permitted.

E.   DISCOVERY

1.   Counsel are encouraged to engage in informal discovery rather than relying on formal discovery. The Court does not stay or otherwise limit informal discovery.

2.   All formal discovery concerning solely the merits of the plaintiff's claims (as opposed to whether a class should be certified to prosecute those claims) is stayed until a motion regarding class certification has been granted.

3.   All formal discovery concerning class-certification issues is stayed pending further order of the court. The stay will be lifted upon a showing (a) that the parties have met and conferred concerning the scope and sources of information needed to support or oppose such a motion, and (b) have been unable to reach an agreement to informally exchange that information.

4.   Requests for leave to propound formal discovery concerning class-certification issues may be made either by submitting a declaration and proposed order or by making an oral request at status conferences or informal conferences with the Court, in accordance with paragraph 6 below. The Court will grant such a request if the applicant demonstrates:

   a.   That the parties have met and conferred to discuss both (i) the scope and sources of the information needed either to permit a meaningful mediation or to support or oppose a class-certification motion and (ii) whether the parties would agree to exchange that information informally;

   b.   That the parties were unable to reach an agreement; and

   c.   The discovery is reasonably necessary either (i) to permit a meaningful mediation or (ii) to make or oppose a certification motion.

5.   Any formal or informal discovery request propounded by the plaintiff to the defendant that seeks the names of and contact information concerning the putative class members shall be accompanied by a proposed *Belaire West* notice and the name of a proposed third-party administrator.

6.   No discovery motions may be filed without leave of court.  If a discovery dispute arises:

    a.   The parties shall meet and confer either in person or by telephone in a good-faith effort to resolve the dispute.  If, despite that effort, the parties are unable to resolve the dispute, then counsel shall contact the clerk of this department to schedule an informal conference at which the court will discuss the dispute with counsel and, if not resolved to the parties' satisfaction, will consider any request for leave to file a formal motion.

    b.   The conference may be conducted by telephone or in person, as counsel prefer. Prior to the conference, the party seeking relief shall provide the clerk of this department with a brief (two-to-three sentence) description in writing of the reason for the conference.  If the conference is to be by telephone, counsel shall also provide the clerk with the call-in telephone number and passcode.

    c.   If the opposing side will not agree to participate in the informal conference, then the moving party shall bring an ex parte application for leave to file a discovery motion.

## F.   REQUESTS FOR DISMISSAL OF CLASS CLAIMS

If the plaintiff seeks to dismiss or otherwise abandon either the entire action, any cause of action asserted on behalf of the putative class, or any defendant against whom any cause of action is asserted on behalf of the class:

1.   Because any such dismissal requires court approval, the plaintiff shall not use the preprinted Request for Dismissal, Judicial Council form CIV-110.  Instead, the request shall be made by the submission to the court of (a) a declaration from plaintiff's counsel, (b) a declaration from each named plaintiff, and (c) a proposed order of dismissal.

2.   The declarations must comply with California Rules of Court, rule 3.770(a), pertaining to any consideration being paid for the dismissal.  Because the purpose of the requirement is to avoid collusion between the parties to the detriment of the potential class members, the showing must be made by declaration rather than by stipulation.

3.   If the dismissal is in exchange for any consideration, the declarations shall address each of the following:

    a.   What is the form and value of the consideration, and to whom is it to be paid?

    b.   If the consideration is in the form of one or more monetary payments, how were the payments calculated?

    c.   How is the retention of that consideration either by the plaintiff or the plaintiff's attorney consistent with their respective fiduciary duties to the class?

    d.   Is the plaintiff required to execute a release in addition to a dismissal? If so, what is the scope of that release?

4.   The declarations shall state whether the plaintiff has attempted to settle the plaintiff's individual claims, and if so, the status of those negotiations.

5.  If the plaintiff has negotiated a settlement of individual claims against any defendant separate from the representative claims, and that settlement provides for the payment to any plaintiff of consideration other than a waiver of costs, the declaration shall explain:

   a.  The value of any individual claim being released by the plaintiff.  In particular, the declaration shall estimate (i) the total amount of damages, monetary penalties or other relief that the plaintiff would be awarded if the action were entirely successful at trial on that claim, and (ii) the total amount of damages, monetary penalties or other relief that the plaintiff could reasonably expect to be awarded at trial, taking into account the likelihood of prevailing and other attendant risks.

   b.  The form and value of the consideration to be paid to the plaintiff.

   c.  If the consideration to the plaintiff is in the form of one or more monetary payments, how the payments were calculated, and to whom are they to be paid.

6.  The declarations by plaintiff and plaintiff's counsel shall state (a) whether the declarant has ever informed any of the putative class members – whether formally or informally, orally or in writing, individually or as a group – of the preparation, filing, or pendency of the action, and (b) if so, both (i) the nature and extent of that information and (ii) whether the declarant knows or has a means of discovering the name and mailing address of the putative class member or members to whom that information was communicated.

7.  Any request shall explain the reason for the requested dismissal. If the reason is that the named plaintiff does not wish to prosecute the case on behalf of the putative class:

   a.  The plaintiff shall explain the reason for his or her change of heart.  Simply stating that the plaintiff no longer wishes to pursue claims on behalf of the class is not sufficient.

   b.  The putative class counsel shall explain why counsel wishes to abandon the class claims rather than locate a new class representative.

8.  Any request shall explain why the putative class members will not be prejudiced by the requested dismissal.

9.  If the complaint alleges any claims under Labor Code section 2699 (PAGA), and the plaintiff intends to dismiss any of those representative claims because the plaintiff has negotiated a settlement of individual claims against any defendant separate from the representative claims, and that settlement provides for the payment to any plaintiff of any consideration (other than a waiver of costs) that is in addition to or instead of PAGA penalties, the declaration shall describe the information required by section F.5.

G.  **MOTIONS & APPLICATIONS GENERALLY**

1.  A party making an ex parte application must, inter alia, "[a]ttempt to determine whether the opposing party will appear to oppose the application." (Cal. Rules of Court, rule 3.1204(a)(2).)  That attempt shall be made by telephone.  Written notice asking the

opposing party to inform the moving party of the opposing party's intentions is not sufficient.

2. A party desiring an order shortening time for notice of a motion shall not bring an ex parte application for such an order until that party has first (a) reserved the earliest available hearing date for the motion and (b) filed the motion. The Court will not deem the ex parte application as constituting the motion to be heard.

3. Any request for relief from a forfeiture of the right to a jury trial must be brought in the form of a noticed motion to be heard not later than the Trial Readiness Conference, or if no TRC is set, then not later than 21 days before the date first set for trial.

4. Any party who obtains an order as a result of any motion, application, stipulation or recommendation filed by that party shall promptly (a) serve a copy of that order on all parties and (b) file a proof of that service with the Court.

5. Any motion or application for relief shall describe any prior motion or application in this case for the same or similar relief, including the name of the party who brought the prior motion or application, the date of the ruling on that motion or application, and the nature of that ruling.

6. Any request to continue a hearing, a case management conference, or a status conference must be (a) labelled as being a request for such relief, (b) supported by a declaration or stipulation establishing the facts that demonstrate good cause for that relief, and (c) accompanied by a proposed order.

7. If the court is asked to take judicial notice of some document already filed with the Riverside Superior Court to support or oppose some motion or application, the request shall state (a) the name and case number of the case in which the document is filed, (b) the full name of the document, and (c) the date on which the document was filed. (Cal. Rules of Court, rule 3.1306(c)(1).) A second copy of the document shall not be attached to the request.

8. Counsel shall not lodge copies of out-of-state authorities to which they have cited unless that authority is not available on Lexis and Westlaw.

9. When offering evidence in support of or in opposition to a motion, no declaration shall be included as an exhibit to any other declaration.

H.   SETTLEMENTS IN GENERAL

1. Regardless of the terms of the proposed settlement, and whether the settlement provides for the dismissal the class claims, no Notice of Settlement of Entire Case (Judicial Council form CM-200) shall be filed unless and until the Court approves the settlement and any dismissal.

2.     If plaintiff's counsel intends to ask to recover attorney's fees incurred in prosecuting this action, plaintiff's counsel should maintain contemporaneous time records for this case from this date forward, in time increments of no more than a tenth of an hour.

3.     Plaintiff's counsel shall consider registering with the clerk's office for fax filing. The Court is unlikely to reimburse counsel for any expenses incurred for a courier to deliver documents to the court for filing that exceed the cost of fax filing, which is currently $150 per year for unlimited filings.

I.     MOTIONS FOR PRELIMINARY APPROVAL OF SETTLEMENT

If the matter is settled and a motion for preliminary approval of the settlement will be filed:

In General

1.     The motion shall be supported by a declaration from the plaintiff's attorney that, inter alia:

   a.     Sets forth the attorney's estimate of the number of individuals in the class.

   b.     Sets forth the attorney's estimate of the total amount of damages, monetary penalties or other relief that the class would be awarded if the action were successful at trial on all of its claims.

   c.     Sets forth: (i) the attorney's estimate of the total amount of damages, monetary penalties or other relief that the class could reasonably expect to be awarded at trial, taking into account the likelihood of prevailing and other attendant risks; (ii) the attorney's reasons for that estimate; and (iii) both the number of class certification orders that the attorney has obtained concerning similar claims and the number of trials that the attorney has conducted concerning class or individual actions alleging similar claims.

   d.     Sets forth the attorney's estimate of the recovery by the average class member if the settlement were approved. If the recovery by different class members will vary, the attorney shall also estimate the range (high and low) of possible recoveries.

   e.     Describes in detail the nature and extent of the formal and informal discovery exchanged and other factual investigation conducted to determine the size of the class and the strength of the class claims.

   f.     States (i) whether the attorney is aware of any class, representative or other collective action in any other court in this or any other jurisdiction that asserts claims similar to those asserted in this action on behalf of a class or group of individuals who would also be members of the class defined in this action and, if so, (ii) the name and case number of any such case, the nature of the claims asserted, the definition of the class or other parties on whose behalf the action is brought, and the procedural status of that case. Before making that declaration, the attorney shall make reasonable inquiry of the plaintiff and of other members of the attorney's law

firm and any associated law firm to determine whether those individuals are aware of any such similar actions.

    g.    States whether there is a fee-splitting agreement between plaintiff's counsel and any other attorney or law firm. If so, the declaration shall identify the other attorney or law firm, shall describe the terms of that agreement, and shall state whether the named plaintiff has approved that agreement in writing.

2.    The motion shall be supported by a declaration from the defendant's attorney that states (a) whether the attorney is aware of any class, representative or other collective action in any other court in this or any other jurisdiction that asserts claims similar to those asserted in this action on behalf of a class or group of individuals who would also be members of the class defined in this action and (b) whether the attorney made reasonable inquiry of the defendant and of other members of the attorney's law firm and any associated law firm to determine whether the defendant or those individuals are aware of any such similar actions. If any such similar actions are known to exist, the declaration shall also state (c) the name and case number of any such case, the nature of the claims asserted, the definition of the class or other parties on whose behalf the action is brought, and the procedural status of that case.

3.    The settlement agreement shall describe how the value of any uncashed checks, unpaid cash residue, or other unclaimed or abandoned funds will be distributed.

    a.    In a wage-and-hour case or any other case seeking relief on behalf of a class of employees, the Court believes that distribution of any unclaimed funds to the Industrial Relations Unpaid Wage Fund (Lab. Code, §§ 96.6 & 96.7) in the name of the employee will usually better serve the public interest and the interest of the class than distribution in the manner otherwise prescribed by Code of Civil Procedure section 384, subdivision (b). If one or more the parties disagree, then the motion shall be supported by a declaration from that party or that party's counsel, explaining the factual basis for that disagreement.

    b.    In any other type of case, the motion shall describe the intended distribution of unclaimed funds in accordance with Code of Civil Procedure section 384 subdivision (b).

    c.    If the parties agree to distribute any portion of the funds to any recipient described in the first sentence of Code of Civil Procedure section 384, subdivision (b)(3)(C):

        i.    The motion shall be supported by a declaration from a knowledgeable person from the proposed recipient. The declaration shall:

            A.    Establish that the recipient is a nonprofit organization or foundation of the type described in that sentence.

            B.    Describe the history of the recipient, the types of projects that it has conducted or supported over the last five years, and any particular use to which it would intend to devote the unpaid residue if received.

      ii.     The declarations of the attorneys for the plaintiff and for the defendant shall describe any relationship between the proposed recipient and (A) any class representative or other party, (B) any officer, director, or manager of any party, or (C) any attorney or law firm for any party.

4.     If notice is not to be given by first class mail to addresses believed to be current, the motion shall discuss the proposed method of giving notice, the alternative methods considered, and the reasons that the proposed method is the one most likely to give actual notice to the greatest number of class members. If the identities of the class members are not known, the parties shall consider publication of notice in print, on the web, at the defendant's place of business, and through social media.

5.     If the settlement requires any of the class members to submit claims:

     a.     The motion shall explain why a claim process is reasonably necessary. If the defendant knows (i) the identity of the class members, (ii) their addresses or former addresses, and (iii) the facts necessary to calculate the recovery of each class member, the Court will require a strong showing of necessity for a claims process.

     b.     The motion shall explain the anticipated claims rate, and the basis for that prediction.

6.     If the settlement provides that any portion of the consideration paid or deposited by the defendant may revert to the defendant, the motion shall explain (a) the circumstances under which that reversion would occur, (b) the maximum amount of any reversion, and (c) why that reversion is fair.

7.     Any release to be given by the participating class members (other than the class representatives) shall be limited to:

     a.     The defendants named in the complaint, together with their officers, directors, employees and agents. If any other parties are sought to be released, the motion shall both (i) identify those other parties by name and (ii) explain the facts that justify their inclusion.

     b.     The claims stated in the complaint and those based solely upon the facts alleged in the complaint.

8.     If the settlement contemplates the use of an administrator to implement the terms of the settlement, the motion shall be supported by:

     a.     A declaration from the plaintiff's attorney, stating whether bids were sought from multiple potential administrators and, if so, the results of that competitive bidding.

     b.     A declaration from the administrator describing:

         i.     The administrator's experience;

         ii.     The fee to be charged by the administrator to perform the services described in the settlement agreement and proposed order;

    iii.    Whether that fee is (i) fixed, (ii) hourly, or (iii) hourly with a cap; and

    iv.    How the fee was calculated.

9.    If the settlement includes compensation for unpaid wages, the settlement agreement shall describe how the employer's share of any applicable payroll taxes will be handled. The Court suggests that the employer's share not be paid out of the gross settlement fund. The Court is not likely to include the amount of those payments when calculating the plaintiff's counsel's percentage attorney's fee.

10.    If the amount of the proposed settlement is sought to be justified in part by the assertion that the defendant cannot afford to pay any greater sum, the motion shall be supported by a declaration from plaintiff's counsel or expert describing the financial records reviewed and the information contained in those financial records that cause the plaintiff to believe that the defendant cannot afford a greater sum.

11.    The settlement agreement shall not provide that the class members shall be deemed to have agreed not to sue on any released claims, or any other provision that may expose the class members to potential liability for either breach of contract or misrepresentation.

12.    The documents that will be read by or used by the class members – the proposed notice, objection form, exclusion form, and any claim form – shall be drafted in a manner that is likely to be readily understood by the members of the class. To assist the Court in determining whether those documents comply with that directive, the motion shall be supported by a declaration on personal knowledge concerning the likely age, education, and experience of the class members, and of their ability to read and comprehend English.

13.    The motion shall be accompanied by a two-column Compliance Chart. One column shall separately list each requirement prescribed by each paragraph or sub-paragraph of section I of this order. The other column shall describe – by document name and page and line numbers – where in the moving papers the correspondent requirement is satisfied.

<u>The Order</u>

14.    The motion shall be accompanied by a separate proposed order which shall include, as attachments to the order, the proposed notice (Cal. Rules of Court, rule 3.769(e)), proposed exclusion form, proposed objection form, any proposed claim form, and any other form that is proposed to accompany the notice. The Court is likely to modify those proposed forms. Therefore, the Court will not issue an order that merely incorporates by reference the forms attached to the settlement agreement. The settlement agreement must be filed, but should not also be attached to the proposed order.

15.    Counsel shall carefully review both the terms and the terminology of the proposed order and accompanying forms (proposed notice, objection form, exclusion form, and any claim form) to confirm that the various documents are internally consistent, consistent with each other, and consistent with the settlement agreement.

16.   The proposed order shall state the name of any settlement administrator, and shall describe the nature of the services that the administrator will be required to perform, either directly or by reference to the settlement agreement.

17.   The proposed order shall provide that the notice shall be accompanied by an exclusion form that the class members may use. The order shall provide that any exclusion form shall be submitted to the settlement administrator rather than filed with the court. The order shall not require the class member to send copies of the exclusion form to counsel, but may require the settlement administrator to do so. The order shall provide that the settlement administrator shall file a declaration concurrently with the filing of any motion for final approval, authenticating a copy of every exclusion form received by the administrator.

18.   The proposed order shall provide that the notice shall be accompanied by an objection form that the class members may use. The order shall provide that any objection shall be submitted to the settlement administrator rather than filed with the court. The order shall not require the class member to send copies of the objection form to counsel, but may require the settlement administrator to do so. The order shall provide that the settlement administrator shall file a declaration concurrently with the filing of any motion for final approval, authenticating a copy of every objection form received by the administrator.

19.   Neither the order, the notice, nor the objection form shall require an objecting party to do either of the following, either personally or through counsel:

   a.   To appear at the hearing on the motion for final approval for that party's objection to be considered.

   b.   To file or serve, or to state in the objection, a notice of intention to appear at the hearing on the motion for final approval.

20.   The order shall require that either counsel or the administrator give notice to any objecting party of any continuance of the hearing of the motion for final approval.

21.   If the proposed order includes a provision enjoining the class members from filing any actions or administrative claims or proceedings pending the final hearing on the settlement, or for any other period, the motion shall include citations to authority for the issuance of such an injunction without notice to or opportunity to be heard by the individuals to be enjoined.

22.   If notice is to be given by mail, and if the class members will be required to submit a claim form, the order shall provide:

   a.   That the notice be accompanied by a stamped envelope addressed to the claims administrator; and

   b.   That the claims administrator be required to send a reminder notice to every class member from whom no claim or exclusion request is received within 30 days of mailing the notice.

Notice

Page 12 of 19

23. Unless the notice describes the approximate recovery by the individual class member to whom the notice is sent, the notice shall include an estimate of the likely recovery by the average class member. If the recovery by different members will vary, the notice shall also include an estimate of the range of possible recoveries.

24. To avoid discouraging any dissenting class members from objecting to the proposed settlement, the notice shall clearly indicate that the Court has determined only that there is sufficient evidence to suggest that the proposed settlement might be fair, adequate, and reasonable, and that any final determination of those issues will be made at the final hearing.

25. The notice shall advise the class members of where they can find the settlement agreement, by describing (a) the full title and filing date either of the settlement agreement or of the declaration or other document to which the agreement was attached when filed with the Court, (b) the address of the courthouse to which the case is assigned, and (c) the address of the court's website at which the case file can be viewed on-line.

Claim Form

26. The information required to be provided by the class member on any claim form shall not exceed the minimum information necessary to process the claim.

Objection Form

27. The objection form shall (a) instruct the objecting class member that the objection must be mailed to the settlement administrator, (b) state the name and address of the settlement administrator, and (c) state the date by which the objection must be mailed.

28. The information required to be provided by an objecting class member on the objection form shall not exceed the minimum information necessary to (a) identify the objector as a person entitled to object to the settlement and (b) to describe the nature of and basis for the objection.

29. If a claim must be submitted to participate in the settlement, the objection form shall remind the objector that, to participate in the settlement in the event that the objection is overruled, the objector must also submit a claim.

Exclusion Form

30. The exclusion form shall (a) instruct the class member seeking exclusion that the exclusion form must be mailed to the settlement administrator, (b) state the name and address of the settlement administrator, and (c) state the date by which the exclusion form must be mailed.

PAGA Penalties

31. If the action includes a claim for statutory penalties under the Labor Code Private Attorney General Act of 2004 ("PAGA"), the motion shall explain the terms of any settlement of that claim.

32. If the settlement provides for the payment of penalties under PAGA, the motion shall be accompanied by a declaration describing how the penalties were calculated and otherwise establishing facts sufficient to allow the Court to review and approve those penalties as required by Labor Code section 2699, subdivision (*l*). In particular, the declaration shall explain:

   a. The nature of the alleged violations.

   b. The number of alleged individual violations, including both the length of the relevant employment period and the number of employees allegedly employed during that period.

   c. The total amount of penalties for which the defendant is potentially liable were those allegations to be proven.

33. If the agreed-upon amount of PAGA penalties is less than the statutory maximum, the declaration shall explain why greater penalties would be unjust, arbitrary and oppressive, or confiscatory. (Lab. Code, § 2699, subd. (e)(2); *Amaral vs. Cintax Corp. No. 2* (2008) 163 Cal.App.4th 1157, 1213-1214.) In particular, the declaration shall explain:

   a. The extent to which the alleged violations would be likely to be found true at trial, considering the weight of the evidence, the clarity of the applicable law, and the strength of any factual or legal defense likely to be asserted by the defendant.

   b. The nature and extent of the discovery or other investigation undertaken by the plaintiff to estimate the likelihood of proving those allegations at trial.

   c. The likelihood that any violations would be proven to have been knowing and intentional.

   d. The total amount of penalties for which the defendant would be likely to be found liable at trial.

   e. Any facts that tend to suggest that the imposition of the total amount of statutory penalties for which the defendant would be likely to be found liable at trial would be unjust, arbitrary and oppressive, or confiscatory.

   f. How the amount of the agreed-upon penalties was calculated or otherwise arrived at.

   g. Whether the parties utilized the services of any neutral party to mediate this dispute.

   h. Any other factors that are material to a determination that the amount of the agreed-upon penalties is fair.

Revised Documents

34. If the Court either denies the motion or continues the hearing on the motion, and if the plaintiff thereafter files any amended stipulation, proposed order, or other document in support of either that motion or a renewed motion, the plaintiff shall file a declaration

authenticating a "red-lined" version of the amended document, showing how the earlier version was modified.

J.   MOTIONS FOR FINAL APPROVAL OF A SETTLEMENT

If the matter is settled and a motion for final approval of the settlement is filed:

1.   The order granting preliminary approval will set the date for the hearing on the plaintiff's motion for final approval. Promptly after the entry of that order, the plaintiff shall reserve a law and motion hearing on the date set in the order.

2.   Any request for a "service," "enhancement," or "incentive" payment to a named class representative shall be supported by a declaration from the proposed recipient in which the declarant:

   a.   Describes the services performed by the declarant to further the prosecution of the action;

   b.   Estimates the time incurred by the declarant in performing those services;

   c.   Describes any risks assumed by the declarant in prosecuting the action;

   d.   Describes any adverse consequences actually suffered by the declarant as a result of prosecuting the action;

   e.   Describes any benefits received by the declarant as a result of prosecuting the action;

   f.   Describes the nature and amount of any expenses incurred by the declarant to further the prosecution of this action;

   g.   Describes the nature and value of any related individual claims being released by the declarant;

   h.   States whether the declarant is or was a named class representative in any other case, pending or closed, and if so, identifies any such case; and

   i.   States the amount that the declarant expects to receive as a class member.

3.   Any request for compensation for attorney's fees in a case that does not result in the creation of a common fund shall be supported by a lodestar analysis. Any request for an attorney-fee award measured as a percentage of a common fund shall be supported by a lodestar analysis as a cross-check for the reasonableness of such a percentage award. In either case, the lodestar analysis shall be supported by a declaration that:

   a.   Authenticates copies of the contemporaneous time records maintained by the plaintiff's attorneys for the services performed in this case. If no contemporaneous time records were maintained, then the declaration shall state that fact, and shall (i) explain why no such records were kept, (ii) state the date on which legal services were provided, (iii) describe in detail the nature of those services, (iv) estimate the

time incurred in performing those services, and (v) describe the basis for that estimate.

b.     Describes both (i) the hourly rate or rates customarily charged by each attorney for that attorney's time during the period in which those services were performed, and (ii) the attorney's experience and expertise that justify such a rate. The declaration shall state whether the attorney has clients that pay that rate, and if so, the percentage of the attorney's clients that do so. If the attorney works exclusively on a contingency basis, the declaration shall explain the basis for the hourly rate assigned to that attorney's work.

4.     Any request for compensation for expenses incurred by the plaintiff's attorneys shall be supported by a detailed declaration or other evidence describing the date, nature, and amount of each expense incurred. In particular:

a.     Any travel expenses shall identify the mode of travel (e.g., by car, taxi, airplane, etc.), the starting point, the destination, and the number of persons making the trip.

b.     Any expenses for overnight accommodations shall explain the necessity for staying overnight and the number of persons doing so.

c.     Any request for filing fees shall distinguish between court filing fees and fees for a courier or attorney's service to deliver the documents to be filed to the court.

5.     The motion shall be accompanied by a declaration from the settlement administrator. That declaration shall:

a.     Describe both (i) the administrator's distribution of the notice, objection form, exclusion form, and any claim form, and (ii) the results thereof. If claims are required, the declaration shall describe the number of claims received and the total value of the claims. The declaration shall clearly distinguish between valid forms and any forms that are untimely, incomplete, or otherwise invalid.

b.     Attach and authenticate (i) a copy of the final version of the notice and of all forms enclosed with it, including the objection form, the exclusion form, and any claim form, (ii) a copy of every objection form received, and (iii) a copy of every exclusion form received. If the reasons stated on any objection form are in a language other than English, the administrator shall include a translation into English.

c.     Describe (i) the services performed by the administrator to the date of the declaration, (ii) the time incurred to perform those services, and (iii) either the fee charged for those the services or the agreed-upon flat fee.

d.     Describe (i) the services to be performed by the administrator after the date of the declaration, (ii) the estimated time needed to perform those services, and (iii) either the estimated fee for those services or the agreed-upon flat fee.

Page 16 of 19

6. If the settlement includes compensation for unpaid wages, and if the employer's share of the payroll taxes is to be paid out of the settlement funds, the motion shall be supported by a declaration estimating the amount of those taxes.

7. The motion shall be accompanied by a proposed judgment or, if counsel prefer, a proposed combined order and judgment.

8. The judgment shall not expose the class members to a potential contempt charge by barring or otherwise enjoining the class members from prosecuting the released claims. Nor shall the judgment include a provision that the class members shall be deemed to have agreed not to sue on any released claims, or any other provision that may expose the class members to potential liability for either breach of contract or misrepresentation.

9. The judgment shall not provide for the dismissal of the action. (Cal. Rules of Court, rule 3.769(h).)

10. The judgment may restrict the plaintiff and the defendant from offering the settlement agreement into evidence, but shall not purport to prevent other parties from doing so or to otherwise predetermine its admissibility in litigation involving third parties.

10. If multiple law firms represent the plaintiff, the judgment shall separately state the fees and expenses to be paid to each firm.

11. The judgment shall require that any envelope transmitting a settlement distribution to a class member shall bear the notation, "YOUR CLASS ACTION SETTLEMENT CHECK IS ENCLOSED."

12. If the Court either denies the motion for final approval or continues the hearing on the motion, and if the plaintiff thereafter files any amended proposed order or judgment, or other document in support of either that motion or a renewed motion, the plaintiff shall file a declaration authenticating a "red-lined" version of the amended document, showing how the earlier version was modified.


K. MOTIONS FOR CLASS CERTIFICATION

1. No motion for class certification or to deny class certification shall be filed without leave of court. Before leave to file such a motion is requested, the Court expects the parties to have exhausted efforts to mediate a resolution of the case.

2. At the time that the Court grants leave of court to file either a motion for class certification or a motion denying class certification, the Court will also establish a briefing schedule and will set a status conference on a date after the reply brief is due. At the status conference, the Court will determine the date on which the motion will be heard. The hearing date may be far enough in the future to allow for further mediation. If the Court fails to set such a status conference, the hearing date reserved by the moving party shall be far enough in the future to extend the briefing schedule prescribed by California Rules of Court, rule 3.764(c)(1) by 3 calendar days; i.e., the motion shall be filed and served at least

31 calendar days before the hearing date, the opposition at least 17 calendar days before, and reply at least 8 calendar days before.

3.  If certification is sought of one or more subclasses, the motion shall address the issues of definition, ascertainability and numerosity separately as to each subclass.

4.  If multiple class representatives are proposed, the motion shall address the issues of typicality and adequacy of representation separately as to each representative.

5.  If multiple class claims are alleged, the motion shall expressly identify each claim the plaintiff seeks to certify as a class claim. The motion shall address the issue of whether common questions of law and fact predominate separately as to each such claim.

6.  If the plaintiff intends to rely upon statistical evidence to prove any class claims at trial, the motion shall include a trial plan that describes that evidence and how it will be used to promote manageability.

7.  If the defendant has raised any affirmative defenses that rely upon individual evidence, the motion must be accompanied by a trial plan that explains how those defenses can be litigated.

8.  The motion shall be accompanied by a declaration of proposed class counsel, describing his or her experience in representing a class at trial.


L.  **JUDGMENTS**

Whether issued after trial or after final approval of a settlement, any judgment shall comply with the following:

1.  The judgment shall describe both the text of the notice of entry of judgment to be given to the class members (Cal. Rules of Court, rule 3.771(b)), the party or person required to give that notice, and the manner in which that notice is to be given.

2.  If the judgment provides for payments to class members:

    a.  The judgment shall describe the intended disposition of any uncashed checks or other cash residue.

    b.  The judgment shall set a deadline for the filing of a report concerning uncashed checks or other cash residue and shall identify the party or person responsible for filing that report. That deadline shall be after the deadline for the class members to negotiate their checks. The report shall be in the form of a declaration from the settlement administrator or other declarant with personal knowledge of the facts, and shall describe (i) the date the checks were mailed, (ii) the total number of checks mailed to class members, (iii) the average amount of those checks, (iv) the number of checks that remain uncashed, (v) the total value of those uncashed checks, (vi) the average amount of the uncashed checks, and (vii) the nature and date of the disposition of those unclaimed funds.

3.   If the judgment incorporates the settlement agreement by reference, it shall state the date the agreement was filed and the name of the document to which it was attached, if any.

## M.   FAILURE TO COMPLY

1.   If it appears that any attorney or party has violated any provision of this order, the Court may issue an order to show cause why monetary sanctions should not be imposed upon that attorney or party in an amount not to exceed $1,500. (Code Civ. Proc., § 177.5; Cal. Rules of Court, rule 2.30(b).)

2.   If the plaintiff's counsel fails to comply with the provisions of this order concerning motions for preliminary approval or final approval of a proposed settlement, with the result that final approval of the settlement is unnecessarily delayed, then the Court may reduce the attorney's-fee award to plaintiff's counsel to compensate the class members for the interest lost during the delay and to deny compensation to the attorney for that deficiency in the attorney's services. That reduction may in the amount of $1,500 or more for every motion that fails to comply with this order.

## N.   OTHER

____   The Case Management Conference currently scheduled for ___, 2018, is advanced or continued to ___, 2018, at 8:30 A.M.

____   The status conference currently set for ___, 2018, is vacated.

____   This CMO #2 entirely supersedes CMO #1, filed ___.

____   The ___ having failed to pay the jury fees required by Code of Civil Procedure section 631, subdivision (b), within the time required by subdivision (c), that party has forfeited its right to a jury trial.

Craig G. Riemer, Judge of the Superior Court

V. 116

SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE
4050 Main Street
Riverside, CA  92501
www.riverside.courts.ca.gov

CLERK'S CERTIFICATE OF MAILING

KIMBERLY GERDO

   vs.                             CASE NO. RIC1814331

NERIUM INTERNATIONAL LLC

TO:

I certify that I am currently employed by the Superior Court of
California, County of Riverside and I am not a party to this action
or proceeding. In my capacity, I am familiar with the practices and
procedures used in connection with the mailing of correspondence. Such
correspondence is deposited in the outgoing mail of the Superior
Court. Outgoing mail is delivered to and mailed by the United States
Postal Service, postage prepaid, the same day in the ordinary course
of business. I certify that I served a copy of the attached
Class Action Case Management Order #1; on this date, by depositing
said copy as stated above.

Court Executive Officer/Clerk

Dated: 07/19/18          by: _____
                         SUSAN M SALAZAR, Deputy Clerk

Notice 'CCMN' has been printed for the following Attorneys/Firms
or Parties for Case Number RIC1814331 on  7/19/18:


BOHM WILDISH & MATSEN LLP
695 TOWN CENTER DR
SUITE 700
COSTA MESA, CA 92626

ORIGINAL

| Attorney or Party without Attorney:<br>BOHM WILDISH & MATSEN, LLP<br>James G. Bohm (SBN 132430)<br>695 TOWN CENTER DRIVE SUITE 700<br>COSTA MESA , CA 92626<br>*Telephone No:* 714-384-6500<br><br>*Attorney For:* Plaintiffs | For Court Use Only |
|---|---|
| *Ref. No. or File No.:*<br>GERDO V NERIUM | **FILED**<br>SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF RIVERSIDE<br><br>JUL 2 6 2018<br><br>J. Marcial |

| Insert name of Court, and Judicial District and Branch Court:<br>SUPERIOR COURT OF THE STATE OF CALIFORNIA, COUNTY OF RIVERSIDE |
|---|

*Plaintiff:* KIMBERLY GERDO, an individual, etc.
*Defendant:* NERIUM INTERNATIONAL, LLC, a limited liability company, et al.

| PROOF OF SERVICE<br>SUMMONS | Hearing Date: | Time: | Dept/Div: | Case Number:<br>RIC 1814331 |
|---|---|---|---|---|

1. *At the time of service I was at least 18 years of age and not a party to this action.*

2. I served copies of the Summons, Class Action Complaint, Notice of Assignment to Department and Case Management Conference (CRC 3.722), Certificate of Counsel, Alternative Dispute Resolution (ADR) Information Package, Alternative Dispute Resolution (ADR) Stipulation

3. a. *Party served:* JEFF OLSON, an individual
   b. *Person served:* STEVE HAYNES, ESQ., CORPORATE COUNSEL

4. *Address where the party was served:* 4006 Beltline Rd., Suite 100, Addison, TX 75001

5. I served the party:
   b. by substituted service. On: Mon, Jul 23 2018 at: 02:00 PM I left the documents listed in item 2 with or in the presence of: STEVE HAYNES, ESQ., CORPORATE COUNSEL.

   (1) [X] (business) a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.
   (2) [ ] (home) a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.
   (3) [ ] (physical address unknown) a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.
   (4) [X] (Declaration of Mailing) is attached.
   (5) [X] (Declaration of Diligence) attached stating actions taken first to attempt personal service.

6. The "Notice to the Person Served" (on the summons) was completed as follows:
   a. [X] as an individual defendant.
   b. [ ] as the person sued under the fictitious name of *(specify):*
   c. [ ] as occupant.
   d. [ ] On behalf of *(specify):*
      under the following Code of Civil Procedure section:

   | | |
   |---|---|
   | [ ] 416.10 (corporation) | [ ] 415.95 (business organization, form unknown) |
   | [ ] 416.20 (defunct corporation) | [ ] 416.60 (minor) |
   | [ ] 416.30 (joint stock company/association) | [ ] 416.70 (ward or conservatee) |
   | [ ] 416.40 (association or partnership) | [ ] 416.90 (authorized person) |
   | [ ] 416.50 (public entity) | [ ] 415.46 (occupant) |
   | [ ] other: | |



Judicial Council Form POS-010
Rule 2.150.(a)&(b) Rev January 1, 2007

PROOF OF SERVICE
SUMMONS

*2469975*
*(11297289)*
Page 1 of 2

| Attorney or Party without Attorney:<br>BOHM WILDISH & MATSEN, LLP<br>James G. Bohm (SBN 132430)<br>695 TOWN CENTER DRIVE SUITE 700<br>COSTA MESA , CA 92626<br>Telephone No: 714-384-6500<br><br>Attorney For: Plaintiffs | | For Court Use Only |
|---|---|---|
| | Ref. No. or File No.:<br>GERDO V NERIUM | |
| Insert name of Court, and Judicial District and Branch Court:<br>SUPERIOR COURT OF THE STATE OF CALIFORNIA, COUNTY OF RIVERSIDE | | |
| Plaintiff: KIMBERLY GERDO, an individual, etc.<br>Defendant: NERIUM INTERNATIONAL, LLC, a limited liability company, et al. | | |

| PROOF OF SERVICE SUMMONS | Hearing Date: | Time: | Dept/Div: | Case Number:<br>RIC 1814331 |
|---|---|---|---|---|

Recoverable cost Per CCP 1033.5(a)(4)(B)

7. **Person who served papers**
  a. Name: Kim Shaw
  b. Address: **FIRST LEGAL**
       600 W. Santa Ana Blvd., Ste. 101
       SANTA ANA, CA 92701
  c. Telephone number: (714) 541-1110
  d. **The fee for service was:** $249.25
  e. I am:
    (1) [X] not a registered California process server.
    (2) [ ] exempt from registration under Business and Professions Code section 22350(b).
    (3) [ ] a registered California process server:
      (i) [ ] owner [ ] employee [ ] independent contractor
      (ii) Registration No:
      (iii) County:

8. *I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.*


      07/24/2018                  Kim Shaw
        (Date)                      (Signature)



Judicial Council Form POS-010
Rule 2.150.(a)&(b) Rev January 1, 2007

**PROOF OF SERVICE**
**SUMMONS**

2469975
(11297289)
Page 2 of 2

| Attorney or Party without Attorney:<br>BOHM WILDISH & MATSEN, LLP<br>James G. Bohm (SBN 132430)<br>695 TOWN CENTER DRIVE SUITE 700<br>COSTA MESA , CA 92626<br>  Telephone No: 714-384-6500 | | For Court Use Only |
|---|---|---|
|   Attorney For: Plaintiffs | Ref. No. or File No.:<br>GERDO V NERIUM | |

| Insert name of Court, and Judicial District and Branch Court:<br>SUPERIOR COURT OF THE STATE OF CALIFORNIA, COUNTY OF RIVERSIDE |
|---|
| Plaintiff: KIMBERLY GERDO, an individual, etc.<br>Defendant: NERIUM INTERNATIONAL, LLC, a limited liability company, et al. |

| PROOF OF SERVICE<br>By Mail | Hearing Date: | Time: | Dept/Div: | Case Number:<br>RIC 1814331 |
|---|---|---|---|---|

1. *I am over the age of 18 and not a party to this action. I am employed in the county where the mailing occurred.*

2. I served copies of the Summons, Class Action Complaint, Notice of Assignment to Department and Case Management Conference (CRC 3.722), Certificate of Counsel, Alternative Dispute Resolution (ADR) Information Package, Alternative Dispute Resolution (ADR) Stipulation

3. By placing a true copy of each document in the United States mail, in a sealed envelope by First Class mail with postage prepaid as follows:
   a. Date of Mailing: Tue, Jul 24, 2018
   b. Place of Mailing: SANTA ANA, CA 92701
   c. Addressed as follows: JEFF OLSON, an individual
                4006 Beltline, Suite 100 Addison, TX 75001

4. *I am readily familiar with the business practice for collection and processing of correspondence as deposited with the U.S. Postal Service on Tue, Jul 24, 2018 in the ordinary course of business.*

Recoverable cost Per CCP 1033.5(a)(4)(B)

5. *Person Serving:*
   a. DAVID LEDESMA
   b. FIRST LEGAL
      600 W. Santa Ana Boulevard, Suite 101
      SANTA ANA, CA 92701
   c. (714) 541-1110

   d. *The Fee for Service was:* $249.25
   e. I am: A Registered California Process Server

6. *I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.*

07/24/2018                         David Ledesma

*(Date)*                                *(Signature)*



Judicial Council Form           PROOF OF SERVICE                   2469975
Rule 2.150.(a)&(b) Rev January 1, 2007         BY MAIL                   (11297289)

| Attorney or Party without Attorney:<br>BOHM WILDISH & MATSEN, LLP<br>James G. Bohm (SBN 132430)<br>695 TOWN CENTER DRIVE SUITE 700<br>COSTA MESA , CA 92626<br>Telephone No: 714-384-6500 | | For Court Use Only |
|---|---|---|
| Attorney For: Plaintiffs | Ref. No. or File No.:<br>GERDO V NERIUM | |
| Insert name of Court, and Judicial District and Branch Court:<br>SUPERIOR COURT OF THE STATE OF CALIFORNIA, COUNTY OF RIVERSIDE | | |
| Plaintiff: KIMBERLY GERDO, an individual, etc.<br>Defendant: NERIUM INTERNATIONAL, LLC, a limited liability company, et al. | | |

| AFFIDAVIT OF DUE DILIGENCE | Hearing Date: | Time: | Dept/Div: | Case Number:<br>RIC 1814331 |
|---|---|---|---|---|

1. I, Kim Shaw , and any employee or independent contractors retained by FIRST LEGAL are and were on the dates mentioned herein over the age of eighteen years and not a party to this action. Personal service was attempted on subject JEFF OLSON, an individual as follows:

2. *Documents:* Summons, Class Action Complaint, Notice of Assignment to Department and Case Management Conference (CRC 3.722), Certificate of Counsel, Alternative Dispute Resolution (ADR) Information Package, Alternative Dispute Resolution (ADR) Stipulation

| Attempt Detail |
|---|

1) Unsuccessful Attempt by: Kim Shaw on: Jul 19, 2018, 11:05 am PDT at 4006 Beltline Rd., Suite 100, Addison, TX 75001
The subject is out of town according to the employee.

2) Unsuccessful Attempt by: Kim Shaw on: Jul 20, 2018, 3:40 pm PDT at 4006 Beltline Rd., Suite 100, Addison, TX 75001
The subject is still out of town according to the employee.

3) Successful Attempt by: Kim Shaw on: Jul 23, 2018, 2:00 pm PDT at 4006 Beltline Rd., Suite 100, Addison, TX 75001 received by STEVE HAYNES, ESQ., CORPORATE COUNSEL.

4) Jul 24, 2018, mailed copy of documents to JEFF OLSON.



| Attorney or Party without Attorney:<br>BOHM WILDISH & MATSEN, LLP<br>James G. Bohm (SBN 132430)<br>695 TOWN CENTER DRIVE SUITE 700<br>COSTA MESA , CA 92626<br>Telephone No: 714-384-6500<br>Attorney For: Plaintiffs | | For Court Use Only |
|---|---|---|
| | Ref. No. or File No.:<br>GERDO V NERIUM | |
| Insert name of Court, and Judicial District and Branch Court:<br>SUPERIOR COURT OF THE STATE OF CALIFORNIA, COUNTY OF RIVERSIDE | | |
| Plaintiff: KIMBERLY GERDO, an individual, etc.<br>Defendant: NERIUM INTERNATIONAL, LLC, a limited liability company, et al. | | |

| AFFIDAVIT OF DUE DILIGENCE | Hearing Date: | Time: | Dept/Div: | Case Number:<br>RIC 1814331 |
|---|---|---|---|---|

Recoverable cost Per CCP 1033.5(a)(4)(B)

3. **Person who served papers**
   a. Name: Kim Shaw
   b. Address: **FIRST LEGAL**
      1517 W. Beverly Blvd.
      LOS ANGELES, CA 90026
   c. Telephone number: (213) 250-1111
   d. The fee for service was: $249.25
   e. I am:
      (1) [X] not a registered California process server.
      (2) [ ] exempt from registration under Business and Professions Code section 22350(b).
      (3) [ ] a registered California process server:
          (i) [ ] owner [ ] employee [ ] independent contractor
          (ii) Registration No:
          (iii) County:

4. *I declare under penalty of perjury under the laws of the State of California and under the laws of the United States of America that the foregoing is true and correct.*

_____07/24/2018_____        _Kim Shaw_
*(Date)*                       *(Signature)*



□ **ORIGINAL**

| | |
|---|---|
| *Attorney or Party without Attorney:*<br>BOHM WILDISH & MATSEN, LLP<br>James G. Bohm (SBN 132430)<br>695 TOWN CENTER DRIVE SUITE 700<br>COSTA MESA , CA 92626<br>*Telephone No:* 714-384-6500 | *For Court Use Only* |
| *Attorney For:* Plaintiffs<br>*Ref. No. or File No.:*<br>GERDO V NERIUM | **FILED**<br>SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF RIVERSIDE<br><br>**JUL 2 6 2018**<br><br>J. Marcial |

*Insert name of Court, and Judicial District and Branch Court:*
SUPERIOR COURT OF THE STATE OF CALIFORNIA, COUNTY OF RIVERSIDE

*Plaintiff:* KIMBERLY GERDO, an individual, etc.
*Defendant:* NERIUM INTERNATIONAL, LLC, a limited liability company, et al.

| PROOF OF SERVICE<br>SUMMONS | *Hearing Date:* | *Time:* | *Dept/Div:* | *Case Number:*<br>RIC 1814331 |
|---|---|---|---|---|

1.  *At the time of service I was at least 18 years of age and not a party to this action.*

2.  I served copies of the Summons, Class Action Complaint, Notice of Assignment to Department and Case Management Conference (CRC 3.722), Certificate of Counsel, Alternative Dispute Resolution (ADR) Information Package, Alternative Dispute Resolution (ADR) Stipulation

3.  a.  *Party served:*     NERIUM INTERNATIONAL, LLC, a limited liability company
    b.  *Person served:*   ERIC HAYNES, AGENT FOR SERVICE OF PROCESS

4.  *Address where the party was served:*   4006 Beltline Rd., Suite 100, Addison, TX 75001

5.  *I served the party:*
    b. by substituted service.   On: Thu, Jul 19 2018 at: 11:05 AM I left the documents listed in item 2 with or in the presence of:
    LAURA PEREZ, AUTHORIZED TO ACCEPT SERVICE.

    (1) [X] (business) a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.
    (2) [ ] (home) a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.
    (3) [ ] (physical address unknown) a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.
    (4) [X] (Declaration of Mailing) is attached.
    (5) [ ] (Declaration of Diligence) attached stating actions taken first to attempt personal service.

6.  The "Notice to the Person Served" (on the summons) was completed as follows:
    a.  [ ]   as an individual defendant.
    b.  [ ]   as the person sued under the fictitious name of *(specify):*
    c.  [ ]   as occupant.
    d.  [X]   On behalf of *(specify):*   NERIUM INTERNATIONAL, LLC, a limited liability company
             under the following Code of Civil Procedure section:

| | | | |
|---|---|---|---|
| [ ] | 416.10 (corporation) | [ ] | 415.95 (business organization, form unknown) |
| [ ] | 416.20 (defunct corporation) | [ ] | 416.60 (minor) |
| [ ] | 416.30 (joint stock company/association) | [ ] | 416.70 (ward or conservatee) |
| [ ] | 416.40 (association or partnership) | [ ] | 416.90 (authorized person) |
| [ ] | 416.50 (public entity) | [ ] | 415.46 (occupant) |
| [X] | other:   Limited Liability Company | | |



Judicial Council Form POS-010
Rule 2.150.(a)&(b) Rev January 1, 2007

**PROOF OF SERVICE**
**SUMMONS**

*2472475*
*(11297281)*
Page 1 of 2

| Attorney or Party without Attorney:<br>BOHM WILDISH & MATSEN, LLP<br>James G. Bohm (SBN 132430)<br>695 TOWN CENTER DRIVE SUITE 700<br>COSTA MESA , CA 92626<br>  Telephone No: 714-384-6500<br>  Attorney For: Plaintiffs | For Court Use Only |
|---|---|

| Ref. No. or File No.:<br>GERDO V NERIUM | |
|---|---|

Insert name of Court, and Judicial District and Branch Court:
SUPERIOR COURT OF THE STATE OF CALIFORNIA, COUNTY OF RIVERSIDE

Plaintiff: KIMBERLY GERDO, an individual, etc.
Defendant: NERIUM INTERNATIONAL, LLC, a limited liability company, et al.

| PROOF OF SERVICE<br>SUMMONS | Hearing Date: | Time: | Dept/Div: | Case Number:<br>RIC 1814331 |
|---|---|---|---|---|

Recoverable cost Per CCP 1033.5(a)(4)(B)

7. **Person who served papers**
   a. Name: Kim Shaw
   b. Address: **FIRST LEGAL**
      600 W. Santa Ana Blvd., Ste. 101
      SANTA ANA, CA 92701
   c. Telephone number: (714) 541-1110
   d. **The fee for service was:** $249.25
   e. I am:
      (1) [X] not a registered California process server.
      (2) [ ] exempt from registration under Business and Professions Code section 22350(b).
      (3) [ ] a registered California process server:
         (i) [ ] owner [ ] employee [ ] independent contractor
         (ii) Registration No:
         (iii) County:

8. *I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.*

07/19/2018
*(Date)*

*Kim Shaw*
*(Signature)*


Judicial Council Form POS-010
Rule 2.150.(a)&(b) Rev January 1, 2007

PROOF OF SERVICE
SUMMONS

2472475
(11297281)
Page 2 of 2

| *Attorney or Party without Attorney:*<br>BOHM WILDISH & MATSEN, LLP<br>James G. Bohm (SBN 132430)<br>695 TOWN CENTER DRIVE SUITE 700<br>COSTA MESA , CA 92626<br>  *Telephone No:*  714-384-6500<br><br>  *Attorney For:*  Plaintiffs | | *For Court Use Only* |
|---|---|---|
| | *Ref. No. or File No.:*<br>GERDO V NERIUM | |
| *Insert name of Court, and Judicial District and Branch Court:*<br>SUPERIOR COURT OF THE STATE OF CALIFORNIA, COUNTY OF RIVERSIDE | | |
| *Plaintiff:*  KIMBERLY GERDO, an individual, etc.<br>*Defendant:*  NERIUM INTERNATIONAL, LLC, a limited liability company, et al. | | |

| **PROOF OF SERVICE**<br>**By Mail** | *Hearing Date:* | *Time:* | *Dept/Div:* | *Case Number:*<br>RIC 1814331 |
|---|---|---|---|---|

1.   *I am over the age of 18 and not a party to this action. I am employed in the county where the mailing occurred.*

2.   I served copies of the Summons, Class Action Complaint, Notice of Assignment to Department and Case Management Conference (CRC 3.722), Certificate of Counsel, Alternative Dispute Resolution (ADR) Information Package, Alternative Dispute Resolution (ADR) Stipulation

3.   By placing a true copy of each document in the United States mail, in a sealed envelope by First Class mail with postage prepaid as follows:
   a. Date of Mailing: Thu, Jul 19, 2018
   b. Place of Mailing: SANTA ANA, CA 92701
   c. Addressed as follows: NERIUM INTERNATIONAL, LLC, a limited liability company
          4006 Beltline Rd.,, Suite 100 Addison, TX 75001

4.   *I am readily familiar with the business practice for collection and processing of correspondence as deposited with the U.S. Postal Service on Thu, Jul 19, 2018 in the ordinary course of business.*

                              Recoverable cost Per CCP 1033.5(a)(4)(B)

5. *Person Serving:*
   a. DAVID LEDESMA                              d. *The Fee for Service was:* $249.25
   b. FIRST LEGAL                                e. I am: A Registered California Process Server
      600 W. Santa Ana Boulevard, Suite 101
      SANTA ANA, CA 92701
   c. (714) 541-1110

6.   *I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.*

<table>
<tr><td>07/19/2018</td><td><em>David Ledesma</em></td></tr>
<tr><td>(Date)</td><td>(Signature)</td></tr>
</table>



Judicial Council Form                 PROOF OF SERVICE                    2472475
Rule 2.150.(a)&(b) Rev January 1, 2007        BY MAIL                    (11297281)

1  James G. Bohm (SBN 132430)
   jbohm@bohmwildish.com
2  Klaus Heinze (SBN 279634)
   kheinze@bohmwildish.com
3  Christopher J. Green (SBN 295874)
   cgreen@bohmwildish.com
4  **BOHM WILDISH & MATSEN, LLP**
5  695 Town Center Drive, Suite 700
   Costa Mesa, California 92626
6  Telephone: (714) 384-6500
   Facsimile: (714) 384-6501
7
8  Attorneys for Plaintiffs
   KIMBERLY GERDO and the Putative Class

F I L E D
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

JUL 26 2018

J. Marcial

9              SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                      COUNTY OF RIVERSIDE

11  KIMBERLY GERDO, an individual; on behalf of    Case No. **RIC1814331**
12  herself and other persons similarly situated;
                                                   **PROOF OF SERVICE**
13           Plaintiffs,

14      v.

15  NERIUM INTERNATIONAL, LLC, a limited
    liability company; JEFF OLSON, an individual;
16  and DOES 1 through 25, inclusive,

17           Defendants.

18

19

20

21

22

23

24

25

26

27

28

BOHM WILDISH &
MATSEN

bohmwildish.com

                              1

**PROOF OF SERVICE**
*Gerdo vs Nerium International et al*
*(Riverside County Superior Court Case No. RIC1814331)*

I am over age 18 and am not a party to this action.  I am employed in Orange County, California.
My business address is 695 Town Center Drive, Suite 700, Costa Mesa, California 92626.
On July 26, 2018 I served these documents:
**CASE MANAGEMENT ORDER # 1**

I served these documents on the following persons:

| NERIUM INTERNATIONAL LLC<br>C/O ERIC HAYNES<br>4006 BELTLINE RD, STE 100<br>ADDISON TX 75001 | JEFF OLSON<br>4006 BELTLINE RD, STE 100<br>ADDISON TX 75001 |
|---|---|

I served these documents in the following manner:

☒ **By U.S. Mail:** I enclosed these documents in a sealed envelope or package addressed to the persons and at the addresses above and placed the envelope for collection and mailing, following our ordinary business practices.  I am readily familiar with our firm's practice for collecting and processing correspondence for mailing.  On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid. I am employed in the county where the mailing occurred.  The envelope or package was placed in the mail at Costa Mesa, California.

☐ **BY E-MAIL/ELECTRONIC TRANSMISSION: On _____ at Costa Mesa,** California, I served the above referenced document by electronic mail to the e-mail address of the Addressee(s) pursuant to Rule 2.260 of the California Rules of Court. The transmission was complete and without error and I did not receive, within reasonable time after transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the State of California that the above statements are true and correct.  Executed on July 26, 2018 at Costa Mesa, California.

_____
Lindsay Rivara



**ORIGINAL**

| Attorney or Party without Attorney: | | For Court Use Only |
|---|---|---|
| BOHM WILDISH & MATSEN, LLP<br>James G. Bohm (SBN 132430)<br>695 TOWN CENTER DRIVE SUITE 700<br>COSTA MESA, CA 92626<br>Telephone No: 714-384-6500 | | **FILED**<br>SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF RIVERSIDE<br>JUL 3 1 2018<br>J. Marcial |
| Attorney For: Plaintiffs | Ref. No. or File No.:<br>GERDO V NERIUM | |
| Insert name of Court, and Judicial District and Branch Court:<br>SUPERIOR COURT OF THE STATE OF CALIFORNIA, COUNTY OF RIVERSIDE | | |
| Plaintiff: KIMBERLY GERDO, an individual, etc.<br>Defendant: NERIUM INTERNATIONAL, LLC, a limited liability company, et al. | | |

| AMENDED PROOF OF SERVICE SUMMONS | Hearing Date: | Time: | Dept/Div: | Case Number:<br>RIC 1814331 |
|---|---|---|---|---|

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of the Summons, Class Action Complaint, Notice of Assignment to Department and Case Management Conference (CRC 3.722), Certificate of Counsel, Alternative Dispute Resolution (ADR) Information Package, Alternative Dispute Resolution (ADR) Stipulation

3. a. Party served: JEFF OLSON, an individual
   b. Person served: STEVEN RAINES, ESQ., CORPORATE COUNSEL, AUTHORIZED TO ACCEPT SERVICE

4. Address where the party was served: 4006 Beltline Rd., Suite 100, Addison, TX 75001

5. I served the party:
   a. by personal service. I personally delivered the documents listed in item 2 to the party or person authorized to receive process for the party (1) on: Mon, Jul 23 2018 at: 02:00 PM

   (1) [X] (business)
   (2) [ ] (home)
   (3) [ ] (other) :

6. The "Notice to the Person Served" (on the summons) was completed as follows:
   a. [X] as an individual defendant.
   b. [ ] as the person sued under the fictitious name of (specify):
   c. [ ] as occupant.
   d. [ ] On behalf of (specify):
      under the following Code of Civil Procedure section:
      [ ] 416.10 (corporation)             [ ] 415.95 (business organization, form unknown)
      [ ] 416.20 (defunct corporation)     [ ] 416.60 (minor)
      [ ] 416.30 (joint stock company/association)  [ ] 416.70 (ward or conservatee)
      [ ] 416.40 (association or partnership)   [ ] 416.90 (authorized person)
      [ ] 416.50 (public entity)           [ ] 415.46 (occupant)
      [ ] other:



Judicial Council Form POS-010
Rule 2.150.(a)&(b) Rev January 1, 2007

**PROOF OF
SERVICE
SUMMONS**

2469975
(11297289)
Page 1 of 2

| Attorney or Party without Attorney:<br>BOHM WILDISH & MATSEN, LLP<br>James G. Bohm (SBN 132430)<br>695 TOWN CENTER DRIVE SUITE 700<br>COSTA MESA , CA 92626<br>   Telephone No:   714-384-6500 | | For Court Use Only |
|---|---|---|
|    Attorney For:   Plaintiffs | Ref. No. or File No.:<br>GERDO V NERIUM | |
| Insert name of Court, and Judicial District and Branch Court:<br>SUPERIOR COURT OF THE STATE OF CALIFORNIA, COUNTY OF RIVERSIDE | | |
| Plaintiff:   KIMBERLY GERDO, an individual, etc.<br>Defendant:   NERIUM INTERNATIONAL, LLC, a limited liability company, et al. | | |

| PROOF OF SERVICE<br>SUMMONS | Hearing Date: | Time: | Dept/Div: | Case Number:<br>RIC 1814331 |
|---|---|---|---|---|

Recoverable cost Per CCP 1033.5(a)(4)(B)

7.   **Person who served papers**
   a.   Name:                 Kim Shaw
   b.   Address:            **FIRST LEGAL**
                                   600 W. Santa Ana Blvd., Ste. 101
                                   SANTA ANA, CA 92701
   c.   Telephone number:    (714) 541-1110
   d.   The fee for service was:   $249.25
   e.   I am:
         (1)   [X]   not a registered California process server.
         (2)   [ ]   exempt from registration under Business and Professions Code section 22350(b).
         (3)   [ ]   a registered California process server:
                  (i)   [ ] owner   [ ] employee   [ ] independent contractor
                  (ii)   Registration No:
                  (iii)   County:

8.   *I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.*

07/27/2018
(Date)

*(Signature)*



Judicial Council Form POS-010
Rule 2.150.(a)&(b) Rev January 1, 2007

PROOF OF
SERVICE
SUMMONS

2469975
(11297289)
Page 2 of 2

**ORIGINAL**

CM-110

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*

BOHM WILDISH & MATSEN, LLP
James G. Bohm (SBN 132430); Christopher Green (SBN 295874)
695 Town Center Drive, Suite 700, Costa Mesa, CA 92626
TELEPHONE NO.: (714) 384-6500    FAX NO. *(Optional):* (714) 384-6501
E-MAIL ADDRESS *(Optional):* JBohm@bohmwildish.com; CGreen@Bohmwildish.com
ATTORNEY FOR *(Name):* Plaintiffs KIMBERLY GERDO and the Putative Class

SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE
STREET ADDRESS: 4050 MAIN STREET
MAILING ADDRESS: 4050 MAIN STREET
CITY AND ZIP CODE: RIVERSIDE, CA 92501
BRANCH NAME: HISTORIC COURTHOUSE

PLAINTIFF/PETITIONER: KIMBERLY GERDO and the Putative Class
DEFENDANT/RESPONDENT: NERIUM INTERNATIONAL, LLC, et al

FOR COURT USE ONLY

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

AUG 27 2018

J. Marcial

| CASE MANAGEMENT STATEMENT | CASE NUMBER: |
|---|---|
| *(Check one):* ☑ UNLIMITED CASE (Amount demanded exceeds $25,000) ☐ LIMITED CASE (Amount demanded is $25,000 or less) | RIC1814331 |

A CASE MANAGEMENT CONFERENCE is scheduled as follows:

Date: September 11, 2018    Time: 8:30 a.m.    Dept.: 5    Div.:    Room:

Address of court *(if different from the address above):*

☑ Notice of Intent to Appear by Telephone, by *(name):* James G. Bohm

**INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.**

1. **Party or parties** *(answer one):*
   a. ☐ This statement is submitted by party *(name):*
   b. ☑ This statement is submitted **jointly** by parties *(names):* Plaintiffs, KIMBERLY GERDO and the Putative Class

2. **Complaint and cross-complaint** *(to be answered by plaintiffs and cross-complainants only)*
   a. The complaint was filed on *(date):* 07/13/2018
   b. ☐ The cross-complaint, if any, was filed on *(date):*

3. **Service** *(to be answered by plaintiffs and cross-complainants only)*
   a. ☑ All parties named in the complaint and cross-complaint have been served, have appeared, or have been dismissed.
   b. ☑ The following parties named in the complaint or cross-complaint
      (1) ☐ have not been served *(specify names and explain why not):*
      (2) ☑ have been served but have not appeared and have not been dismissed *(specify names):*
          Defendants have been given a 30 day extension to respond to Complaint.
      (3) ☐ have had a default entered against them *(specify names):*
   c. ☐ The following additional parties may be added *(specify names, nature of involvement in case, and date by which they may be served):*

4. **Description of case**
   a. Type of case in ☑ complaint ☐ cross-complaint    *(Describe, including causes of action):*
      (1) FRAUD AND DECEIT; (2) TREBLE DAMAGES UNDER PENAL CODE SECTION 496; (3) NEGLIGENT MISREPRESENTATION (4) BREACH OF CONTRACT (5) BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING (6) VIOLATION OF BUSINESS AND PROFESSIONS CODE § 17200. ET SEQ.

Form Adopted for Mandatory Use
Judicial Council of California
CM-110 [Rev. July 1, 2011]

**CASE MANAGEMENT STATEMENT**

Page 1 of 5

Cal. Rules of Court,
rules 3.720–3.730
www.courts.ca.gov

**CM-110**

| | |
|---|---|
| PLAINTIFF/PETITIONER: KIMBERLY GERDO and the Putative Class | **CASE NUMBER:** |
| DEFENDANT/RESPONDENT: NERIUM INTERNATIONAL, LLC | RIC1814331 |

4.  b.  Provide a brief statement of the case, including any damages. *(If personal injury damages are sought, specify the injury and damages claimed, including medical expenses to date [indicate source and amount], estimated future medical expenses, lost earnings to date, and estimated future lost earnings. If equitable relief is sought, describe the nature of the relief.)*

Plaintiff (s) were induced to become, and continue as, "Brand Partners" of Defendants multi-level marketing company because of initial and ongoing misrepresentations made by Defendants. Plaintiff allegations include that Defendants purported to sell their "launch kit" to Brand Partners at cost when they were secretly increasing the price for their own profit. Plaintiff(s) seek class certification; restitution; actual, compensatory, punitive and treble damages; disgorgement; attorney's fees, costs, and interest; all other relief ■

5.  **Jury or nonjury trial**
The party or parties request ☑ a jury trial ☐ a nonjury trial. *(If more than one party, provide the name of each party requesting a jury trial):*

6.  **Trial date**
a.  ☐ The trial has been set for *(date):*
b.  ☑ No trial date has been set. This case will be ready for trial within 12 months of the date of the filing of the complaint *(if not, explain):*

c.  Dates on which parties or attorneys will not be available for trial *(specify dates and explain reasons for unavailability):*
Sept. 1-14 2018, Oct 9-15, Oct. 26 2018 - Nov. 2nd 2018, Nov 5-9th, 2018, Nov 9-16, 24-30 2018, Dec. 3-7, 15-31st, 2018 - Jan 14-18,2019 28-Feb 5th 2019, Feb 4-8th,Mar 4-8 2019

7.  **Estimated length of trial**
The party or parties estimate that the trial will take *(check one):*
a.  ☑ days *(specify number):* 10-15
b.  ☐ hours (short causes) *(specify):*

8.  **Trial representation** *(to be answered for each party)*
The party or parties will be represented at trial ☑ by the attorney or party listed in the caption ☐ by the following:
a.  Attorney:
b.  Firm:
c.  Address:
d.  Telephone number:
e.  E-mail address:
☐ Additional representation is described in Attachment 8.

f.  Fax number:
g.  Party represented:

9.  **Preference**
☐ This case is entitled to preference *(specify code section):*

10. **Alternative dispute resolution (ADR)**

a.  **ADR information package.** Please note that different ADR processes are available in different courts and communities; read the ADR information package provided by the court under rule 3.221 for information about the processes available through the court and community programs in this case.

(1) For parties represented by counsel: Counsel ☑ has ☐ has not provided the ADR information package identified in rule 3.221 to the client and reviewed ADR options with the client.

(2) For self-represented parties: Party ☐ has ☐ has not reviewed the ADR information package identified in rule 3.221.

b.  **Referral to judicial arbitration or civil action mediation** (if available).

(1) ☐ This matter is subject to mandatory judicial arbitration under Code of Civil Procedure section 1141.11 or to civil action mediation under Code of Civil Procedure section 1775.3 because the amount in controversy does not exceed the statutory limit.

(2) ☐ Plaintiff elects to refer this case to judicial arbitration and agrees to limit recovery to the amount specified in Code of Civil Procedure section 1141.11.

(3) ☐ This case is exempt from judicial arbitration under rule 3.811 of the California Rules of Court or from civil action mediation under Code of Civil Procedure section 1775 et seq. *(specify exemption):*

**CASE MANAGEMENT STATEMENT**

**CM-110**

| PLAINTIFF/PETITIONER:  KIMBERLY GERDO and the Putative Class | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT:  NERIUM INTERNATIONAL, LLC | RIC1814331 |

10. c.  Indicate the ADR process or processes that the party or parties are willing to participate in, have agreed to participate in, or have already participated in *(check all that apply and provide the specified information)*:

| | The party or parties completing this form are **willing to** participate in the following ADR processes *(check all that apply)*: | If the party or parties completing this form in the case **have agreed to** participate in or have already completed an ADR process or processes, indicate the status of the processes *(attach a copy of the parties' ADR stipulation)*: |
|---|---|---|
| (1) Mediation | ☑ | ☑ Mediation session not yet scheduled<br>☐ Mediation session scheduled for *(date)*:<br>☐ Agreed to complete mediation by *(date)*:<br>☐ Mediation completed on *(date)*: |
| (2) Settlement conference | ☑ | ☑ Settlement conference not yet scheduled<br>☐ Settlement conference scheduled for *(date)*:<br>☐ Agreed to complete settlement conference by *(date)*:<br>☐ Settlement conference completed on *(date)*: |
| (3) Neutral evaluation | ☐ | ☐ Neutral evaluation not yet scheduled<br>☐ Neutral evaluation scheduled for *(date)*:<br>☐ Agreed to complete neutral evaluation by *(date)*:<br>☐ Neutral evaluation completed on *(date)*: |
| (4) Nonbinding judicial arbitration | ☐ | ☐ Judicial arbitration not yet scheduled<br>☐ Judicial arbitration scheduled for *(date)*:<br>☐ Agreed to complete judicial arbitration by *(date)*:<br>☐ Judicial arbitration completed on *(date)*: |
| (5) Binding private arbitration | ☐ | ☐ Private arbitration not yet scheduled<br>☐ Private arbitration scheduled for *(date)*:<br>☐ Agreed to complete private arbitration by *(date)*:<br>☐ Private arbitration completed on *(date)*: |
| (6) Other *(specify)*: | ☐ | ☐ ADR session not yet scheduled<br>☐ ADR session scheduled for *(date)*:<br>☐ Agreed to complete ADR session by *(date)*:<br>☐ ADR completed on *(date)*: |

**CASE MANAGEMENT STATEMENT**

CM-110

| PLAINTIFF/PETITIONER: KIMBERLY GERDO and the Putative Class | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: NERIUM INTERNATIONAL, LLC | RIC1814331 |

**11. Insurance**

a. ☐ Insurance carrier, if any, for party filing this statement *(name):*

b. Reservation of rights: ☐ Yes ☐ No

c. ☐ Coverage issues will significantly affect resolution of this case *(explain):*

**12. Jurisdiction**

Indicate any matters that may affect the court's jurisdiction or processing of this case and describe the status.

☐ Bankruptcy ☐ Other *(specify):*

Status:

**13. Related cases, consolidation, and coordination**

a. ☐ There are companion, underlying, or related cases.

(1) Name of case:
(2) Name of court:
(3) Case number:
(4) Status:

☐ Additional cases are described in Attachment 13a.

b. ☐ A motion to ☐ consolidate ☐ coordinate will be filed by *(name party):*

**14. Bifurcation**

☐ The party or parties intend to file a motion for an order bifurcating, severing, or coordinating the following issues or causes of action *(specify moving party, type of motion, and reasons):*

**15. Other motions**

☐ The party or parties expect to file the following motions before trial *(specify moving party, type of motion, and issues):*

To be determined.
DEFENDANTS HAVE INDICATED THAT THEY MAY TRY TO REMOVE THE CASE TO FEDERAL COURT.

**16. Discovery**

a. ☐ The party or parties have completed all discovery.

b. ☑ The following discovery will be completed by the date specified *(describe all anticipated discovery):*

| Party | Description | Date |
|---|---|---|
| Plaintiff | Written discovery | TBD |
| | Depositions | TBD |
| | Expert discovery | Per code. |

c. ☐ The following discovery issues, including issues regarding the discovery of electronically stored information, are anticipated *(specify):*

**CASE MANAGEMENT STATEMENT**

**CM-110**

| PLAINTIFF/PETITIONER: | KIMBERLY GERDO and the Putative Class | CASE NUMBER: |
|---|---|---|
| DEFENDANT/RESPONDENT: | NERIUM INTERNATIONAL, LLC | RIC1814331 |

**17. Economic litigation**

    a. ☐ This is a limited civil case (i.e., the amount demanded is $25,000 or less) and the economic litigation procedures in Code of Civil Procedure sections 90-98 will apply to this case.

    b. ☐ This is a limited civil case and a motion to withdraw the case from the economic litigation procedures or for additional discovery will be filed *(if checked, explain specifically why economic litigation procedures relating to discovery or trial should not apply to this case):*

**18. Other issues**

    ☐ The party or parties request that the following additional matters be considered or determined at the case management conference *(specify):* PLAINTIFFS HAVE GIVEN DEFENDANTS A 30 DAY EXTENSION TO RESPOND TO COMPLAINT

**19. Meet and confer**

    a. ☑ The party or parties have met and conferred with all parties on all subjects required by rule 3.724 of the California Rules of Court *(if not, explain):*

    b. After meeting and conferring as required by rule 3.724 of the California Rules of Court, the parties agree on the following *(specify):*

**20. Total number of pages attached** *(if any):*    0

I am completely familiar with this case and will be fully prepared to discuss the status of discovery and alternative dispute resolution, as well as other issues raised by this statement, and will possess the authority to enter into stipulations on these issues at the time of the case management conference, including the written authority of the party where required.

Date:

James G. Bohm, Plaintiff's counsel
_____
(TYPE OR PRINT NAME)

_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PARTY OR ATTORNEY)

▶ _____
(SIGNATURE OF PARTY OR ATTORNEY)

☐ Additional signatures are attached.

**PROOF OF SERVICE**
*Gerdo vs Nerium International et al*
*(Riverside County Superior Court Case No. RIC1814331)*

I am over age 18 and am not a party to this action. I am employed in Orange County, California. My business address is 695 Town Center Drive, Suite 700, Costa Mesa, California 92626.
On August 24, 2018 I served these documents:
**CASE MANAGEMENT STATEMENT**

I served these documents on the following persons:

| | |
|---|---|
| **BLANK ROME LLP**<br>Mike Margolis - mmargolis@blankrome.com<br>Naki Margolis - nmargolis@blankrome.com<br>Ping Zhang - pzhang@blankrome.com<br>2029 Century Park East, 6th Floor<br>Los Angeles, CA 90067<br>Telephone: 424.239.3400<br>Facsimile: 424.239.3434<br>**ATTORNEYS FOR**<br>**NERIUM INTERNATIONAL LLC**<br>**C/O ERIC HAYNES**<br>**AND JEFF OLSON** | |

I served these documents in the following manner:

☒ **By U.S. Mail:** I enclosed these documents in a sealed envelope or package addressed to the persons at the addresses above and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with our firm's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid. I am employed in the county where the mailing occurred. The envelope or package was placed in the mail at Costa Mesa, California.

☐ **BY E-MAIL/ELECTRONIC TRANSMISSION:** On _____ at Costa Mesa, California, I served the above referenced document by electronic mail to the e-mail address of the Addressee(s) pursuant to Rule 2.260 of the California Rules of Court. The transmission was complete and without error and I did not receive, within reasonable time after transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the State of California that the above statements are true and correct. Executed on August 24, 2018 at Costa Mesa, California.

_____
Lindsay Rivara